**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| RECENTIVE ANALYTICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FOX CORPORATION,<br>FOX BROADCASTING COMPANY, LLC,<br>and FOX SPORTS PRODUCTIONS, LLC,<br><br>Defendants. | Civil Action No. 22-1545-GBW |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 35 U.S.C. § 101**

*Of Counsel:*

Pillsbury Winthrop Shaw Pittman LLP

Michael E. Zeliger
Ranjini Acharya
2550 Hanover Street
Palo Alto, CA 94304
(650) 233-4500
michael.zeliger@pillsburylaw.com
ranjini.acharya@pillsburylaw.com

Evan Finkel
Michael S. Horikawa
725 S Figueroa St – 36th Floor
Los Angeles, CA 90017
(213) 488-7307
evan.finkel@pillsburylaw.com
michael.horikawa@pillsburylaw.com

Francis DiGiovanni (No. 3189)
Thatcher A. Rahmeier (No. 5222)
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

*Attorneys for Defendants Fox Corporation, Fox
Broadcasting Company LLC, and Fox Sports
Productions, LLC*

Dated:  March 21, 2023

**TABLE OF CONTENTS**

Page(s)

I.      Introduction................................................................................................................ 1

II.     Nature and Stage of the Proceedings ....................................................................... 1

III.    Summary of Argument ............................................................................................. 2

IV.     Factual Background .................................................................................................. 2

        A.    The Patents-in-Suit.......................................................................................... 2

              1.    The Network Map Patents .................................................................... 2

              2.    The Machine Learning ("ML") Training Patents ............................... 4

        B.    Prosecution History of the Patents-in-Suit....................................................... 6

              1.    The Network Map Patents .................................................................... 6

              2.    The ML Training Patents ..................................................................... 8

V.      Legal Standards........................................................................................................ 8

VI.     Argument ................................................................................................................. 9

        A.    Alice Step One: The Claims Are Directed to an Abstract Idea ................................ 9

              1.    The Claims of the Patents-in-Suit Are Directed to the Automation of an "Entirely Manual" Process.......................................................... 10

        B.    Alice Step Two: The Patents Include No Inventive Concept ................................ 14

              1.    Recitation of a "Computer" or "Computer Processors/Systems" Do Not Confer Patent Eligibility .......................................................... 15

              2.    Recitation of a "Machine Learning Technique" or "Machine Learning Model" Does Not Confer Patent Eligibility..................................... 15

              3.    The Dependent Claims Do Not Contain Any Inventive Concept................... 18

        C.    Dismissal Without Leave to Amend Is Appropriate............................................. 20

VII.    Conclusion .............................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018).......................................................................................... 9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014).............................................................................................. passim

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................ 9

*Bilski v. Kappos*,
    130 S. Ct. 3218 (2010)....................................................................................................... 2

*Blackbird Tech LLC v. Advanced Discovery Inc.*,
    2017 WL 2734725 (D. Del. June 26, 2017)..................................................................... 11

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)......................................................................................... 20

*Citrix Sys., Inc. v. Avi Networks, Inc.*,
    363 F. Supp. 3d 511 (D. Del. 2019)................................................................................. 20

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    760 F. App'x 1013 (Fed. Cir. 2019) ............................................................................... 17

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014)............................................................................... 3, 5, 18

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012)......................................................................................... 2

*Eagle View Technologies, Inc. et al. v. Roofr, Inc.*,
    No. 1-21-cv-01852-RGA, 2023 WL 315633 (D. Del. Jan. 19, 2023) .......................... 12, 15

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)..................................................................................... 9, 12

*Genetic Techs. Ltd. v. Merial LLC.*,
    818 F.3d 1369 (Fed. Cir. 2016)......................................................................................... 9

*Health Discovery Corp. v. Intel Corp.*,
    577 F. Supp. 3d 570 (W.D. Tex. 2021).................................................................. 13, 14, 17

ii

*In re Bd. of Trustees of Leland Stanford Junior Univ.*,
  991 F.3d 1245 (Fed. Cir. 2021).................................................................................. 13

*In re Rudy*,
  956 F.3d 1379 (Fed. Cir. 2020).................................................................................. 17

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015)............................................................................ 14, 19

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016).................................................................................. 11

*Mortg. Application Techs., LLC v. MeridianLink, Inc.*,
  2021 WL 97347 (Fed. Cir. Jan. 12, 2021) ................................................................ 11

*Nice Sys. Ltd. v. Clockfox, Inc.*,
  207 F. Supp. 3d 393 (D. Del. 2016)............................................................................ 14

*Nuance Comms., Inc. v. MModal LLC*,
  No. 17-cv-1484-MN-SRF, 2018 WL 6584129 (D. Del. Dec. 14, 2018) ................................ 12

*Parker v. Flook*,
  437 U.S. 584 (1978).............................................................................................. 18, 20

*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) ................................................................................ 9, 11

*Power Analytics Corporation v. Operation Technology, Inc.*,
  2017 WL 5468179 (C.D. Cal. July 13, 2017), *aff'd sub nom*, Fed. Appx. 334 (Fed. Cir.
  2019), *cert. denied*, 140 S.Ct. 910 (2020)................................................... 16, 19, 20

*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017).................................................................................. 10

*SAP America, Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)............................................................................ 12, 13

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017)...................................................................................... 9

*Sound View Innovations, LLC v. Facebook, Inc.*,
  204 F. Supp. 3d 655 (D. Del. 2016)............................................................................... 7

*Wireless Discovery LLC v. eHarmony, Inc.*
  No. 1-22-cv-480-GBW, 2023 WL 1778656 (D. Del. Feb. 6, 2023)................................. 12, 15

iii

<u>Rules</u>

United States Code
Title 35, Section 101 ............................................................................................. passim

United States Code
Title 35, Section 103 ..................................................................................................... 7

United States Code
Title 35, Section 112(b) ............................................................................................... 7

<u>Treatises</u>

Federal Rules of Civil Procedure
Rule 12(b)(6).......................................................................................................... 1, 2, 9

**TABLE OF EXHIBITS**

| Exhibit Number | Description |
|---|---|
| A | Comparison of Claim 1 with Claim 12 of the '811 Patent |
| B | Comparison of Independent Claims of the '811 Patent and the '957 Patent |
| C | Comparison of Claims 1, 9, 11, and 19 of the '367 patent |
| D | Comparison of Claims 1, 9, 12, and 18 of the '960 patent |
| E | Comparison of Independent Claims of the '367 Patent and the '960 Patent |
| F | Excerpts from Prosecution History for the '811 Patent – January 31, 2020 Office Action |
| G | Excerpts from Prosecution History for the '811 Patent – March 13, 2020, Response to Office Action |
| H | Excerpts from Prosecution History for the '811 Patent – June 23, 2020 Office Action |
| I | Excerpts from Prosecution History for the '811 Patent – October 27, 2020 Amendment and Response |
| J | Excerpts from Prosecution History for the '367 Patent – September 9, 2021 Office Action |
| K | Excerpts from Prosecution History for the '367 Patent – December 1, 2021 Amendment and Response |
| L | Excerpts from Prosecution History for the '367 Patent – December 15, 2021 Final Office Action |
| M | Excerpts from Prosecution History for the '367 Patent – February 10, 2022 Amendment and Response |
| N | Excerpts from Prosecution History for the '367 Patent – March 7, 2022 Amendment and Response |
| O | Excerpts from Prosecution History for the '367 Patent – May 4, 2022 Amendment and Response |
| P | Excerpts from Prosecution History for the '367 Patent – May 25, 2022 Notice of Allowance |

## I.  INTRODUCTION

Implementing an abstract idea with conventional computer technology, even in a particular technology field, is not a patentable invention.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014).  Since *Alice*, the Federal Circuit and district courts have repeatedly invalidated such claims, including at the pleadings stage.

Recentive originally asserted two patents in this case: U.S. Patent No. 10,911,811 ("the '811 patent") and U.S. Patent No. 10,958,957 ("the '957 patent") (together, the "Network Map Patents") which are directed to a "computer implemented method" of generating a network map in a way that optimizes a particular parameter—such as television ratings—and updating that map in response to changed conditions—*e.g.,* the weather—in real time.  *See* D.I. 1 at ¶ 15; D.I. 13 at ¶ 19.  This is a long-standing human endeavor, automated by replacing the human decision-maker with generic computing technology.  Under *Alice*, these claims are ineligible for patent protection.

Recentive's first amended complaint ("FAC") adds two new patents:  U.S. Patent No. 11,386,367 ("the '367 patent"), and U.S. Patent No. 11,537,960 ("the '960 patent") (together, the "ML Training Patents").  *See* D.I. 13.  These patents cover similar subject matter and are directed to providing data to a machine learning ("ML") model, and iteratively training the ML model to generate an event schedule that can be updated in real time.  *Id.* at ¶ 19.  These patents are likewise ineligible under *Alice*:  although more specifically tied to the particular technology field of machine learning, these claims simply amount to the selection and analysis of mathematical information using generic computer technology, which remains an unpatentable abstract idea.

Defendants accordingly move to dismiss the FAC under F.R.C.P. 12(b)(6), and submit that such dismissal should be with prejudice because any further amendments would be futile.

## II.  NATURE AND STAGE OF THE PROCEEDINGS

Recentive filed its original complaint against Fox Corporation and Fox Broadcasting

1

Company on November 29, 2022.  D.I. 1.  The defendants filed a Rule 12(b)(6) motion to dismiss.

D.I. 9.  In response, Recentive filed its FAC.  *See* D.I. 13.  The FAC adds Fox Sports Productions,

LLC and two new patents.  *Id*.  The parties stipulated to an extension of time for all defendants to

respond to the FAC through and including March 21, 2023.  D.I. 17.

No schedule has been set and the parties have not yet commenced discovery.

III.    **SUMMARY OF ARGUMENT**

1.    Patent eligibility under Section 101 is a threshold legal issue for the Court.  *See*

*Bilski v. Kappos,* 130 S. Ct. 3218, 3225 (2010) (threshold test); *Dealertrack, Inc. v. Huber*, 674

F.3d 1315, 1333 (Fed. Cir. 2012) (question of law).  Thus, it is appropriate for the Court to

determine validity at the pleadings stage.

2.    The claims of the Network Map and ML Training Patents ("Patents-in-Suit") are

directed to abstract ideas and claim nothing inventive to transform those abstract ideas into patent-

eligible applications.  They are therefore ineligible for patent protection under 35 U.S.C. § 101.

Because it is apparent from the face of the Patents-in-Suit that the claims are not directed to eligible

subject matter under § 101, it is appropriate to dismiss the FAC pursuant to F.R.C.P. 12(b)(6).

3.    Because any further amendment by Plaintiff to the complaint would be futile, it is

appropriate that such dismissal be with prejudice.

IV.    **FACTUAL BACKGROUND**

   A.    **The Patents-in-Suit**

      1.    **The Network Map Patents**

The '811 patent issued on February 2, 2021, from Application No. 16/598,480 filed on

October 10, 2019.  D.I. 13-2.  The '957 patent issued on March 23, 2021, from Application No.

17/112,110, filed on December 4, 2020.  D.I. 13-3.  The '957 patent is a continuation of the '811

patent and shares the same title and specification.  *Id.*  The Network Map Patents are directed to

computer-implemented methods for generating a "network map," which is a "schedule that outlines which content will be displayed on which channel at a certain time." *See, e.g.,* D.I. 13-2 ('811 patent) at 1:14-17; D.I. 13 at ¶ 19.  Conventional techniques are said to be inferior because they are "entirely manual, static and incapable of responding to changing conditions . . . and unable to forecast the impact of a proposed schedule change." *See* D.I. 13-2 ('811 patent) at 1:24-29; D.I. 13 at ¶ 18 ("Conventional processes were also unable to prioritize certain parameters or target criteria in the creation of event schedules, could not be iteratively trained, and were not capable of collecting and analyzing social media data to forecast the impact on the future series of live events.").  The claimed solution of the Network Map Patents is to automate this process, based on "a computer algorithm designed to optimize a certain parameter," and/or "based on real time data," whereby the network map "can be dynamically updated based on changing conditions[.]" *Id.* at 1:35-47; *see also* D.I. 13 at ¶ 25.

Independent claims 1 and 12 of the '811 patent are nearly identical to one another and to independent claims 1 and 14 of the '957 patent.  *See* Ex. A (a comparison of the independent claims of the '811 patent), Ex. B (a comparison of independent claims of the '811 patent and the '957 patent).  As shown in Ex. A, the only substantive difference between independent claims 1 and 12 of the '811 patent is the addition of the limitation "one or more computer processors programmed to perform operations comprising" to claim 12.  And as shown in Ex. B, the only substantive difference between the independent claims of the '811 patent and the '957 patent is that the former are directed to "*live* events" and the latter are generally to "events."  All the claims therefore "are substantially similar and linked to the same abstract idea," and claim 1 of the '811 patent is therefore representative of the Network Map Patents.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,* 776 F.3d 1343, 1348 (Fed. Cir. 2014).

Claim 1 recites a "computer-implemented method" capturing the broad functional concepts of (1) "receiving" a schedule of live events starting at two different time slots; (2) assigning the events for each time slot to a plurality of tv stations in a plurality of cities; (3) using a "machine learning technique to optimize an overall television rating" to generate a network map; and (4) "automatically updating" the network map "on demand" and "in real time" based on changes to either the schedule or certain "underlying criteria." *See* D.I. 13-2 ('811 patent) at 9:65-10:32.

The Network Map Patents do not disclose a particular computer system that performs the claimed method. Rather, the specification discloses "a generic computing device" that may be used with the claimed techniques, with a general description of common computing components: a processor, memory, display, communication interface, and so on. *See* D.I. 13-2 ('811 patent) at 5:4-6; 5:6-6:37; 6:39-49. The Network Map Patents also do not provide any details of the algorithm that executes the claimed method. Rather, the specification recites a generic list of machine learning techniques and training data that may be used. *See* D.I. 13-2 ('811 patent) at 3:21-30 ("In general, any suitable machine learning technique can be used, for example, a gradient boosted random forest, a regression, a neural network, a decision tree, a support vector machine, a Bayesian network, etc., as just a few examples.").

### 2.    The Machine Learning ("ML") Training Patents

The '367 patent issued on July 12, 2022, from Application No. 17/332,144 filed on May 27, 2021. *See* D.I. 13-3. The '960 patent issued on December 27, 2022 from Application No. 17/857,597, filed on July 5, 2022. *See* D.I. 13-4. The '960 patent is a continuation of the '367 patent and shares the same title and specification. *Id.* The ML Training Patents are directed to computer-implemented methods for optimizing events such as concerts or rallies that take place across multiple locations over several months, or scheduling multiple performers to perform at a particular venue. *See, e.g.,* D.I. 13-4 ('367 patent) at 1:6-10; *id.* at 1:18-25. Conventional

4

techniques are criticized because the failure to consider factors such as "competing events, expenses, ticket prices, weather, performer availability, venue availability, etc." can "lead to sub-optimal schedules that generate little interest among consumers and/or result in low attendance or ticket sales." *Id.* at 1:26-33; *see also* D.I. 13 at ¶ 18.

The claimed solution of the ML Training Patents is to automate this process, based on "computer-implemented systems and methods," that determine an "optimized schedule," which can be updated "based on real-time data," and "dynamically updated in response to changes in this data." *See* D.I. 13-4 ('367 patent) at 1:43-67. The schedule is generated through the ML model (*see e.g. id.* at 2:18-20), which is iteratively trained to "recognize how to optimize, maximize, or minimize one or more of the target features based on a given set of input parameters." *Id.* at 5:65-6:21; *see also* D.I. 13 at ¶ 31.

The only substantive difference between the independent claims of the '367 patent is that claims 1 and 9 are directed generally to a "series of live events," whereas claims 11 and 19 are more specifically directed to "live events comprising performances by a plurality of performers." *See* Ex. C (a comparison of the independent claims of the '367 patent). The same is true for the independent claim of the '960 patent. *See* Ex. D (a comparison of the independent claims of the '960 patent). The claims of the '367 patent and the '960 patent are also nearly identical to one another, save for the fact that the '367 patent is directed to generating a schedule of events in a "plurality of geographic locations," whereas the '960 patent deals with generating a schedule for a "plurality of performers" at a venue. *See* Ex. E (comparison of the independent claims of the '367 patent with independent claims of the '960 patent). These patents otherwise disclose a functionally identical method and are linked to the same idea. Claim 1 of the '367 patent is therefore representative of the ML Training Patents. *Content Extraction*, 776 F.3d at 1348.

5

Claim 1 recites a "computer-implemented method" capturing the broad functional concepts of (1) "receiving" a list of event parameters *e.g.,* performers, venues, ticket prices; (2) "receiving" a set of "target features" such as attendance, profit, revenue, expenses, etc.; (3) providing the event parameters and target features to the ML model and "iteratively training" the ML model to identify relationships between the event parameters and the target features; (4) "receiving" a set of user-specific event parameters and prioritized target features for a set of future live events, and providing those to the ML model; (5) "generating" a schedule that is optimized relative to the prioritized target features; (6) and updating the schedule based on real-time changes, such that the event schedule remains optimized relative to the prioritized event target features. *See* D.I. 13-4 ('367 patent) at 16:3-51.

As with the Network Map Patents, the ML Training Patents do not disclose a particular computer system that performs the claimed method. Rather, the "operations described in this specification can be implemented . . . by a data processing apparatus . . . including by way of example a programmable processor, a computer, a system on a chip, or multiple ones, or combinations, of the foregoing." *See* D.I. 13-4 ('367 patent) at 11:11-19. Likewise, the ML Training Patents also do not provide any details of the ML algorithm, other than that "[in] general, any suitable machine learning technique can be used, such as, for example: a gradient boosted random forest, a regression, a neural network, a decision tree, a support vector machine, a Bayesian network, other type of technique." *Id.* at 5:67-6:5; 7:58-62.

B.      **Prosecution History of the Patents-in-Suit[1]**

1.      **The Network Map Patents**

The Patent Office initially rejected the pending claims of the '811 patent because the claims

---

[1] The Court may consider the prosecution history as a matter of public record, including on a

simply recited "mental processes capable of being performed in the human mind or on pen and paper," and the claimed machine learning techniques were simply "code written to allow a computer to learn a pattern using models, which is also interpreted as capable of being performed in the human mind or on pen and paper, and therefore also does not positively recite any computer executing the code." *See* Ex. F (Jan. 31, 2020 Office Action) at 2.

In response, Applicant amended its pending claims and included the limitations "displaying the network map to a user on a display having a graphical user interface depicting" and "displaying an updated network map to the user on the display having the graphical user interface depicting the updated network map in chart format." *See* Ex. G (March 13, 2020, Response to Office Action) at 2–4. Applicant argued that "the newly added 'displaying steps' do not recite abstract ideas." *Id.* at 6. Applicant submitted that the claimed displaying steps "integrat[ed] the claimed subject matter into a practical application," and therefore rendered the claims patent eligible. *See id.* at 6–7.

The claims were then rejected on a new ground of rejection—that the claims were indefinite under 35 U.S.C. § 112(b) and obvious under § 103. *See* Ex. H (June 23, 2020 Office Action) at 2–3. Applicant's arguments with respect to Section 101 were found to be moot in light of this new ground of rejection. *Id.* Despite previously relying on the addition of its "displaying steps", Applicant subsequently deleted these limitations, and the '811 patent issued without these limitations. *See* Ex. I (October 27, 2020 Amendment and Response). The Patent Office did not revisit the Section 101 rejection during the remaining prosecution of the '811 patent.

The '957 patent was allowed without any substantive office actions as to patent eligibility.

---

motion to dismiss under Section 101. *See Sound View Innovations, LLC v. Facebook, Inc.,* 204 F. Supp. 3d 655, 658 (D. Del. 2016) ("A court may also take judicial notice of the prosecution histories, which are 'public records.'") (citing cases).

### 2.    The ML Training Patents

During prosecution, the pending claims of the '367 patent were rejected for lacking patent eligible subject matter.  Initially, the Examiner rejected all claims because the claimed method "illustrates a process that, under its broadest reasonable interpretation, covers performance of the limitation in the mind (comparing or categorizing information) but for the recitation of generic computer components."  *See* Ex. J (September 9, 2021 Office Action) at 2–3.  In response, Applicant argued that the (amended) claims were "necessarily rooted in computer technology," through the use of machine learning.  *See* Ex. K (December 1, 2021 Amendment and Response) at 7–8.  The Examiner disagreed, noting "[w]hile the additional element of machine learning may improve the accuracy and/or automation of data processing, the addition of machine learning in the claim limitations herein does not make the claim rooted in computer technology or improve the functioning of a computer," and that "[t]he machine learning process improve the accuracy of scheduling events and is not an improvement to machine learning technology or the functioning of a computer device."  *See* Ex. L (December 15, 2021 Final Office Action) at 3–4.

In a series of narrowing amendments, Applicant eventually limited the claims to specific types of ML models ("at least one of a neural network ML model and a support vector ML model") and additionally specified iteratively training the ML model to improve overall accuracy.  *See, e.g.,* Ex. M (February 10, 2022 Amendment and Response); Ex. N (March 7, 2022 Amendment and Response); Ex. O (May 4, 2022 Amendment and Response).  The Patent Office accepted these amendments.  Ex. P (May 25, 2022 Notice of Allowance).

The '960 patent was allowed without any substantive Office Actions.

## V.    LEGAL STANDARDS

The Supreme Court's *Alice* decision established a two-part framework for determining eligibility under Section 101.  573 U.S. at 217–18.  First, a court determines whether the claims

are "directed to" a patent-ineligible concept, such as an abstract idea. *Id*. If the claim is directed to an abstract idea, the Court proceeds to step two and asks whether the claim elements, considered "both individually and 'as an ordered combination,'" "transform the nature of the claim" into a patent-eligible application. *Id*.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *id*., and to "allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc*., 873 F.3d 905, 913 (Fed. Cir. 2017).

The ultimate question of whether a claim recites patent-eligible subject matter under Section 101 is a question of law that may be resolved by way of a motion to dismiss. *See, e.g., Genetic Techs. Ltd. v. Merial LLC*., 818 F.3d 1369, 1373 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."). Claim construction is not a prerequisite. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

## VI.    ARGUMENT

### A.    Alice Step One: The Claims Are Directed to an Abstract Idea

In evaluating step 1, the Court may: consider whether the steps of the claim "can be performed in the human mind, or by a human using a pen and paper," *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1317 (Fed. Cir. 2021) (internal citations omitted); compare the claims to those previously analyzed in other judicial decisions, *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1351–54 (Fed. Cir. 2016); or ask "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-

9

result," *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017). Applying this framework confirms that the Patents-in-Suit are directed to an abstract idea.

### 1.    The Claims of the Patents-in-Suit Are Directed to the Automation of an "Entirely Manual" Process

The claims of the Network Map Patents are directed to "an automated technique for generating a network map"—a process described as previously being an "entirely manual" way of assigning content to be played on a certain channel at a certain time. *See* D.I. 13-2 ('811 patent) at 1:14-17, 24-29, 37-39. Similarly, the ML Training Patents are directed to "optimizing an event schedule"— automating a process that has been undertaken by performers and their agents, and owners or managers of venues, for decades. *See, e.g.,* D.I. 13-4 ('367 patent) at 1:14-19. In fact, with the exception of the use of a "machine learning technique" (Network Map Patents) and "iteratively training" a "machine learning model" (ML Training Patents), each of the claimed steps can be performed in the human mind or by a person using pen and paper.

The specification of the Network Map Patents confirms this: it explains that the claimed invention is intended to replace "the current process [which] is entirely manual" with "an automated technique." *See* D.I. 13-2 ('811 patent) at 1:24-29 and 1:37-43. The specification also describes that "[g]enerally, a network map is based upon an underlying schedule . . . [and] [i]n some instances, the underlying schedule can be generated using a conventional technique, ***e.g., manually***." *Id.* at 3:3-8 (emphasis added).

The same is true for the ML Training Patents, which the Patent Office confirmed is directed to the automation of known mental processes. *See, e.g.,* Ex. J (September 9, 2021 Office Action) at 2–3 ("[O]ther than reciting a computer for performing the steps, nothing in the claim elements precludes the steps from practically being performed in the human mind, or by a human using a pen and paper. An event planner or agent could reasonable [*sic*] compile a list of performers and

venues to develop a tour schedule and update a proposed schedule as changes occur.").

And Recentive itself concedes that its claimed network maps and event schedules can – and were – produced by prior art manual processes, albeit in a less sophisticated form. *See, e.g.,* D.I. 13 at ¶ 23 (discussing prior art network maps created by the NFL); ¶ 28 (discussing "prior art manual processes"); ¶ 32 (describing "traditional, conventional techniques used to generate event schedules"); ¶ 33 (discussing the "current manual process" for generating event schedules).

Thus, the steps of the claimed methods are simply directed to automating existing human processes. The Federal Circuit has recognized this as a "telltale sign of abstraction." *PersonalWeb*, 8 F.4th at 1316 (claims for data management tools are "directed to a medley of [human] mental processes" and therefore abstract). Indeed, taking a manual process and automating it is quintessentially an abstract idea. *See, e.g., Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) ("With the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper.") (internal citation omitted); *Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 2021 WL 97347, at *4 (Fed. Cir. Jan. 12, 2021) ("We have previously held that a process that can be and has been performed by humans without the use of a computer . . . is an abstract idea."). And as this Court has explained, "[h]umans have long been capable of sorting and organizing data, and using a computer to automate this concept is abstract." *Blackbird Tech LLC v. Advanced Discovery Inc.*, 2017 WL 2734725, at *4 (D. Del. June 26, 2017).

Moreover, the fact that the Network Map Patents include a bare recitation to the use of "a machine learning technique to optimize an overall television rating" (step 3) does not make the claims patentable. The same is true for the ML Training Patents, which specify the use of specific ML models that are iteratively trained using historical data (also step 3). This is because the

11

claimed machine learning techniques and models are admittedly known mathematical techniques such as a gradient boosted random forest, a regression, a neural network, a decision tree, a support vector machine, or a Bayesian network. *See, e.g.,* D.I. 13-2 ('811 patent) at 3:26-30; D.I. 13-4 ('367 patent) at 5:67-6:5; *see also* D.I. 13 at ¶ 29, 34.

Recentive alleges that these machine learning techniques "do not mimic mental processes, but are separate structures or architectures that receive, process, and generate data in a unique manner." D.I. 13 at ¶¶ 29, 34. Contrary to Recentive's assertions, however, these limitations simply reflect manipulating and organizing data using known mathematical techniques, which falls into "a familiar class of claims 'directed to' a patent ineligible concept." *Elec. Power,* 830 F.3d at 1353. Indeed, this Court has held that "selecting information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis," is not sufficient to confer patent eligibility. *Nuance Comms., Inc. v. MModal LLC*, No. 17-cv-1484-MN-SRF, 2018 WL 6584129, at *7–8 (D. Del. Dec. 14, 2018) (*citing SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018)). *See also, e.g., Eagle View Technologies, Inc. et al. v. Roofr, Inc.*, No. 1-21-cv-01852-RGA, 2023 WL 315633, at *8 (D. Del. Jan. 19, 2023) (granting motion to dismiss under Section 101 on the grounds that the asserted claim, "apart from generic computer-implemented activities, recite processes that can be accomplished off the computer," and that the claim failed to "recite technological improvements or benefits beyond the use of the predominant pitch algorithm, which is itself an abstract idea."); *Wireless Discovery LLC v. eHarmony, Inc.* No. 1-22-cv-480-GBW, 2023 WL 1778656, at *9 (D. Del. Feb. 6, 2023) (finding claims directed to the abstract idea of social networking not saved by the "recitation of data-processing steps, *e.g.,* sending, receiving, and processing data."). Thus, the addition of machine learning techniques as narrowing limitations does not remove the claims from the realm of an unpatentable abstract idea.

12

In this regard, *Health Discovery Corp. v. Intel Corp.,* is instructive.  577 F. Supp. 3d 570 (W.D. Tex. 2021).  In *Health Discovery,* the claims at issue related to a computer-implemented method for identifying patterns in data, comprising providing training data to a machine learning apparatus called a "support vector machine,"[2] and iteratively training it to improve accuracy using a technique called "recursive feature elimination."[3]  *Id.* at 574, 577.  The court surveyed the case law, and found that two Federal Circuit decisions in particular[4] were directly on point when considering claims directed to machine learning technologies.  *Id*. at 584.  The court noted that the "production of improved data relative to conventional mathematical methods could not render the claims eligible; the claims only amounted to an improvement in wholly abstract ideas—the selection and mathematical analysis of information," and that, applying that reasoning, the claims at issue "merely produce data with improved quality relative to that produced by conventional mathematical methods," and therefore were patent ineligible abstract ideas.  *Id.* at 584–85 (internal citations and quotation marks omitted).  That reasoning applies with equal force here: the "machine learning" limitations of the Patents-in-Suit simply cover the analysis of information using known generic mathematical techniques, to produce improved data sets relative to conventional practices.  This is an unpatentable abstract idea.

Recentive may counter that its claimed machine learning methods improve the speed,

---

[2] Representative claim 1 of '367 patent specifically recites "support vector ML models" as one type of machine learning technique to be used as part of the claimed method.  *See, e.g.,* D.I. 13-4 ('367 patent) at 14:16-26 ("at least one of a neural network ML model and a support vector ML model").

[3] The claims of the '367 patent also specifically recite iteratively training the ML model to improve accuracy.  *See, e.g.,* D.I. 13-4 ('367 patent) at 14:16-26 ("iteratively training the ML model…wherein such iterative training improves the accuracy of the ML model").

[4] *In re Bd. of Trustees of Leland Stanford Junior Univ.,* 991 F.3d 1245 (Fed. Cir. 2021) ("*Stanford I*") and *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ("*SAP*").

13

efficiency, and volume of data that can be calculated. *See, e.g.,* D.I. 13 at ¶ 20 (describing the amount and speed of data processing); ¶ 22 (asserting that the claimed method, involving "vast amounts of information" and analysis "in real-time," "achieves a better result than what a human could perform alone.") ¶ 23 ("the sheer magnitude of the solution space is beyond what can be performed in the human mind."); ¶ 28 (real time analysis is an improvement on prior art manual processes); ¶ 30 ("such multivariable analysis is too sophisticated for a human to perform."); ¶ 32 (use of large data sets and real time data to update event schedules is superior to prior art manual processes); ¶ 33 ("multivariable analysis, fed with massive amounts of real-time data, and iteratively trained" superior to what a human could do); and ¶ 35 (similar). But the Federal Circuit's "precedent is clear that merely adding computer functionality to increase the speed or efficiency of the [mental] process does not confer patent eligibility on an otherwise abstract idea." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015); *see also Health Discovery*, 577 F. Supp. 3d at 585 (same). Moreover, this Court has specifically held that claims that require "automatic, real-time analysis confirms that the claims are merely directed to using generic computer components to add efficiency and speed to the abstract idea." *Nice Sys. Ltd. v. Clockfox, Inc.,* 207 F. Supp. 3d 393, 401 (D. Del. 2016) (internal quotation marks omitted).

In sum, the Patents-in-Suit simply provide for a "computer-implemented" version of known practices—generating event schedules for television and live venues—that have been undertaken by humans for decades. The purported volume and speed of processing offered by machine learning notwithstanding, the claims are thus directed to an abstract idea.

### B.    Alice Step Two: The Patents Include No Inventive Concept

Where, as here, the claims are directed to an abstract idea under step one, the inquiry moves on to whether the elements of the claims recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea]

14

itself."  *Alice*, 573 U.S. at 218.

### 1.   Recitation of a "Computer" or "Computer Processors/Systems" Do Not Confer Patent Eligibility

The claims of the Patents-in-Suit variously recite the use of "a computer-implemented method," "one or more computer processors," and "one or more computer systems."  *See* Ex. B, Ex. E.  The specifications of the Patents-in-Suit make it clear that only generic and conventional computers are contemplated.  *See, e.g.,* D.I. 13-2 ('811 patent) at 5:4-6 ("FIG. 4 shows an example of a generic computing device 450, which may be used with the techniques described in this disclosure."); D.I. 13-4 ('367 patent) at 11:11-22 ("The operations described in this specification can be implemented . . . by a data processing apparatus . . . including by way of example a programmable processor, a computer, a system on a chip[.]").

These generic references to computing components fail to transform the claimed abstract idea into patent-eligible subject matter.  *See Alice*, 573 U.S. at 224 ("Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself.") (internal quotation marks and citations omitted); *Eagle View*, 2023 WL 315633, at *8 (recital of "conventional technology to implement conventional steps" not enough to confer patent eligibility); *Wireless Discovery*, 2023 WL 1778656, at *11 (finding that "computer components recited in the claims [that] are used for their conventional purposes" not sufficient to transform an abstract idea into an inventive concept).

### 2.   Recitation of a "Machine Learning Technique" or "Machine Learning Model" Does Not Confer Patent Eligibility

The additional limitations concerning "machine learning" likewise do not confer an inventive concept sufficient to impart patent eligibility.

The Network Map Patents claim a generic "machine learning technique" to "optimize an

15

overall television rating."  *See, e.g.,* '811 patent, claim 1; D.I. 13 at ¶ 27 ("The [Network Map Patents'] use of machine learning techniques to generate network maps . . . provides an improvement to traditional, conventional techniques used to generate network maps for scheduling multi-event broadcasts.")  However, these generic references to a "machine learning technique" fail to transform the claimed abstract idea into patent-eligible subject matter.

This is confirmed by *Power Analytics Corporation v. Operation Technology, Inc.*, in which the court found that the recitation of a "machine learning engine" in the claims did not turn an abstract idea into patentable subject matter, where "a few claims recite a 'machine learning engine' but the patents describe this in functional terms, without purporting to add any particular inventive implementation."  2017 WL 5468179, at *6 (C.D. Cal. July 13, 2017), *aff'd sub nom*, Fed. Appx. 334 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 910 (2020) (internal citations omitted).

Similarly, here, the Network Map Patents describe the use of a "machine learning technique" purely in functional terms (*e.g.,* "to optimize an overall television rating across the first plurality of live events and the second plurality of live events") without adding any particular inventive implementation.  The claims are simply a proverbial "black box" for implementing the technique: no information is provided about *how* the computer is programmed to perform the machine learning technique.  Further, the Network Map Patents provide no guidance on the selection of a particular machine learning technique or its use, stating that "any suitable machine learning technique can be used" and stating generally that "[t]he machine learning technique can be trained using any suitable training data."  *See* D.I. 13-2 ('811 patent) at 3:21-30.  Thus, as in *Power Analytics*, the "machine learning technique" limitations of the Network Map Patents impart no "inventive concept" to the abstract idea.  *See also, e.g., Alice*, 573 U.S. at 218 ("simply implementing a mathematical principle on a physical machine, namely a computer, is not a

16

patentable application of that principle.").

The same is true for the ML Training Patents.  The ML Training Patents recite the use of the ML model that is "at least one of a  neural network ML model and a support vector ML model," and "iteratively training the ML model . . . wherein such iterative training improves the accuracy of the ML model."  *See* D.I. 13-4 ('367 patent) at claim 1;  D.I. 13 at ¶ 32 ("The [ML Training Patents'] recitation of the use of machine learning techniques . . . provides an improvement to the traditional, conventional techniques used to generate event schedules.").  Recentive will likely rely on the Examiner's withdrawal of the Section 101 objections after Applicant added these narrowing limitations to the claims of the '367 patent.  *See* Ex. P (May 25, 2022 Notice of Allowance).

However, the Patent Office's determination is not binding on this Court,[5] and the case law makes it clear that these are not the kinds of "inventive concepts" that would in fact impart patent eligibility.  For example, in *Health Discovery*, the court found no inventive concept recited by the claimed method's disclosure of a specific type of iterative training (recursive feature elimination) of a particular machine learning algorithm (support vector machines).  577 F.Supp.3d at 585–87.  Instead, the court held that the recitation of specific machine learning techniques, and the use of data sets to iteratively train the ML model to improve the accuracy of data, did ***not*** save the claims from being found ineligible for patent protection.  *Id.*  The same is true here: the addition of narrowing limitations to recite the use of particular ML models and iteratively training those ML

---

[5] The Federal Circuit has made it clear that the Patent Office's guidance on questions of subject matter eligibility "is not, itself, the law of patent eligibility, does not carry the force of law, and is not binding on our patent eligibility analysis."  *In re Rudy*, 956 F.3d 1379, 1382 (Fed. Cir. 2020). And to the extent such guidance "contradicts or does not fully accord with our caselaw, it is our caselaw, and the Supreme Court precedent it is based upon, that must control."  *Id*. at 1383.  *See also, e.g., Cleveland Clinic Found. v. True Health Diagnostics LLC,* 760 F. App'x 1013, 1020 (Fed. Cir. 2019) ("While we greatly respect the PTO's expertise on all matters relating to patentability, including patent eligibility, we are not bound by its guidance.").

models is not sufficient to impart an inventive concept to the ML Training Patents.

### 3.    The Dependent Claims Do Not Contain Any Inventive Concept

The dependent claims of the Patents-in-Suit also fail to provide any inventive concepts that would transform the claimed abstract ideas into patent-eligible subject matter.

Dependent claims 2, 3, and 13 of the '811 patent and dependent claims 2, 3, 4, 5, 6, 15, 16, 17, 18, and 19 of the '957 patent merely specify the types of events that are to be scheduled (*e.g.,* "sporting events," "NFL games," "non-sporting events"). Dependent claims 11 and 19 of the '811 patent and dependent claims 13 and 26 of the '957 patent merely specify that the first and second times occur on the same day. These are insignificant extra-solution activities that do not impart an inventive concept. *Parker v. Flook*, 437 U.S. 584, 588-89 (1978).

Providing a "description" of an event, as disclosed by dependent claims 4 and 14 of the '811 patent, is merely a conventional practice when scheduling television content that does not impart an inventive concept. *See Content Extraction,* 776 F.3d at 1348 (no inventive concept in well-understood, routine, and conventional activities commonly used in industry).

Dependent claim 5 of the '811 patent specifies that the "change to the schedule comprises a manual change performed by a user"—a manual step that can be performed in the human mind or by a person using pen and paper does not add an inventive concept. Similarly, dependent claims 9 and 17 of the '811 patent and dependent claims 12 and 25 of the '957 patent require first "generating the schedule for the first plurality of live events and the second plurality of live event," which the specification confirms can be generated manually. *See, e.g.,* D.I. 13-2 ('811 patent) at 3:6-8.

Dependent claims 6 and 15 of the '811 patent and claims 7 and 20 of the '957 patent require "generating the network map based on at least one of weather data, news data, or gambling data." But "collecting and analyzing specific types of information from specific types of information sources (including real time measurements) . . . does nothing significant to differentiate a process

18

from ordinary mental processes." *Power Analytics*, 2017 WL 5468179, at \*5 (internal citations omitted). Thus, there is no inventive concept in these claims.

Dependent claim 7 of the '811 patent and dependent claims 8 and 21 of the '957 patent require that "the step of automatically updating the network map comprises optimizing the network map based on a particular parameter." And dependent claims 8 and 16 of the '811 patent and dependent claims 9 and 22 of the '957 patent require that "the particular parameter comprises the overall rating or a projected rating in a certain market for the plurality of television stations." These limitations fail for the same reason that optimizing "an overall television rating" when generating the network map fails in the independent claims— they can and are performed manually.

Dependent claims 10 of the '811 patent and dependent claim 10, 11, 18, 23, and 24 of the '957 patent variously require updating or generating multiple network maps in response to a change, including from the user. The fact that claimed process is repeated multiple times to create a network map or is done automatically in response to a change does not transform the claimed process into patent-eligible subject matter; "precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." *Intellectual Ventures I LLC*, 792 F.3d at 1370.

The dependent claims of the ML Training Patents fare no better. Dependent claims 2, 3, 7, 14, 16, and 17 of the '367 patent and dependent claims 2, 3, 7, 10, 15, 16, and 20 of the '960 patent specify the types of data used by the claimed algorithm (*e.g.* tentative future schedules; types of performers; dates of future events; specific countries, states, or cities; performers who are competitors with one another, etc.). And dependent claims 4, 5, 6, 12, 13 of the '367 patent and dependent claims 4, 5, 6, 13, 14 of the '960 patent, merely specify the types of target features that are to be prioritized (a specific venue, date, or time; total attendance; total attendance by a

19

particular demographic).  Again, these are insignificant extra-solution activities that do not impart an inventive concept.  *Parker*, 437 U.S. at 588-89.

Finally, dependent claims 8, 10, 18, and 20 of the '367 patent and dependent claims 8, 11, 17, and 19 of the '960 patent, specify that "detecting the real-time change" to certain event parameters or scheduling information comprises "collecting and/or analyzing social media data." As before, collecting and analyzing specific types of information from specific sources, including real-time measurements, "does nothing significant to differentiate a process from ordinary mental processes," and does not impart an inventive concept.  *Power Analytics*, 2017 WL 5468179, at *5.

### C.  Dismissal Without Leave to Amend Is Appropriate

Where, as here, a plaintiff has already amended the complaint to attempt to resolve patentability issues, and those amendments are insufficient to save the claims, then any further amendments would be futile and dismissal with prejudice is appropriate.  *See, e.g., ChargePoint, Inc. v. SemaConnect, Inc.,* 920 F.3d 759, 775 (Fed. Cir. 2019) (affirming dismissal with prejudice); *Citrix Sys., Inc. v. Avi Networks, Inc.,* 363 F. Supp. 3d 511, 525 (D. Del. 2019) (granting Section 101 motion for dismissal with prejudice due to futility of any amendments to save claims).

## VII.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court find that the Patents-in-Suit fail claim patent eligible subject matter, and dismiss Recentive's first amended complaint with prejudice.

Dated:  March 21, 2023

*/s/ Francis DiGiovanni*

Francis DiGiovanni (No. 3189)
Thatcher A. Rahmeier (No. 5222)
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

Michael E. Zeliger (*pro hac vice*)
Ranjini Acharya  (*pro hac vice*)
Pillsbury Winthrop Shaw Pittman LLP
2550 Hanover Street
Palo Alto, CA 94304
(650) 233-4500
michael.zeliger@pillsburylaw.com
ranjini.acharya@pillsburylaw.com

Evan Finkel (*pro hac vice*)
Michael S. Horikawa (*pro hac vice*)
Pillsbury Winthrop Shaw Pittman LLP
725 S Figueroa St – 36th Floor
Los Angeles, CA 90017
(213) 488-7307
evan.finkel@pillsburylaw.com
michael.horikawa@pillsburylaw.com

*Attorneys for Defendants Fox Corporation, Fox Broadcasting Company LLC, and Fox Sports Productions, LLC*

21