# EXHIBIT A

**Exhibit A: Comparison of Claim 1 with Claim 12 of the '811 Patent**

| US Patent No. 10,911,811 | US Patent No. 10,911,811 |
|---|---|
| 1. A *computer-implemented method* for dynamically generating a network map, the method comprising: | 12. A *system* for dynamically generating a network map, the system comprising:<br><br>*one or more computer processors programmed to perform operations comprising:* |
| receiving a schedule for a first plurality of live events scheduled to start at a first time and a second plurality of live events scheduled to start at a second time; | receiving a schedule for a first plurality of live events scheduled to start at a first time and a second plurality of live events scheduled to start at a second time; |
| generating, based on the schedule, a network map mapping the first plurality of live events and the second plurality of live events to a plurality of television stations for a plurality of cities, | generating, based on the schedule, a network map mapping the first plurality of live events and the second plurality of live events to a plurality of television stations for a plurality of cities, |
| wherein each station from the plurality of stations corresponds to a respective city from the plurality of cities, | wherein each station from the plurality of stations corresponds to a respective city from the plurality of cities, |
| wherein the network map identifies for each station (i) a first live event from the first plurality of live events that will be displayed at the first time and (ii) a second live event from the second plurality of live events that will be displayed at the second time, and | wherein the network map identifies for each station (i) a first live event from the first plurality of live events that will be displayed at the first time and (ii) a second live event from the second plurality of live events that will be displayed at the second time, and |
| wherein generating the network map comprises using a machine learning technique to optimize an overall television rating across the first plurality of live events and the second plurality of live events; | wherein generating the network map comprises using a machine learning technique to optimize an overall television rating across the first plurality of live events and the second plurality of live events; |
| automatically updating the network map on demand and in real time based on a change to at least one of (i) the schedule and (ii) underlying criteria, | automatically updating the network map on demand and in real time based on a change to at least one of (i) the schedule and (ii) underlying criteria, |
| wherein updating the network map comprises updating the mapping of the first plurality of | wherein updating the network map comprises updating the mapping of the first plurality of |

1

| US Patent No. 10,911,811 | US Patent No. 10,911,811 |
|---|---|
| live events and the second plurality of live events to the plurality of television stations; and<br><br>using the network map to determine for each station (i) the first live event from the first plurality of live events that will be displayed at the first time and (ii) the second live event from the second plurality of live events that will be displayed at the second time. | live events and the second plurality of live events to the plurality of television stations; and<br><br>using the network map to determine for each station (i) the first live event from the first plurality of live events that will be displayed at the first time and (ii) the second live event from the second plurality of live events that will be displayed at the second time. |

# EXHIBIT B

**Exhibit B: Comparison of Independent Claims of the '811 Patent and the '957 Patent**

| US Patent No. 10,911,811 | US Patent No. 10,958,957 |
|---|---|
| 1. A computer-implemented method for dynamically generating a network map, the method comprising: | 1. A computer-implemented method for dynamically generating a network map, the method comprising: |
| receiving a schedule for a first plurality of *live* events scheduled to start at a first time and a second plurality of *live* events scheduled to start at a second time; | obtaining a schedule for a first plurality of events scheduled to start at a first time and a second plurality of events scheduled to start at a second time; |
| generating, based on the schedule, a network map mapping the first plurality of *live* events and the second plurality of *live* events to a plurality of television stations for a plurality of cities, | generating, based on the schedule, a network map mapping the first plurality of events and the second plurality of events to a plurality of television stations for a plurality of cities, |
| wherein each station from the plurality of stations corresponds to a respective city from the plurality of cities, | wherein each station from the plurality of stations corresponds to a respective city from the plurality of cities, |
| wherein the network map identifies for each station (i) a first *live* event from the first plurality of *live* events that will be displayed at the first time and (ii) a second *live* event from the second plurality of *live* events that will be displayed at the second time, and | wherein the network map identifies for each station (i) a first event from the first plurality of events that will be displayed at the first time and (ii) a second event from the second plurality of events that will be displayed at the second time, and |
| wherein generating the network map comprises using a machine learning technique to optimize an overall television rating across the first plurality of *live* events and the second plurality of *live* events; | wherein generating the network map comprises using a machine learning technique to optimize an overall television rating across the first plurality of events and the second plurality of events; |
| automatically updating the network map on demand and in real time based on a change to at least one of (i) the schedule and (ii) underlying criteria, | automatically updating the network map on demand and in real time based on a change to at least one of (i) the schedule and (ii) underlying criteria, |
| wherein updating the network map comprises updating the mapping of the first plurality of *live* events and the second plurality of *live* | wherein updating the network map comprises updating the mapping of the first plurality of events and the second plurality of events to the plurality of television stations; and |

1

| US Patent No. 10,911,811 | US Patent No. 10,958,957 |
|---|---|
| events to the plurality of television stations; and<br><br>using the network map to determine for each station (i) the first *live* event from the first plurality of *live* events that will be displayed at the first time and (ii) the second *live* event from the second plurality of *live* events that will be displayed at the second time. | using the network map to determine for each station (i) the first event from the first plurality of events that will be displayed at the first time and (ii) the second event from the second plurality of events that will be displayed at the second time. |
| 12. A system for dynamically generating a network map, the system comprising:<br><br>one or more computer processors programmed to perform operations comprising:<br><br>*receiving* a schedule for a first plurality of *live* events scheduled to start at a first time and a second plurality of *live* events scheduled to start at a second time;<br><br>generating, based on the schedule, a network map mapping the first plurality of *live* events and the second plurality of *live* events to a plurality of television stations for a plurality of cities,<br><br>wherein each station from the plurality of stations corresponds to a respective city from the plurality of cities,<br><br>wherein the network map identifies for each station (i) a first *live* event from the first plurality of *live* events that will be displayed at the first time and (ii) a second *live* event from the second plurality of *live* events that will be displayed at the second time, and<br><br>wherein generating the network map comprises using a machine learning technique to optimize an overall television rating across the first plurality of live events and the second plurality of live events; | 14. A system for dynamically generating a network map, the system comprising:<br><br>one or more computer processors programmed to perform operations comprising:<br><br>*obtaining* a schedule for a first plurality of events scheduled to start at a first time and a second plurality of events scheduled to start at a second time;<br><br>generating, based on the schedule, a network map mapping the first plurality of events and the second plurality of events to a plurality of television stations for a plurality of cities,<br><br>wherein each station from the plurality of stations corresponds to a respective city from the plurality of cities,<br><br>wherein the network map identifies for each station (i) a first event from the first plurality of events that will be displayed at the first time and (ii) a second event from the second plurality of events that will be displayed at the second time, and<br><br>wherein generating the network map comprises using a machine learning technique to optimize an overall television rating across the first plurality of events and the second plurality of events; |

2

| US Patent No. 10,911,811 | US Patent No. 10,958,957 |
|---|---|
| automatically updating the network map on demand and in real time based on a change to at least one of (i) the schedule and (ii) underlying criteria,<br><br>wherein updating the network map comprises updating the mapping of the first plurality of *live* events and the second plurality of *live* events to the plurality of television stations; and<br><br>using the network map to determine for each station (i) the first *live* event from the first plurality of *live* events that will be displayed at the first time and (ii) the second *live* event from the second plurality of *live* events that will be displayed at the second time. | automatically updating the network map on demand and in real time based on a change to at least one of (i) the schedule and (ii) underlying criteria,<br><br>wherein updating the network map comprises updating the mapping of the first plurality of events and the second plurality of events to the plurality of television stations; and<br><br>using the network map to determine for each station (i) the first event from the first plurality of events that will be displayed at the first time and (ii) the second event from the second plurality of events that will be displayed at the second time. |

3

# EXHIBIT C

**Exhibit C: Comparison of Claims 1, 9, 11, and 19 of the '367 patent**

| Claim 1 | Claim 9 | Claim 11 | Claim 19 |
|---|---|---|---|
| 1. A computer-implemented method of dynamically generating an event schedule, the method comprising: | 9. A system comprising:<br><br>one or more computer systems programmed to perform operations comprising: | 11. A computer-implemented method of dynamically generating an event schedule, the method comprising: | 19. A system comprising:<br><br>one or more computer systems programmed to perform operations comprising: |
| receiving one or more event parameters for **series of** live events, wherein the one or more event parameters comprise at least one of venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; | receiving one or more event parameters for **series of** live events, wherein the one or more event parameters comprise at least one of venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; | receiving one or more event parameters for live events ***comprising performances by a plurality of performers***, wherein the one or more event parameters comprise at least one of ***a list of the performers,*** a list of available venues in a plurality of geographic regions, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; | receiving one or more event parameters for live events ***comprising performances by a plurality of performers***, wherein the one or more event parameters comprise at least one of ***a list of the performers,*** a list of available venues in a plurality of geographic regions, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; |
| receiving one or more event target features associated with the **series of** live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, | receiving one or more event target features associated with the **series of** live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, | receiving one or more event target features associated with live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof; | receiving one or more event target features associated with live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof; |

1

| Claim 1 | Claim 9 | Claim 11 | Claim 19 |
|---|---|---|---|
| event expenses, or any combination thereof;<br><br>providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model;<br><br>iteratively training the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model;<br><br>receiving, from a user, one or more user-specific event parameters for a future series of live events to be held in a plurality of geographic regions; | event expenses, or any combination thereof;<br><br>providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model;<br><br>iteratively training the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model;<br><br>receiving, from a user, one or more user-specific event parameters for a future series of live events to be held in a plurality of geographic regions; | providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model;<br><br>iteratively training the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to a plurality of previous live events, wherein such iterative training improves the accuracy of the ML model *apply*;<br><br>receiving, from a user, one or more user-specific event parameters for a plurality of future live events to be held in a plurality of geographic regions; | providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model;<br><br>iteratively training, *in a second stage,* the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to a plurality of previous live events, wherein such iterative training improves the accuracy of the ML model;<br><br>receiving, from a user, one or more user-specific event parameters for a plurality of future live events to be held in a plurality of geographic regions; |

2

| Claim 1 | Claim 9 | Claim 11 | Claim 19 |
|---|---|---|---|
| receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events; | receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events; | receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the plurality of future live events; | receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the plurality of future live events; |
| providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; | providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; | providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; | providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; |
| generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features; | generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features; | generating, via the trained ML model, a schedule for the plurality of future live events that is optimized relative to the one or more prioritized event target features; | generating, via the trained ML model, a schedule for the plurality of future live events that is optimized relative to the one or more prioritized event target features; |
| detecting a real-time change to the one or more user-specific event parameters; | detecting a real-time change to the one or more user-specific event parameters; | detecting a real-time change to the one or more user-specific event parameters; | detecting a real-time change to the one or more user-specific event parameters; |
| | ***providing the real-time change to the trained ML model;*** | | |
| providing the real-time change to the trained ML model to | providing the real-time change to the trained ML model to | providing the real-time change to the trained ML model to | providing the real-time change to the trained ML model to |

3

| Claim 1 | Claim 9 | Claim 11 | Claim 19 |
|---|---|---|---|
| improve the accuracy of the trained ML model; and<br><br>updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the one or more user-specific event parameters. | improve the accuracy of the trained ML model; and<br><br>updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the one or more user-specific event parameters. | improve the accuracy of the trained ML model; and<br><br>updating, via the trained ML model, the schedule for the plurality of future live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the one or more user-specific event parameters. | improve the accuracy of the trained ML model; and<br><br>updating, via the trained ML model, the schedule for the plurality of future live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the one or more user-specific event parameters. |

# EXHIBIT D

**Exhibit D: Comparison of Claims 1, 9, 12, and 18 of the '960 patent**

| Claim 1 | Claim 9 | Claim 12 | Claim 18 |
|---|---|---|---|
| 1. A computer-implemented method of dynamically generating an event schedule, the method comprising: | 9. A system comprising:<br><br>one or more computer systems programmed to perform operations comprising: | 12. A computer-implemented method of dynamically generating an event schedule, the method comprising: | 18. A system comprising:<br><br>one or more computer systems programmed to perform operations comprising: |
| receiving one or more event parameters for ***one or more series*** of live events, wherein the one or more event parameters comprise scheduling information for one or more performances by one or more performers; | receiving one or more event parameters for ***one or more series*** of live events, wherein the one or more event parameters comprise scheduling information for one or more performances by one or more performers; | receiving one or more event parameters for live events ***comprising performances by a plurality of performers***, wherein the one or more event parameters comprise scheduling information for one or more performances by one or more performers; | receiving one or more event parameters for live events ***comprising performances by a plurality of performers***, wherein the one or more event parameters comprise scheduling information for one or more performances by one or more performers; |
| receiving one or more event target features associated with ***the series of*** live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof; | receiving one or more event target features associated with ***the series of*** live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof; | receiving one or more event target features associated with live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof; | receiving one or more event target features associated with live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof; |
| providing the one or more event parameters and the one or more event target features to | providing the one or more event parameters and the one or more event target features to | providing the one or more event parameters and the one or more event target features to | providing the one or more event parameters and the one or more event target features to |

1

| Claim 1 | Claim 9 | Claim 12 | Claim 18 |
|---|---|---|---|
| a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model; | a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model; | a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model; | a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector *machine* ML model; |
| iteratively training the ML model to identify relationships between the one or more event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model; | iteratively training the ML model to identify relationships between the one or more event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model; | iteratively training the ML model to identify relationships between the one or more event parameters and the one or more event target features using historical data corresponding to a plurality of previous live events, wherein such iterative training improves the accuracy of the ML model; | iteratively training, *in a second stage,* the ML model to identify relationships between the one or more event parameters and the one or more event target features using historical data corresponding to a plurality of previous live events, wherein such iterative training improves the accuracy of the ML model; |
| receiving, from a user, one or more user-specific event parameters for a future series of live events associated with a first performer, the user-specific event parameters including scheduling information for one or more future performances by at least one second performer; | receiving, from a user, one or more user-specific event parameters for a future series of live events associated with a first performer, the user-specific event parameters including scheduling information for one or more future performances by at least one second performer; | receiving, from a user, one or more user-specific event parameters for a plurality of future live events associated with a first performer, the user-specific event parameters including scheduling information for one or more future performances by at least one second performer; | receiving, from a user, one or more user-specific event parameters for a plurality of future live events associated with a first performer, the user-specific event parameters including scheduling information for one or more future performances by at least one second performer; |

2

| Claim 1 | Claim 9 | Claim 12 | Claim 18 |
|---|---|---|---|
| receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events; | receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events; | receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the plurality of future live events; | receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the plurality of future live events; |
| providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; | providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; | providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; | providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; |
| generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features; | generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features; | generating, via the trained ML model, a schedule for the plurality of future live events that is optimized relative to the one or more prioritized event target features; | generating, via the trained ML model, a schedule for the plurality of future live events that is optimized relative to the one or more prioritized event target features; |
| detecting a real-time change to the scheduling information for the one or more future performances by the at least one second performer; | detecting a real-time change to the scheduling information for the one or more future performances by the at least one second performer; | detecting a real-time change to the scheduling information for the one or more future performances by the at least one second performer; | detecting a real-time change to the scheduling information for the one or more future performances by the at least one second performer; |
| providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and | providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and | providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and | providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and |

3

| Claim 1 | Claim 9 | Claim 12 | Claim 18 |
|---|---|---|---|
| updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the scheduling information for the one or more future performances by the at least one second performer. | updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the scheduling information for the one or more future performances by the at least one second performer. | updating, via the trained ML model, the schedule for the plurality of future live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the scheduling information for the one or more future performances by the at least one second performer. | updating, via the trained ML model, the schedule for the plurality of future live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the scheduling information for the one or more future performances by the at least one second performer. |

4

# EXHIBIT E

**Exhibit E: Comparison of Independent Claims of the '367 Patent and the '960 Patent**

| U.S. Patent No. 11,386,367 | U.S. Patent No. 11,537,960 |
|---|---|
| 1. A computer-implemented method of dynamically generating an event schedule, the method comprising:<br><br>receiving one or more event parameters for *series of* live events, wherein the one or more event parameters comprise at least one of *venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof*;<br><br>receiving one or more event target features associated with the series of live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof;<br><br>providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model;<br><br>iteratively training the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model;<br><br>receiving, from a user, one or more user-specific event parameters for a future series of live events *to be held in a plurality of geographic regions;* | 1. A computer-implemented method of dynamically generating an event schedule, the method comprising:<br><br>receiving one or more event parameters for *one or more series* of live events, wherein the one or more event parameters comprise *scheduling information for one or more performances by one or more performers*;<br><br>receiving one or more event target features associated with the series of live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof;<br><br>providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model;<br><br>iteratively training the ML model to identify relationships between the one or more event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model;<br><br>receiving, from a user, one or more user-specific event parameters for a future series of live events *associated with a first performer, the user-specific event parameters including scheduling information for one or more future performances by at least one second performer;* |

1

| U.S. Patent No. 11,386,367 | U.S. Patent No. 11,537,960 |
|---|---|
| receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events; | receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events; |
| providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; | providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; |
| generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features; | generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features; |
| detecting a real-time change **to the one or more user-specific event parameters**; | detecting a real-time change **to the scheduling information for the one or more future performances by the at least one second performer**; |
| providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and | providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and |
| updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the **one or more user-specific event parameters**. | updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the **scheduling information for the one or more future performances by the at least one second performer**. |
| 9. A system comprising: | 9. A system comprising: |
| one or more computer systems programmed to perform operations comprising: | one or more computer systems programmed to perform operations comprising: |
| receiving one or more event parameters for **series of** live events, wherein the one or more event parameters comprise at least one of **venue availability, venue locations, proposed ticket prices, performer fees, venue fees,** | receiving one or more event parameters for **one or more series** of live events, wherein the one or more event parameters comprise **scheduling information for one or more performances by one or more performers**; |

| U.S. Patent No. 11,386,367 | U.S. Patent No. 11,537,960 |
|---|---|
| *scheduled performances by one or more performers, or any combination thereof*; | |
| receiving one or more event target features associated with the series of live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof; | receiving one or more event target features associated with the series of live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof; |
| providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model; | providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model; |
| iteratively training the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model; | iteratively training the ML model to identify relationships between the one or more event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model; |
| receiving, from a user, one or more user-specific event parameters for a future series of live events *to be held in a plurality of geographic regions*; | receiving, from a user, one or more user-specific event parameters for a future series of live events *associated with a first performer, the user-specific event parameters including scheduling information for one or more future performances by at least one second performer*; |
| receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events; | receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events; |
| providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; | providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; |
| generating, via the trained ML model, a schedule for the future series of live events | generating, via the trained ML model, a schedule for the future series of live events |

3

| U.S. Patent No. 11,386,367 | U.S. Patent No. 11,537,960 |
|---|---|
| that is optimized relative to the one or more prioritized event target features; | that is optimized relative to the one or more prioritized event target features; |
| detecting a real-time change to *the one or more user-specific event parameters*; | detecting a real-time change to *the scheduling information for the one or more future performances by the at least one second performer*; |
| *providing the real-time change to the trained ML model;* | |
| providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and | providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and |
| updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to *the one or more user-specific event parameters*. | updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to *the scheduling information for the one or more future performances by the at least one second performer*. |
| 11. A computer-implemented method of dynamically generating an event schedule, the method comprising: | 12. A computer-implemented method of dynamically generating an event schedule, the method comprising: |
| receiving one or more event parameters for live events comprising performances by a plurality of performers, wherein the one or more event parameters comprise at least one of *a list of the performers, a list of available venues in a plurality of geographic regions, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof*; | receiving one or more event parameters for live events comprising performances by a plurality of performers, wherein the one or more event parameters comprise *scheduling information for one or more performances by one or more performers*; |
| receiving one or more event target features associated with live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event | receiving one or more event target features associated with live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event |

4

| U.S. Patent No. 11,386,367 | U.S. Patent No. 11,537,960 |
|---|---|
| revenue, event expenses, or any combination thereof; | revenue, event expenses, or any combination thereof; |
| providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model; | providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model; |
| iteratively training the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to a plurality of previous live events, wherein such iterative training improves the accuracy of the ML model *apply*; | iteratively training the ML model to identify relationships between the one or more event parameters and the one or more event target features using historical data corresponding to a plurality of previous live events, wherein such iterative training improves the accuracy of the ML model; |
| receiving, from a user, one or more user-specific event parameters for a plurality of future live events *to be held in a plurality of geographic regions*; | receiving, from a user, one or more user-specific event parameters for a plurality of future live events *associated with a first performer, the user-specific event parameters including scheduling information for one or more future performances by at least one second performer*; |
| receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the plurality of future live events; | receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the plurality of future live events; |
| providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; | providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; |
| generating, via the trained ML model, a schedule for the plurality of future live events that is optimized relative to the one or more prioritized event target features; | generating, via the trained ML model, a schedule for the plurality of future live events that is optimized relative to the one or more prioritized event target features; |
| detecting a real-time change to *the one or more user-specific event parameters*; | detecting a real-time change to *the scheduling information for the one or more* |

5

| U.S. Patent No. 11,386,367 | U.S. Patent No. 11,537,960 |
|---|---|
| | *future performances by the at least one second performer*; |
| providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and | providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and |
| updating, via the trained ML model, the schedule for the plurality of future live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to *the one or more user-specific event parameters*. | updating, via the trained ML model, the schedule for the plurality of future live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to *the scheduling information for the one or more future performances by the at least one second performer*. |
| 19. A system comprising:<br><br>one or more computer systems programmed to perform operations comprising:<br><br>receiving one or more event parameters for live events comprising performances by a plurality of performers, wherein the one or more event parameters comprise *at least one of a list of the performers, a list of available venues in a plurality of geographic regions, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof*;<br><br>receiving one or more event target features associated with live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof;<br><br>providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the | 18. A system comprising:<br><br>one or more computer systems programmed to perform operations comprising:<br><br>receiving one or more event parameters for live events *comprising performances by a plurality of performers*, wherein the one or more event parameters comprise *scheduling information for one or more performances by one or more performers*;<br><br>receiving one or more event target features associated with live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof;<br><br>providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network |

6

| U.S. Patent No. 11,386,367 | U.S. Patent No. 11,537,960 |
|---|---|
| ML model is at least one of a neural network ML model and a support vector ML model; | ML model and a support vector *machine* ML model; |
| iteratively training, in a second stage, the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to a plurality of previous live events, wherein such iterative training improves the accuracy of the ML model; | iteratively training, in a second stage, the ML model to identify relationships between the one or more event parameters and the one or more event target features using historical data corresponding to a plurality of previous live events, wherein such iterative training improves the accuracy of the ML model; |
| receiving, from a user, one or more user-specific event parameters for a plurality of future live events *to be held in a plurality of geographic regions*; | receiving, from a user, one or more user-specific event parameters for a plurality of future live events *associated with a first performer, the user-specific event parameters including scheduling information for one or more future performances by at least one second performer*; |
| receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the plurality of future live events; | receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the plurality of future live events; |
| providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; | providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; |
| generating, via the trained ML model, a schedule for the plurality of future live events that is optimized relative to the one or more prioritized event target features; | generating, via the trained ML model, a schedule for the plurality of future live events that is optimized relative to the one or more prioritized event target features; |
| detecting a real-time change to *the one or more user-specific event parameters*; | detecting a real-time change to *the scheduling information for the one or more future performances by the at least one second performer*; |
| providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and | providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and |

7

| U.S. Patent No. 11,386,367 | U.S. Patent No. 11,537,960 |
|---|---|
| updating, via the trained ML model, the schedule for the plurality of future live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to *the one or more user-specific event parameters*. | updating, via the trained ML model, the schedule for the plurality of future live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to *the scheduling information for the one or more future performances by the at least one second performer*. |

8

# EXHIBIT F

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/598,480 | 10/10/2019 | Andysheh Tabrizi | RCA-005 | 4678 |

51414        7590        01/31/2020
GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 NORTHERN AVENUE
BOSTON, MA 02210

| EXAMINER |
|---|
| CORBO, NICHOLAS T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2424 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 01/31/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

JGoodwin@goodwinlaw.com
PSousa-Atwood@goodwinlaw.com
US-PatentBos@goodwinlaw.com

PTOL-90A (Rev. 04/07)

| ***Office Action Summary*** | **Application No.**<br>16/598,480 | **Applicant(s)**<br>Tabrizi et al. | |
|---|---|---|---|
| | **Examiner**<br>NICHOLAS T CORBO | **Art Unit**<br>2424 | **AIA (FITF) Status**<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on <u>10/10/2019</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☐ This action is **FINAL.**   2b) ☑ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-20</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>1-20</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.
11)☑ The drawing(s) filed on <u>10/10/2019</u> is/are: a)☑ accepted or b)☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a)☐ All   b)☐ Some**   c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

| 1) ☑ Notice of References Cited (PTO-892) | 3) ☐ Interview Summary (PTO-413)<br>Paper No(s)/Mail Date _____. |
|---|---|
| 2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)<br>Paper No(s)/Mail Date _____. | 4) ☐ Other: _____. |

U.S. Patent and Trademark Office

PTOL-326 (Rev. 11-13)            Office Action Summary            Part of Paper No./Mail Date 20200125

Application/Control Number: 16/598,480                                                  Page 2
Art Unit: 2424

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first

inventor to file provisions of the AIA.

### DETAILED ACTION

### *Claim Rejections - 35 USC § 101*

1.      35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

2.      Claims 1-20 are rejected under 35 U.S.C. 101 because the claimed invention is directed to an

abstract idea without significantly more. The claims recite receiving a schedule for events, generating a

network map based on the schedule, and automatically updating the network map based on either a

change to the schedule or updated data, which are all mental processes capable of being performed in

the human mind or on pen and paper. This judicial exception is not integrated into a practical

application because not only does the abstract idea of claims 1-13 fail to positively recite that a

computer is actually executing the code the abstract idea represents, only that the code "can be"

implemented by a computer, and the abstract idea of claims 14-20 merely recites a computer that is

"*programmed* to perform" an operation rather than actually performing/executing the operation, claims

1-20 merely use a computer as a tool to perform an abstract idea.  The claims do not include additional

elements that are sufficient to amount to significantly more than the judicial exception because the

machine learning technique cited in claims 11 and 13 are also interpreted as code written to allow a

computer to learn a pattern using models, which is also interpreted as capable of being performed in

the human mind or on pen and paper, and therefore also does not positively recite any computer

executing the code.

Application/Control Number: 16/598,480                                              Page 3
Art Unit: 2424

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102

and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory

basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and

the rationale supporting the rejection, would be the same under either status.

### *Claim Rejections - 35 USC § 102*

3.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis

for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale
or otherwise available to the public before the effective filing date of the claimed invention.

4.      Claims 1-8, 10, 12, and 14-20 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by

Knudson et al (hereinafter Knudson) US 6536041.

Referring to claim 1, Knudson discloses a computer-implemented method for dynamically

generating a network map, the method comprising:

receiving a schedule for a plurality of events (**see Col. 6, Lines 11-14 for disclosing receiving**

**timing information/schedule for a plurality of events/programs**);

generating a network map based on the schedule (**see Fig. 3 and Col. 6, Lines 11-14 and Col. 8,**

**Lines 39-51 for disclosing the program listings information includes timing information/schedule that**

**is used to generate a program guide/map of the networks/channel for the events/programs available**

**at specific times**); and

automatically updating the network map based on at least one of (i) a change to the schedule

and (ii) updated data (**see Col. 13, Lines 4-48 for disclosing the system automatically updates the**

Application/Control Number: 16/598,480                                                                 Page 4
Art Unit: 2424

program guide information based on a change to the schedule and updated data, e.g., updated/real-time data that a game is delayed due to weather conditions).

Referring to claim 2, Knudson discloses the plurality of events comprises sporting events (**see Col. 13, Lines 4-48 for disclosing the events are sporting events**).

Referring to claim 3, Knudson discloses the sporting events comprise NFL games (**see Col. 11, Lines 54-64 for disclosing NFL games are a source for which the real-time data is received**).

Referring to claim 4, Knudson discloses the network map comprises a description of which event will be displayed on which channel at a particular time (**see Fig. 3 for disclosing a network map showing a description of events being displayed on different channels at a particular time**).

Referring to claim 5, Knudson discloses the channel comprises a television channel (**see Abstract for disclosing the disclosed program guide system is for use in an interactive television program guide**).

Referring to claim 6, Knudson discloses the change to the schedule comprises a manual change performed by a user (**see Col. 5, Line 53 – Col. 6, Line 10 for disclosing the change to the schedule, which originates from the real-time data source, is information that is provided to the television distribution facilities. This information requires some form of manual change via a user (e.g., a user provides the change of time information when the game is delayed)**).

Application/Control Number: 16/598,480                                                    Page 5
Art Unit: 2424

Referring to claim 7, Knudson discloses the updated data comprises data selected from the group consisting of weather data as seen in the rejection of claim 1.

Referring to claim 8, Knudson discloses the step of automatically updating the network map comprises optimizing the network map based on a particular parameter (**see the rejection of claim 1 for disclosing the automatic updating of the program guide is optimized/made better based on a particular parameter in the form of real-time accuracy of presentation information**).

Referring to claim 10, Knudson discloses the step of automatically updating the network map occurs in real time as seen in the rejection of claim 1.

Referring to claim 12, Knudson discloses prior to the receiving step, generating the schedule for the plurality of events (**see Col. 6, Lines 11-14 for disclosing the timing information/schedule for the plurality of events/programs of the program listings data has been generated prior to being received by the television distribution facility**).

Claim 14 is rejected on the same grounds as claim 1, further noting Knudson discloses a computer programmed to perform operations (**see Col. 6, Lines 54-57**).

Claim 15 is rejected on the same grounds as claim 2.

Claim 16 is rejected on the same grounds as claim 4.

Claim 17 is rejected on the same grounds as claim 7.

Application/Control Number: 16/598,480                                                                          Page 6
Art Unit: 2424

Claim 18 is rejected on the same grounds as claim 8.

Claim 19 is rejected on the same grounds as claim 10.

Claim 20 is rejected on the same grounds as claim 12.

### *Claim Rejections - 35 USC § 103*

5.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections

set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention
> was made.

6.      Claims 11 and 13 are rejected under 35 U.S.C. 103 as being unpatentable over Knudson et al

(hereinafter Knudson) US 6536041.

Referring to claim 11, Knudson discloses the step of automatically updating the network map as

seen in the rejection of claim 1.

Knudson is unclear as to using a machine learning technique.

Official Notice is taken that the use of a machine learning technique is well known in the art.

Therefore, it would have been obvious to a person having ordinary skill in the art, before the effective

filing date of the claimed invention, to modify Knudson to use a machine learning technique so that a

computer could be allowed to learn a pattern using models.

Application/Control Number: 16/598,480                                                          Page 7
Art Unit: 2424

Referring to claim 13, Knudson discloses the step of generating the schedule as seen in the rejection of claim 12.

Knudson is unclear as to using a machine learning technique.

Official Notice is taken that the use of a machine learning technique is well known in the art. Therefore, it would have been obvious to a person having ordinary skill in the art, before the effective filing date of the claimed invention, to modify Knudson to use a machine learning technique so that a computer could be allowed to learn a pattern using models.

7.      Claim 9 is rejected under 35 U.S.C. 103 as being unpatentable over Knudson et al (hereinafter Knudson) US 6536041 in view of non-patent literature from the506.com captured via archive.org (hereinafter "the506").

Referring to claim 9, Knudson discloses the limitations as seen in the rejection of claim 8.

Knudson is unclear as to the particular parameter comprises a projected overall rating or a projected rating in a certain market.

"the506" discloses the particular parameter comprises a projected overall rating or a projected rating in a certain market (**see page 2, Blackouts section and Page 3, Flex Scheduling section for multiple examples of projected ratings determining the optimal update to the network map/change to the scheduled time and channel of the event**).

Before the effective filing date of the claimed invention, it would have been obvious to a person having ordinary skill in the art to incorporate the ratings parameter of "the506" with the system of Knudson in order to allow the choice as to which game is to be shown to be determined by which game to be projected to do the best or garner the larger ratings (**see page 2, Blackouts section**).

Application/Control Number: 16/598,480                                                           Page 8
Art Unit: 2424

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to NICHOLAS T CORBO whose telephone number is (571)270-5675.  The examiner

can normally be reached on Monday - Friday 11am-7pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

Pankaj Kumar can be reached on 571-272-3011.  The fax phone number for the organization where this

application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application

Information Retrieval (PAIR) system.  Status information for published applications may be obtained

from either Private PAIR or Public PAIR.  Status information for unpublished applications is available

through Private PAIR only.  For more information about the PAIR system, see http://pair-

direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer

Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.

/NICHOLAS T CORBO/                                          01/27/2020
Primary Examiner, Art Unit 2427

# EXHIBIT G

Docket No.: RCA-005
(PATENT)

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Patent Application of:
Andysheh Tabrizi et al.

| | |
|---|---|
| Application No.: 16/598,480 | Confirmation No.: 4678 |
| Filed: October 10, 2019 | Art Unit: 2424 |
| For:  SYSTEMS AND METHODS FOR AUTOMATICALLY AND DYNAMICALLY GENERATING A NETWORK MAP | Examiner: Corbo, Nicholas T. |

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

**<u>AMENDMENT AND RESPONSE</u>**

This paper responds to the Office action electronically sent from the Patent Office on January 31, 2020.

Applicant believes that no additional fees are due in connection with the filing of this paper; however, in the event that any such fees are due, the Commissioner is hereby authorized to charge such fees to Deposit Account No. 07-1700 (under Ref. No. RCA-005).

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks** begin on page 5 of this paper.

Application No.: 16/598,480                                         Docket No.: RCA-005

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application.

**Listing of claims:**

1.      (Currently Amended)  A computer-implemented method for dynamically generating a network map, the method comprising:

receiving a schedule for a plurality of events;

generating a network map based on the schedule and underlying criteria using a machine learning technique and data; [[and]]

displaying the network map to a user on a display having a graphical user interface depicting the network map in chart format;

automatically updating the network map on demand and in real time based on a user entered change to at least one of (i) ~~a change to~~ the schedule and (ii) the underlying criteria ~~updated data;~~ and

displaying an updated network map to the user on the display having the graphical user interface depicting the updated network map in chart format.

2.      (Original)  The method of claim 1, wherein the plurality of events comprises sporting events.

3.      (Original)  The method of claim 2, wherein the sporting events comprise NFL games.

4.      (Original)  The method of claim 1, wherein the network map comprises a description of which event will be displayed on which channel at a particular time.

5.      (Original)  The method of claim 4, wherein the channel comprises a television channel.

6.      (Original)  The method of claim 1, wherein the change to the schedule comprises a manual change performed by a user.

2

Application No.: 16/598,480                                                    Docket No.: RCA-005

7.      (Currently Amended)  The method of claim 1, wherein the ~~updated~~ data comprises data

selected from the group consisting of weather data, news data, and gambling data.

8.      (Original)  The method of claim 1, wherein the step of automatically updating the network

map comprises optimizing the network map based on a particular parameter.

9.      (Original)  The method of claim 8, wherein the particular parameter comprises a projected

overall rating or a projected rating in a certain market.

10.-11.  (Cancelled)

12.      (Original)  The method of claim 1, further comprising, prior to the receiving step, generating

the schedule for the plurality of events.

13.      (Original)  The method of claim 12, wherein the step of generating the schedule comprises

using a machine learning technique.

14.      (Currently Amended)  A system for dynamically generating a network map, the system

comprising:

        one or more computers programmed to perform operations comprising:

                receiving a schedule for a plurality of events;

                generating a network map based on the schedule <u>and underlying criteria using a</u>

<u>machine learning technique and data</u>; [[and]]

                <u>displaying the network map to a user on a display having a graphical user interface</u>

<u>depicting the network map in chart format;</u>

                automatically updating the network map <u>on demand and in real time</u> based on <u>a user</u>

<u>entered change to</u> at least one of (i) ~~a change to~~ the schedule and (ii) <u>the underlying criteria</u> ~~updated~~

~~data~~<u>; and</u>

3

Application No.: 16/598,480                                                    Docket No.: RCA-005

<u>displaying an updated network map to the user on the display having the graphical user interface depicting the updated network map in chart format</u>.

15.     (Original)  The system of claim 14, wherein the plurality of events comprises sporting events.

16.     (Original)  The system of claim 14, wherein the network map comprises a description of which event will be displayed on which channel at a particular time.

17.     (Currently Amended)  The system of claim 14, wherein the ~~updated~~ data comprises data selected from the group consisting of weather data, news data, and gambling data.

18.     (Original)  The system of claim 14, wherein the operations further comprise automatically updating the network map comprises optimizing the network map based on a particular parameter.

19.     (Cancelled)

20.     (Original)  The system of claim 14, wherein the operations further comprise prior to the receiving step, generating the schedule for the plurality of events.

21.     (New)  The method of claim 1, wherein the automatically updating step comprises generating multiple network maps based on multiple user entered changes.

22.     (New)  The system of claim 14, wherein the automatically updating operation comprises generating multiple network maps based on multiple user entered changes.

4

Application No.: 16/598,480                                                    Docket No.: RCA-005

## REMARKS

Administrative Overview

In the Office action mailed on January 31, 2020 (the "Office action"), the Office:

- rejected claims 1-20 under 35 U.S.C. § 101 as being directed to an unpatentable abstract idea;

- rejected claims 1-8, 10, 12, and 14-20 under 35 U.S.C. § 102(a)(1) as being anticipated by U.S. Patent No. 6,536,041 to Knudson et al. ("Knudson");

- rejected claims 11 and 13 under 35 U.S.C. § 103 as being unpatentable over Knudson; and

- rejected claim 9 under 35 U.S.C. § 103 as being unpatentable over Knudson in view of non-patent literature from the506.com ("the506.com").

After entry of this Response, claims 1-9, 12-18, and 20-22 will be pending. Applicant hereby amends claims 1, 7, 14, and 17, cancels claims 10-11 and 19, and adds new claims 21-22, all without prejudice. Support for the amendments to the claims and new claims can be found throughout the originally filed specification and figures (the "Application"), including at least at paragraph [0022], [0029] and FIGS. 1B, 2B. As such, no new matter is added.

**Rejections under 35 U.S.C. § 101**

Claims 1-20 are rejected under 35 U.S.C. § 101 as being directed to an unpatentable abstract idea. Claims 10-11 and 19 have been cancelled, rendering the rejection of those claims moot. Applicant respectfully traverses this rejection to the extent it is maintained over the remaining claims, as amended, for at least the reasons set forth below.

Applicant analyzes the claims using the two-step _Alice_ framework as interpreted by the Office in the 2019 Revised Patent Subject Matter Eligibility Guidance ("the January 2019 Guidance").[1]

I.       Step 1 of the _Alice_ Framework

The pending claims are drawn to a method for dynamically generating a network map and to a system. Thus, Applicant respectfully submits that each of the claims is drawn to a statutory category of subject matter.

---

[1] 2019 Revised Patent Subject Matter Eligibility Guidance, Federal Register vol. 84, no. 4 (January 7, 2019) (hereinafter "the January 2019 Guidance").

II.    Revised Step 2A of the *Alice* Framework: Even Assuming That Amended Independent Claim 1 Recites a Judicial Exception, the Claim Integrates Its Subject Matter into a Practical Application and Therefore is Not Directed to a Judicial Exception

Under the January 2019 Guidance, Revised Step 2A of the <u>Alice</u> framework consists of two prongs.[2] At Prong 1, any claim limitations that recite judicial exceptions are identified, with the remaining limitations being treated as "additional elements."[3] At Prong 2, the claim as a whole is evaluated to determine whether it integrates the claimed subject matter into a practical application.[4] For at least the reasons discussed below, even assuming (without conceding) that independent claim 1 recites one or more judicial exceptions, Applicant respectfully submits that the portions of the claim that recite the structure and function of the "display having a graphical user interface" are additional elements that integrate the claimed subject matter into a practical application. Thus, amended independent claim 1 is not directed to a judicial exception.

II.A.    <u>Prong 1 of Revised Step 2A of the *Alice* Framework</u>

Even assuming (without conceding) that the previously recited steps fall within the "mental process" grouping of abstract ideas, Applicant respectfully submits that the newly added "displaying steps" do not recite abstract ideas. Thus, the "displaying steps" are additional elements of independent claim 1 for purposes of Prong 2 of Step 2A and for purposes of Step 2B.

II.B.    <u>Prong 2 of Revised Step 2A of the *Alice* Framework</u>

Even assuming (without conceding) that independent claim 1 recites one or more abstract ideas, Applicant respectfully submits that the newly added "displaying steps" integrate the claimed subject matter into a practical application.

The January 2019 Guidance expressly states "that revised Step 2A specifically excludes consideration of whether the additional elements represent well-understood, routine, conventional activity," and instructs Examiners "that they <u>give weight to all additional elements, whether or not they are conventional</u>, when evaluating whether a judicial exception has been integrated into a practical application" (emphasis added).

When the displaying steps are given weight at Prong 2 of Step 2A as required by the January 2019 Guidance, Applicant respectfully submits that these portions of the claim integrate the claimed subject matter into a practical application. In particular, Applicant respectfully submits that

---

[2] The January 2019 Guidance, pp. 50-55.
[3] The January 2019 Guidance, p. 54.
[4] The January 2019 Guidance, pp. 54-55.

Application No.: 16/598,480                                    Docket No.: RCA-005

the claimed displaying allow users to better and more easily understand the network map and, importantly, the implications of changes to the underlying schedule on the network map, thereby integrating the claimed subject matter into a practical application and rendering independent claim 1 eligible for patenting, for at least the reasons described below.

At Prong 2 of Revised Step 2A of the Alice framework, the presence in the claim of an additional element that "reflects an improvement in the functioning of a computer, or any improvement to other technology or technical field" indicates that the claim integrates the judicial exception(s) recited therein into a practical application.[5]  Applicant respectfully submits that the displaying steps recited in claim 1 reflect an improvement to computer-based network map generation systems and therefore integrate the claimed subject matter into a practical application at least for reasons similar to the reasons articulated by the Federal Circuit in Trading Techs. Int'l, Inc. v. CQG, Inc.[6]

In Trading Techs, the Federal Circuit held that claims directed to improvements in graphical user interfaces for electronic stock trading systems were not directed to an abstract idea because the "claims require a specific, structured graphical user interface paired with a prescribed functionality directly related to the graphical user interface's structure that is addressed to and resolves a specifically identified problem in the prior state of the art."[7]  In particular, the Federal Circuit observed that conventional stock trading systems performed poorly in certain scenarios, such as (1) "when a trader attempt[ed] to enter an order at a particular price, but miss[ed] the price because the marked moved before the order was entered and executed" or (2) when trades were "executed at different prices than intended, due to rapid market movement."[8]  The claims at issue in Trading Techs recite "a trading system [having] a graphical user interface," in which "bid and asked prices are displayed dynamically along the static display, and the system pairs orders with the static display of prices and prevents order entry at a changed price."[9]  These structural and functional improvements to the GUI allow traders (1) to accurately assess the financial characteristics (e.g., price P1) of shares of a stock before entering into a trade and (2) to avoid inadvertently entering into a trade for shares of the stock having different financial characteristics (e.g., a different price P2). Accordingly, the Federal Circuit concluded that claims reciting the specific structure and functionality of the improved GUI are not directed to an abstract idea because the claimed aspects

---

[5] The January 2019 Guidance, pp. 55.
[6] Trading Techs. Int'l, Inc. v. CQG, Inc, (Fed. Cir. 2017) (submitted herewith) (hereinafter "Trading Techs").
[7] Trading Techs, pp. 3 and 6.
[8] Trading Techs at p. 3.
[9] Trading Techs at p. 3.

7

Application No.: 16/598,480                                    Docket No.: RCA-005

of the GUI "allows traders to more efficiently and accurately place trades using this electronic trading system."[10]

Like the claims in Trading Techs, independent claim 1 of the instant application recites "a specific, structured graphical user interface paired with a prescribed functionality directly related to the graphical user interface's structure." Just as the improved GUI recited in the claims in Trading Techs "is addressed to and resolves a specifically identified problem in the prior state of the art" of electronic trading systems, the displaying steps recited in amended independent claim 1 are addressed to and resolve a specifically identified problem in the prior state of the art of network map generation. Specifically, the improved GUI recited in claim 1 allows users (1) to accurately and quickly analyze a network map and the implications to the network map on any changes to the underlying schedule.

For at least these reasons, the displaying steps and timing requirement of independent claim 1 integrate the claimed subject matter into a practical application and render independent claim 1 eligible for patenting.


III.    Step 2B of the *Alice* Framework

Even assuming (without conceding) that the displaying steps do not integrate claimed subject matter into a practical application, Applicant respectfully submits that these portions of claim 1 amount to significantly more than a judicial exception. The claimed displaying steps are not well-understood, routine or conventional and reflect an improvement to a technology or technical field, which indicates that the claim recites significantly more than a judicial exception.

For at least these reasons, the displaying steps of independent claim 1 recites significantly more than a judicial exception and renders independent claim 1 eligible for patenting.


IV.    All the Claims are Patent-Eligible

Claims 2-9 and 12-13 depend from independent method claim 1 and are directed to patent-eligible subject matter for at least the same reasons. For reasons that should be apparent from the discussion above, corresponding independent system claim 14, when taken as a whole, is also directed to patent eligible subject matter. Claims 15-18 and 20 depend from independent system claim 14 and are directed to patent-eligible subject matter for at least the same reasons.

---

[10] Trading Techs at pp. 6-7 (emphasis added).

8

Application No.: 16/598,480                                    Docket No.: RCA-005

Accordingly, claims 1-9, 12-18, and 20 constitute patent eligible subject matter.  Reconsideration and withdrawal of the rejections of these claims under § 101 is respectfully requested.

**Rejections under 35 U.S.C. § 102**

Claims 1-8, 10, 12, and 14-20 are rejected under 35 U.S.C. § 102(a)(1) as being anticipated by Knudson.  Claims 10 and 19 have been cancelled, rendering the rejection of those claims moot. Applicant respectfully traverses this rejection to the extent it is maintained over the remaining claims, as amended, for at least the reasons set forth below.

A prior art reference is not anticipatory unless it discloses expressly or inherently all of the claim limitations, as well as "all of the limitations arranged or combined in the same way as recited in the claim." (*NetMoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359 (Fed. Cir. 2008)).  A determination of anticipation requires that "[the] reference must clearly and unequivocally disclose the claimed [invention] or direct those skilled in the art to the [invention] without any need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference." (*In re Arkley*, 455 F.2d 586, 587 (C.C.P.A. 1972)).  As discussed below, Applicant respectfully submits that Knudson does not meet this exacting test when applied against the claims, as amended.

Knudson appears to describe a television program guide system that is configured to "update program listings … using real-time data provided by real-time data sources." (Knudson, col. 13, ll. 4-7).  However, Knudson includes no description of a system in which a network map is updated "based on a <u>user entered change</u> to at least one of (i) the schedule and (ii) the underlying criteria," as claimed by Applicant.

In view of the foregoing, Applicant submits that amended independent claim 1 is patentable over Knudson.  Independent system claim 14 is amended to include similar limitations to independent method claim 1 and is patentable over Knudson for at least the same reasons provided above with respect to claim 1.  Dependent claims 2-8, 10, 12, 14-18, and 20 all depend from one of independent claim 1 or independent claim 14 and are also patentable over Knudson, for at least the reasons provided above.  Accordingly, Applicant respectfully requests that the rejection of claims 1-8, 10, 12, and 14-20 as anticipated by Knudson be reconsidered and withdrawn.

**Rejections Under 35 U.S.C. § 103**

Claims 11 and 13 are rejected under 35 U.S.C. § 103 as being unpatentable over Knudson. Claim 11 has been cancelled, rendering the rejection of claim 11 moot.  Applicant respectfully

Application No.: 16/598,480                                      Docket No.: RCA-005

traverses this rejection, to the extent it is maintained over the remaining claims, as amended, for at least the reasons set forth below.

Applicant notes that claim 13 depends from amended independent claim 1 and is patentable at least because of the deficiencies of Knudson detailed above with respect to independent claim 1.

Applicant notes that the Examiner has taken official notice of the limitations of dependent claim 13. Applicant respectfully traverses the official notice and submits that the limitation recited in claim 13 is not a fact that is "well-known, or [is] common knowledge in the art," or that is "capable of instant and unquestionable demonstration as being well-known." (*See* MPEP § 2144.03(A), (C)).

Accordingly, Applicant respectfully requests that the rejection of claim 13 as unpatentable over Knudson be reconsidered and withdrawn.

Claim 9 is rejected under 35 U.S.C. § 103 as being unpatentable over Knudson in view of the506.com. Applicant respectfully traverses this rejection, to the extent it is maintained over the amended claims, for at least the reasons set forth below.

Applicant notes that claim 9 depends from amended independent claim 1 and is patentable at least because the506.com fails to cure the deficiencies of Knudson detailed above with respect to independent claim 1. the506.com is only relied upon in the Office action for teaching the use of projected rankings in updating a network map.

Accordingly, Applicant respectfully requests that the rejection of claim 9 as unpatentable over Knudson in view of the506.com be reconsidered and withdrawn.

**New Claims 21-22**

New claims 21-22 depend from one of independent claim 1 or independent claim 14 and include all the limitations thereof and are patentable over each of the applied references for at least the reasons provide above with respect to independent claim 1 or independent claim 14.

Accordingly, Applicant respectfully requests that new claims 21-22 be allowed as well.

Application No.: 16/598,480                                              Docket No.: RCA-005

## CONCLUSION

In light of the foregoing, Applicant submits that all pending claims are now in condition for allowance.  Accordingly, Applicant respectfully requests reconsideration, withdrawal of all grounds of rejection, and allowance of all claims in due course.

If the Examiner believes that a telephone conversation with Applicant's attorney would expedite the allowance of this application or would be helpful in resolving any other outstanding issue, the Examiner is encouraged to call the undersigned at the telephone number set forth below.


Dated:  March 13, 2020                          Respectfully submitted,

                                                Electronic signature:  /Martin Gomez/
                                                Martin Gomez
                                                   Registration No.: 68,762
                                                GOODWIN PROCTER LLP
                                                100 Northern Avenue
                                                Boston, Massachusetts 02210
                                                (617) 570-1836
                                                Attorney for Applicant


ACTIVE/96955160.1

11

# EXHIBIT H

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/598,480 | 10/10/2019 | Andysheh Tabrizi | RCA-005 | 4678 |

51414          7590          06/23/2020
GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 NORTHERN AVENUE
BOSTON, MA 02210

| EXAMINER |
|---|
| CORBO, NICHOLAS T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2424 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/23/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

JGoodwin@goodwinlaw.com
PSousa-Atwood@goodwinlaw.com
US-PatentBos@goodwinlaw.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. 16/598,480 | Applicant(s) Tabrizi et al. | |
|---|---|---|---|
| | Examiner NICHOLAS T CORBO | Art Unit 2424 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on 03/13/2020.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☑ This action is **FINAL.**     2b) ☐ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s)  1-9,12-18 and 20-22 is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) 1-9,12-18 and 20-22 is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.
11)☐ The drawing(s) filed on _____ is/are:  a)☐  accepted or  b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a)☐ All     b)☐ Some**     c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
  Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 11-13)     **Office Action Summary**     Part of Paper No./Mail Date 20200618

Application/Control Number: 16/598,480                                                                    Page 2

Art Unit: 2424

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first

inventor to file provisions of the AIA.

### DETAILED ACTION

### *Response to Arguments*

Applicant's arguments with respect to claims 1-9, 12-18, and 20-22 have been considered but

are moot based on the new grounds of rejection.

### *Claim Rejections - 35 USC § 112*

1.      The following is a quotation of 35 U.S.C. 112(b):

(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out
and distinctly claiming the subject matter which the inventor or a joint inventor regards as the
invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:

The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

2.      Claims 1-9, 12-18, and 20-22 rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second

paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter

which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

Claims 1 and 14, respectively, cite "a user entered change". Claims 1 and 14 already possess a

possible antecedent basis for the limitation of "a user". It is indefinite as to whether the entered change

is entered by the previously cited user, or a different user.

Claims 6 cites "…performed by a user." Claim 1 already possesses a possible antecedent basis for

the limitation of "a user". It is indefinite as to whether this limitation is referring to the previously cited

user, or a different user.

Application/Control Number: 16/598,480                                    Page 3
Art Unit: 2424

Claim 13 cites "…using a machine learning technique." Claim 1 already possesses a possible antecedent basis for the limitation of "a machine learning technique". It is indefinite as to whether this limitation is referring to the previously cited machine learning technique, or a different machine learning technique.

Clarification is required.

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

### *Claim Rejections - 35 USC § 103*

3.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

4.      Claims 1-8, 12-18, and 20-22 are rejected under 35 U.S.C. 103 as being unpatentable over Knudson et al (hereinafter Knudson) US 6536041 in view of Chung et al (hereinafter Chung) US 20190297381.

Referring to claim 1, Knudson discloses a computer-implemented method for dynamically generating a network map, the method comprising:

Application/Control Number: 16/598,480                                           Page 4

Art Unit: 2424

receiving a schedule for a plurality of events (**see Col. 6, Lines 11-14 for disclosing receiving timing information/schedule for a plurality of events/programs**);

generating a network map based on the schedule and underlying criteria using data (**see Figs. 3, 13, an 16 and Col. 6, Lines 11-14, Col. 8, Lines 39-51, and Col. 13, Line 49 – Col. 14, Line 37 for disclosing the program listings information includes timing information/schedule that is used to generate a program guide/map of the networks/channel for the events/programs available at specific times, wherein Col. 16, Lines 18-54 discloses the network map is generated based on underlying criteria using data/preferences for the guide**);

displaying the network map to a user on a display having a graphical user interface depicting the network map in chart format (**see Figs. 3 and 13 for disclosing the GUI interface displayed to a user depicting network maps in chart format**);

automatically updating the network map on demand and in real-time based on a user entered change to the underlying criteria and displaying an updated network map to the user on the display having the graphical user interface depicting the updated network map in chart format (**see Col. 16, Lines 18-54 for disclosing the based on the user entering changes to the underlying criteria/preferences, the network map is updated on demand (by command of the user) and automatically (the system updates the information visibly displayed in the network map, not manually done by the user), wherein the process described displays the updated chart-format network map once the user has entered the changes or enabled the changes, interpreted as real-time**).

Knudson discloses the generation of a network map/channel guide comprised of user-preferred media content in chart form displayed upon a GUI according to user preferences, but Knudson is unclear as to generating a network map using a machine learning technique.

Application/Control Number: 16/598,480                                                          Page 5
Art Unit: 2424

Chung discloses generating a channel guide using a machine learning technique (**see Paragraphs 0009-0010, 0214, and 0265-0271 for disclosing the system uses machine learning techniques to generate media content for GUI display that the system derives will be user-preferred based on the machine learning technique**).

Before the effective filing date of the claimed invention, it would have been obvious to a person having ordinary skill in the art to incorporate the machine learning techniques of Chung with the system of Knudson in order to provide content with high satisfaction level for each viewer through determining an emotional state of the viewer using a boredom sensing module updated based on a user's feedback (**see Chung, Paragraphs 0012**).

Referring to claim 2, Knudson discloses the plurality of events comprises sporting events (**see Col. 13, Lines 4-48 for disclosing the events are sporting events**).

Referring to claim 3, Knudson discloses the sporting events comprise NFL games (**see Col. 11, Lines 54-64 for disclosing NFL games are a source for which the real-time data is received**).

Referring to claim 4, Knudson discloses the network map comprises a description of which event will be displayed on which channel at a particular time (**see Figs. 3 and 13 for disclosing a network map showing a description of events being displayed on different channels at a particular time**).

Referring to claim 5, Knudson discloses the channel comprises a television channel (**see Abstract for disclosing the disclosed program guide system is for use in an interactive television program guide**).

Application/Control Number: 16/598,480                                                    Page 6
Art Unit: 2424

Referring to claim 6, Knudson discloses the change to the schedule comprises a manual change performed by a user (**see Col. 5, Line 53 – Col. 6, Line 10 for disclosing the change to the schedule, which originates from the real-time data source, is information that is provided to the television distribution facilities. This information requires some form of manual change via a user (e.g., a user provides the change of time information when the game is delayed)**).

Referring to claim 7, Knudson discloses the updated data comprises data selected from the group consisting of weather data as seen in the rejection of claim 1.

Referring to claim 8, Knudson discloses the step of automatically updating the network map comprises optimizing the network map based on a particular parameter (**see the rejection of claim 1 for disclosing the automatic updating of the program guide is optimized/made better based on a particular parameter in the form of real-time accuracy of presentation information**).

Referring to claim 12, Knudson discloses prior to the receiving step, generating the schedule for the plurality of events (**see Col. 6, Lines 11-14 for disclosing the timing information/schedule for the plurality of events/programs of the program listings data has been generated prior to being received by the television distribution facility**).

Referring to claim 13, Knudson discloses generating the schedule as seen in the rejection of claim 12. Chung discloses the use of a machine learning technique to provide a channel listing of recommended content to a user as seen in the rejection of claim 1.

Application/Control Number: 16/598,480                                                                Page 7

Art Unit: 2424

Claim 14 is rejected on the same grounds as claim 1, further noting Knudson discloses a

computer programmed to perform operations (**see Col. 6, Lines 54-57**).

Claim 15 is rejected on the same grounds as claim 2.

Claim 16 is rejected on the same grounds as claim 4.

Claim 17 is rejected on the same grounds as claim 7.

Claim 18 is rejected on the same grounds as claim 8.

Claim 20 is rejected on the same grounds as claim 12.

Referring to claim 21, Knudson discloses automatically updating comprises generating multiple

network maps/channel guides based on multiple user entered changes, as seen in the rejection of claim

1, further noting each time a change is made to the preferences of Fig. 16, a new (second, third, and

beyond for each time it is changed, i.e., multiple) network map/channel guide will be generated.

Claim 22 is rejected on the same grounds as claim 21.

5.      Claim 9 is rejected under 35 U.S.C. 103 as being unpatentable over Knudson et al (hereinafter

Knudson) US 6536041 in view of Chung et al (hereinafter Chung) US 20190297381, and further in view of

non-patent literature from the506.com captured via archive.org (hereinafter "the506").

Application/Control Number: 16/598,480                                                          Page 8
Art Unit: 2424

Referring to claim 9, Knudson in view of Chung discloses the limitations as seen in the rejection

of claim 8.

Knudson in view of Chung is unclear as to the particular parameter comprises a projected overall

rating or a projected rating in a certain market.

"the506" discloses the particular parameter comprises a projected overall rating or a projected

rating in a certain market (**see page 2, Blackouts section and Page 3, Flex Scheduling section for**

**multiple examples of projected ratings determining the optimal update to the network map/change**

**to the scheduled time and channel of the event**).

Before the effective filing date of the claimed invention, it would have been obvious to a person

having ordinary skill in the art to incorporate the ratings parameter of "the506" with the system of

Knudson in view of Chung in order to allow the choice as to which game is to be shown to be

determined by which game to be projected to do the best or garner the larger ratings (**see page 2,**

**Blackouts section**).


### Conclusion

**THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time policy as set forth

in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from

the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date

of this final action and the advisory action is not mailed until after the end of the THREE-MONTH

shortened statutory period, then the shortened statutory period will expire on the date the advisory

action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing

date of the advisory action. In no event, however, will the statutory period for reply expire later than

SIX MONTHS from the mailing date of this final action.

Application/Control Number: 16/598,480                                                    Page 9
Art Unit: 2424

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to NICHOLAS T CORBO whose telephone number is (571)270-5675.  The examiner

can normally be reached on Monday - Friday 11am-7pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

Pankaj Kumar can be reached on 571-272-30113011.  The fax phone number for the organization where

this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application

Information Retrieval (PAIR) system.  Status information for published applications may be obtained

from either Private PAIR or Public PAIR.  Status information for unpublished applications is available

through Private PAIR only.  For more information about the PAIR system, see http://pair-

direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer

Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.


/NICHOLAS T CORBO/                                        06/18/2020
Primary Examiner, Art Unit 2424

# EXHIBIT I

Docket No.: RCA-005
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Andysheh Tabrizi et al.

| | |
|---|---|
| Application No.: 16/598,480 | Confirmation No.: 4678 |
| Filed: October 10, 2019 | Art Unit: 2424 |
| For: SYSTEMS AND METHODS FOR AUTOMATICALLY AND DYNAMICALLY GENERATING A NETWORK MAP | Examiner: Corbo, Nicholas T. |

Mail Stop Amendments
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## AMENDMENT AND RESPONSE

This paper responds to the non-final Office action electronically sent from the Patent Office on September 28, 2020, for the above-identified patent application.

Applicant believes that no fees are due in connection with the filing of this paper; however, in the event that any such fees are due, the Commissioner is hereby authorized to charge such fees to Deposit Account No. 07-1700 (under Ref. No. RCA-005).

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks** begin on page 6 of this paper.

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application.

**Listing of Claims:**

1.      (Currently Amended)  A computer-implemented method for dynamically generating a network map, the method comprising:

receiving a schedule for a <u>first</u> plurality of <u>live</u> events <u>scheduled to start at a first time and a second plurality of live events scheduled to start at a second time</u>;

generating<u>, based on the schedule,</u> a network map <u>mapping the first plurality of live events and the second plurality of live events to a plurality of television stations for a plurality of cities,</u>

<u>wherein each station from the plurality of stations corresponds to a respective city from the plurality of cities,</u>

<u>wherein the network map identifies for each station (i) a first live event from the first plurality of live events that will be displayed at the first time and (ii) a second live event from the second plurality of live events that will be displayed at the second time, and</u>

<u>wherein generating the network map comprises</u> ~~comprising a listing of content that will be displayed on particular channels at particular times based on the schedule and underlying criteria~~ using a machine learning technique ~~and data~~ <u>to optimize an overall television rating across the first plurality of live events and the second plurality of live events</u>;

~~displaying the network map to a user on a display of a client device of a content distributor having a graphical user interface depicting the network map in chart format;~~

automatically updating the network map on demand and in real time based on a change to at least one of (i) the schedule and (ii) [[the]] underlying criteria,

wherein ~~the change is entered by the client device of the content distributor and wherein~~ updating the network map comprises updating the <u>mapping of the first plurality of live events and the second plurality of live events to the plurality of television stations</u> ~~content that will be displayed on at least one channel at at least one time~~; and

<u>using the network map to determine which live event will be displayed on which station at the first time and the second time</u> ~~displaying an updated network map to the user on the display of the client device of the content distributor having the graphical user interface depicting the updated network map in chart format~~.

Application No.: 16/598,480                                      Docket No.: RCA-005

2.       (Currently Amended)  The method of claim 1, wherein the <u>first</u> plurality of <u>live</u> events <u>and the second plurality of live events comprise</u> ~~comprises~~ sporting events.

3.       (Original)  The method of claim 2, wherein the sporting events comprise NFL games.

4.       (Currently Amended)  The method of claim 1, wherein the network map comprises a description of which event will be displayed on which ~~channel~~ <u>station</u> at a particular time.

5.       (Cancelled)

6.       (Currently Amended)  The method of claim 1, wherein the change to the schedule comprises a manual change performed by [[the]] <u>a</u> user.

7.       (Currently Amended)  The method of claim 1, wherein <u>generating the network map comprises generating the network map based on at least one of</u> ~~the data comprises data selected from the group consisting of~~ weather data, news data, [[and]] <u>or</u> gambling data.

8.       (Original)  The method of claim 1, wherein the step of automatically updating the network map comprises optimizing the network map based on a particular parameter.

9.       (Currently Amended)  The method of claim 8, wherein the particular parameter comprises ~~a projected~~ <u>the</u> overall rating or a projected rating in a certain market <u>for the plurality of television stations</u>.

10–11.  (Cancelled)

12.      (Currently Amended)  The method of claim 1, further comprising, prior to the receiving step, generating the schedule for the <u>first</u> plurality of <u>live</u> events <u>and the second plurality of live events</u>.

13.      (Cancelled)

Application No.: 16/598,480                                     Docket No.: RCA-005

14.    (Currently Amended)  A system for dynamically generating a network map, the system comprising:

one or more computers programmed to perform operations comprising:

receiving a schedule for a <u>first</u> plurality of <u>live</u> events <u>scheduled to start at a first time and a second plurality of live events scheduled to start at a second time</u>;

generating<u>, based on the schedule,</u> a network map <u>mapping the first plurality of live events and the second plurality of live events to a plurality of television stations for a plurality of cities,</u>

<u>wherein each station from the plurality of stations corresponds to a respective city from the plurality of cities,</u>

<u>wherein the network map identifies for each station (i) a first live event from the first plurality of live events that will be displayed at the first time and (ii) a second live event from the second plurality of live events that will be displayed at the second time, and</u>

<u>wherein generating the network map comprises</u> ~~comprising a listing of content that will be displayed on particular channels at particular times based on the schedule and underlying criteria~~ using a machine learning technique ~~and data~~ <u>to optimize an overall television rating across the first plurality of live events and the second plurality of live events</u>;

~~displaying the network map to a user on a display of a client device of a content distributor having a graphical user interface depicting the network map in chart format;~~

automatically updating the network map on demand and in real time based on a change to at least one of (i) the schedule and (ii) [[the]] underlying criteria,

wherein ~~the change is entered by the client device of the content distributor and wherein~~ updating the network map comprises updating the <u>mapping of the first plurality of live events and the second plurality of live events to the plurality of television stations</u> ~~content that will be displayed on at least one channel at at least one time~~; and

<u>using the network map to determine which live event will be displayed on which station at the first time and the second time</u> ~~displaying an updated network map to the user on the display of the client device of the content distributor having the graphical user interface depicting the updated network map in chart format~~.

15.    (Currently Amended)  The system of claim 14, wherein the <u>first</u> plurality of <u>live</u> events <u>and the second plurality of live events comprise</u> ~~comprises~~ sporting events.

4

16.    (Currently Amended)  The system of claim 14, wherein the network map comprises a description of which event will be displayed on which <u>station</u> ~~channel~~ at a particular time.

17.    (Currently Amended)  The system of claim 14, wherein <u>generating the network map comprises generating the network map based on at least one of</u> ~~the data comprises data selected from the group consisting of~~ weather data, news data, [[and]] <u>or</u> gambling data.

18.    (Currently Amended)  The system of claim 14, wherein ~~the operations further comprise~~ automatically updating the network map comprises optimizing the network map based on <u>the overall television rating or a projected rating in a certain market for the plurality of television stations</u> ~~a particular parameter~~.

19.    (Cancelled)

20.    (Currently Amended)  The system of claim 14, wherein the operations further comprise<u>,</u> prior to the receiving step, generating the schedule for the <u>first</u> plurality of <u>live</u> events <u>and the second plurality of live events</u>.

21.    (Previously Presented)  The method of claim 1, wherein the automatically updating step comprises generating multiple network maps based on multiple user entered changes.

22.    (Previously Presented)  The system of claim 14, wherein the automatically updating operation comprises generating multiple network maps based on multiple user entered changes.

23–26. (Cancelled)

27.    (New)  The method of claim 1, wherein the first time and the second time occur on a same day.

28.    (New)  The system of claim 14, wherein the first time and the second time occur on a same day.

Application No.: 16/598,480                                          Docket No.: RCA-005

## REMARKS

Administrative Overview

In the Office action mailed on September 28, 2020 (the "Office action"), the Office:

- rejected claims 1–9, 12–18, and 20–26 under 35 U.S.C. § 112(a) or 35 U.S.C. § 112 (pre-AIA), first paragraph, as allegedly failing to comply with the written description requirement;

- rejected claims 1–8, 12, 14–18, and 20–26 under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent No. 6,536,041 to Knudson et al. ("Knudson") in view of U.S. Patent Publication No. 2019/0297381 to Chung et al. ("Chung") and further in view of U.S. Patent Publication No. 2001/0000194 to Sequeira ("Sequeira"); and

- rejected claim 9 under 35 U.S.C. § 103 as allegedly being unpatentable over Knudson in view of Chung and further in view of Sequeira and further in view of non-patent literature from the506.com ("the506.com").

After entry of this Amendment and Response, claims 1–4, 6–9, 12, 14–18, 20–22, 27, and 28 will be pending. Applicant hereby amends claims 1, 2, 4, 6, 7, 9, 12, 14–18, and 20, cancels claims 5, 13, and 23–26, and adds new claims 27 and 28, all without prejudice. Support for the amendments to the claims and the new claims can be found throughout the originally filed specification and figures (the "Application"), including at least at paragraphs [0002], [0018], and [0020], and in FIGS. 1A and 1B. For example, the description of the network map in amended independent claims 1 and 14 is consistent with the network map shown in FIG. 1B and described in paragraph [0020]. Also, the added claim feature "using the network map to determine . . ." in amended independent claims 1 and 14 is described at least in paragraph [0002]. No new matter is added.

Interview Summary

Applicant wishes to thank Examiner Corbo for his courtesy and helpful comments in discussions with Applicant's representatives, Martin Gomez and Jeffrey R. Rummler, and inventor Andy Tabrizi during the telephonic interview held on October 20, 2020. During the interview, the Office action and technical details of Applicant's invention and the cited references were discussed, consistent with the arguments presented herein. Applicant submits that this paper serves as the Applicant's Statement of the Interview in accordance with 37 C.F.R. § 1.133(b).

Application No.: 16/598,480                                          Docket No.: RCA-005

Rejections under 35 U.S.C. § 112

Claims 1–9, 12–18, and 20–26 are rejected under 35 U.S.C. § 112(a) or 35 U.S.C. § 112 (pre-AIA), first paragraph, as allegedly failing to comply with the written description requirement. Applicant respectfully traverses these rejections, to the extent they are maintained over the amended claims, for at least the reasons set forth below. Claims 5 and 23–26 have been cancelled, thereby rendering the rejection of those claims moot.

Applicant hereby amends the claims to address the objections raised in the Office action at pages 3–5. Applicant respectfully requests that this rejection be reconsidered and withdrawn.

Rejections under 35 U.S.C. § 103

Claims 1–8, 12, 14–18, and 20–26 are rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Knudson in view of Chung and further in view of Sequeira. Applicant respectfully traverses this rejection to the extent it is maintained over the remaining claims, as amended, for at least the reasons set forth below. Claims 5 and 23–26 have been cancelled, thereby rendering the rejection of those claims moot.

As brief background, Applicant has invented a product that better enables content distributors (e.g., television networks such as CBS and FOX) and others to determine which content will be displayed on a particular channel at a particular time in a particular market (e.g., by generating and using a "network map"). Applicant's product allows the content distributors or other users to make changes to an underlying schedule or data and have a network map automatically update, for example, in an effort to optimize ratings and determine how the content will be displayed across the various channels and times.

In view of the foregoing, independent claims 1 and 14 have been amended to recite, in part: "receiving a schedule for a first plurality of live events scheduled to start at a first time and a second plurality of live events scheduled to start at a second time; generating, based on the schedule, a network map mapping the first plurality of live events and the second plurality of live events to a plurality of television stations for a plurality of cities, wherein each station from the plurality of stations corresponds to a respective city from the plurality of cities, wherein the network map identifies for each station (i) a first live event from the first plurality of live events that will be displayed at the first time and (ii) a second live event from the second plurality of live events that will be displayed at the second time, and wherein generating the network map comprises using a machine learning technique to optimize an overall television rating across the first plurality of live

7

Application No.: 16/598,480                                                    Docket No.: RCA-005

events and the second plurality of live events; automatically updating the network map on demand and in real time based on a change to at least one of (i) the schedule and (ii) underlying criteria, wherein updating the network map comprises updating the mapping of the first plurality of live events and the second plurality of live events to the plurality of television stations; and using the network map to determine which live event will be displayed on which station at the first time and the second time."

Applicant respectfully submits that Knudson, Chung, and Sequeira, either alone or in combination, fail to disclose, teach, or suggest the combination of elements recited in amended independent claims 1 and 14. For example, while Knudson's conventional program guide may provide a listing of shows available to a viewer (see e.g., Knudson at FIGS. 5–7), Knudson's guide does not include a mapping of a first plurality of events and a second plurality of events to a plurality of television stations for a plurality of cities, wherein each station corresponds to a respective city from the plurality of cities, as recited in amended independent claims 1 and 14. Knudson's guide identifies shows that are available to the viewer on stations in the user's particular location. Knudson's guide does not identify shows that are available on stations corresponding to other locations (e.g., other cities), and the viewer would have little or no use for such information. Knudson therefore fails to teach or suggest the claimed network map in which events starting at different times are mapped to stations for different cities, wherein each station corresponds to a different city, as recited in the amended independent claims. Given Knudson failure to describe the claimed network map, Knudson also fails to teach or suggest automatically updating the network map on demand and in real time, as recited in the amended independent claims. Further, Knudson fails to disclose, teach, or suggest generating a network map using machine learning to optimize television ratings across a plurality of events. Knudson's guide may present information related to "ratings" or "critics ratings" (see Knudson at col. 8, ll. 45–48); however, Knudson fails to describe generating the guide or any listing or mapping based on ratings across a plurality of events, as recited in amended independent claims 1 and 14. Chung and Sequeira fail to cure these deficiencies of Knudson.

Knudson, Chung, and Sequeira also fail to disclose, teach, or suggest using the network map to determine which live event will be displayed on which station at the first time and the second time, as recited in the amended independent claims. As the instant specification explains at paragraph [0002], in one example, the NFL may need "to generate a network map for the numerous NFL football games played on Sundays, . . . to determine which content (games) will be displayed

8

Application No.: 16/598,480                                    Docket No.: RCA-005

on which channel (television channels) at which times (usually 1pm and 4pm ET)." Knudson, Chung, and Sequeira, however, are silent regarding any attempt to generate a mapping of events occurring at different times to stations in a plurality of cities, and then using the mapping to determine how to display the events on the stations at the different times, as recited in the amended independent claims.

In view of the foregoing, Applicant submits that amended independent claims 1 and 14 are patentable over Knudson, Chung, and Sequeira. Dependent claims 1–4, 6–8, 12, 14–18, and 20–22 depend from either independent claim 1 or independent claim 14 and are therefore also patentable, for at least the reasons provided above. Accordingly, Applicant respectfully requests that the rejection over Knudson, Chung, and Sequeira be reconsidered and withdrawn.

Claim 9

Claim 9 is rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Knudson in view of Chung and further in view of Sequeira and further in view of the506.com. Applicant respectfully traverses this rejection, to the extent it is maintained over the amended claims, for at least the reasons set forth below.

Applicant notes that claim 9 depends from amended independent claim 1 and is patentable at least because the506.com fails to cure the deficiencies of Knudson, Chung, and Sequeira detailed above with respect to independent claim 1. the506.com is relied upon in the Office action only for teaching the use of ratings. Applicant notes, however, that the506.com appears to simply describe a website that publishes a listing of which NFL games will be shown on which channel (similar to the information that is presented by a conventional EPG). the506.com has no ability to make a change to the underlying schedule of which games will be shown on which channel at a given time. Further, while the506.com indicates that, during a blackout of a home game, a replacement game for the home city can be selected that would "garner large ratings" (see the506.com at page 2), the506.com fails to teach or suggest any approach in which machine learning is used to optimize an overall television rating across a plurality of live events shown on multiple stations in multiple cities, as recited in amended independent claim 1.

Accordingly, Applicant respectfully requests reconsideration and withdrawal of the rejection of claim 9 over Knudson, Chung, Sequeira, and the506.com.

9

Application No.: 16/598,480                                    Docket No.: RCA-005

## CONCLUSION

By responding in the foregoing remarks only to particular positions taken by the Examiner, Applicant does not acquiesce with other positions that have not been explicitly addressed.  In addition, Applicant's arguments for the patentability of a claim should not be understood as implying that no other reasons for the patentability of that claim exist.  Finally, Applicant's decision to amend or cancel any claim should not be understood as implying that Applicant agrees with any positions taken by the Examiner with respect to that claim or other claims.

In light of the foregoing, Applicant submits that all pending claims are now in condition for allowance.  Accordingly, Applicant respectfully requests reconsideration, withdrawal of all grounds of rejection, and allowance of all claims in due course.

If the Examiner believes that a further telephone conversation with Applicant's attorney would expedite the allowance of this application or would be helpful in resolving any other outstanding issue, the Examiner is encouraged to call the undersigned at the telephone number set forth below.

Dated:  October 27, 2020                    Respectfully submitted,

Electronic signature:  /Jeffrey R. Rummler/
Jeffrey R. Rummler
  Registration No.: 61,290
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
Attorney for Applicant

ACTIVE/96955160.1

10

# EXHIBIT J

Application/Control Number: 17/332,144                                        Page 2
Art Unit: 3623

### DETAILED ACTION

#### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the

first inventor to file provisions of the AIA.

#### *Status of Claims*

2.      This is a first office action on the merits in response to the application filed on 27 May

2021. Claims 1 through 20 are pending and have been examined.

#### *Claim Rejections - 35 USC § 101*

3.      35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

4.      Claims 1 through 20 are rejected under 35 U.S.C. 101 because the claimed invention is

directed to an abstract idea without significantly more. Independent claims 1 and 11 recite a

process of dynamically generating an event schedule; independent claims 10 and 20 recite a

product for dynamically generating an event schedule.

5.      Taking claim 11 as representative, claim 11 recites at least the following limitations:

**receiving one or more parameters** for a plurality of live events, the one or more parameters

comprising a list of the performers and a list of available venues in a plurality of geographic

regions; **generating a schedule** for the live events based on the one or more parameters; and

automatically **updating the schedule** based on a change to the one or more parameters.

6.      The limitations for generating and updating a schedule, as drafted, illustrates a process

that, under its broadest reasonable interpretation covers performance of the limitation in the

Application/Control Number: 17/332,144                                                    Page 3
Art Unit: 3623

mind (comparing or categorizing information), but for the recitation of generic computer

components.  That is other than reciting a computer for performing the steps, nothing in the

claim elements precludes the steps from practically being performed in the human mind, or by

a human using a pen and paper.  An event planner or agent could reasonable compile a list of

performers and venues to develop a tour schedule and update a proposed schedule as changes

occur.  Therefore, the limitations fall into the mental processes grouping and accordingly the

claims recite an abstract idea.

7.        The limitation for receiving one or more parameters **constitutes insignificant post-**

**solution activity**. See 2019 Revised Guidance, 84 Fed. Reg. 55 (citing MPEP § 2106.05(g)); see

also Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1354-55 (Fed. Cir. 2016) ("merely

presenting the results of abstract processes of collecting and analyzing information, without

more … is abstract as an ancillary part of such collection and analysis.")

8.        The 2019 Revised Patent Subject Matter Eligibility Guidance (PEG) states that additional

elements that are indicative of integration into a practical application include:

- Improvements to the functioning of a computer, or to any other technology or technical field – see MPEP 2106.05(a);
- Applying or using a judicial exception to effect a particular treatment or prophylaxis for a disease or medical condition – see *Vanda* Memo;
- Applying the judicial exception with, or by use or, a particular machine – see MPEP 2106.05(b);
- Effecting a transformation or reduction of a particular article to a different state or thing – see MPEP 2106.05(c);
- Applying or using the judicial exception in some other meaningful way beyond generally linking the use of the judicial exception to a particular technological environment, such that the claim as a whole is more than a drafting effort designed to monopolize the exception – see MPEP 2106(e) and *Vanda* Memo.

9.        Limitations that are **not** indicative of integration into a practical application include:

Application/Control Number: 17/332,144                                                                Page 4
Art Unit: 3623

- Adding the words "apply it" (or an equivalent) with the judicial exception, or mere instructions to implement an abstract idea on a computer, or merely uses a computer as a tool to perform an abstract idea – see MPEP 2106.05(f);

- Adding insignificant extra-solution activity to the judicial exception – see MPEP 2106.05(g);

- Generally linking the use of the judicial exception to a particular technological environment or filed of use – see MPEP 2106.05(h).

10.    The judicial exception of claim 11 is not integrated into a practical application. In particular, the claims only recite a computer for performing the recited steps. These elements are recited at a high level of generality (i.e., as a generic processor performing a generic computer function) and amount to no more than mere instructions to apply the exception using generic computer components. See MPEP 2106.05(f). For example, Applicant's specification at paragraph [0024-0025] states: "The server system 112 software components can include, for example, a performer module 116 and a venue module 118. The server system 112 can include subcomponents that can execute on the same or on different individual data processing apparatus. ... The software application or components thereof can be accessed through a network 124 (e.g., the Internet) by users of client devices, such as a smart phone 126, a personal computer 128, a smart phone 130, a tablet computer 132, and a laptop computer 134." Adding generic computer components to perform generic functions that are well-understood, routine and conventional, such as data gathering, performing calculations, and outputting a result would not transform the claim into eligible subject matter. See MPEP 2106.05(d). Accordingly, the additional elements do not integrate the abstract idea into a

Application/Control Number: 17/332,144                                                Page 5
Art Unit: 3623

practical application because they do not impose any meaningful limits on practicing the

abstract idea. Therefore, the claims are directed to an abstract idea.

11.     The claims do not include additional elements that are sufficient to amount to

significantly more than the judicial exception. As discussed above with respect to the

integration of the abstract idea into a practical application, the additional elements of a

processor and storage device amounts to no more than mere instructions to apply the

exception using a generic computer component which cannot provide an inventive concept.

12.     While dependent claims 6, 8, 16, and 18 recite the application of a machine learning

model, the presence of a machine learning algorithm or computer implementations do not

necessarily restrict the claim from reciting an abstract idea. The recited steps for applying a

machine learning model fail to improve the machine learning model by iteratively using the

data analysis output to improve the models decision making accuracy.  Therefore, the machine

learning model is simply used as a tool to receive data input for the generation of an output

without significantly more. Moreover, the machine learning algorithm and computer

limitations are simply used as a tool to apply the abstract idea without transforming the

underlying abstract idea into patent eligible subject matter. The presence of machine learning

algorithm and computer limitations do not necessarily make the claim rooted in computer

technology. Thus, the claim recites an abstract idea.

13.     Dependent claims 2 through 9 and 12 through 19 include the abstract ideas of the

independent claims. The dependent claims recite at least the following additional limitations:

one or more parameters comprise a tentative schedule for the series of live events; the series

of live events comprises a tour for at least one of a band, a music group, an author, a

Application/Control Number: 17/332,144                                          Page 6
Art Unit: 3623

performer, a comedian, a politician, an activist, or a speaker; generating the schedule

comprises maximizing at least one of a revenue or a total attendance for at least one of the

series of live events or a single event from the series of live events; generating the schedule

comprises maximizing at least one of a revenue or a total attendance at the series of live events

for a demographic segment; generating the schedule comprises providing the one or more

parameters to a machine learning model; generating the schedule comprises choosing at least

one of a venue, a date, or a time for each live event in the series of live events; he step of

automatically updating the schedule comprises using a machine learning model to update the

schedule based on the change to the one or more parameters; generating the schedule

comprises maximizing a total attendance for at least one of the plurality of live events or a

single event from the plurality of live events; one or more parameters comprise at least one

date for the plurality of live events; generating the schedule comprises assigning (i) a first

performer from the list of performers to a first venue from the list of available venues and (ii) a

second performer from the list of performers to a second venue from the list of available

venues.

14.     The limitations of the dependent claims are not integrated into a practical application

because no additional elements set forth any limitations that meaningfully limit the abstract

idea implementation, therefore the claims are directed to an abstract idea.  There are no

additional elements that transform the claim into a patent eligible idea by amounting to

significantly more.

15.     The analysis above applies to all statutory categories of invention.  Accordingly

independent claims 1, 10, 20, and the claims that depend therefrom are rejected as ineligible

Application/Control Number: 17/332,144                                              Page 7
Art Unit: 3623

for patenting under 35 U.S.C. 101 based upon the same analysis applied to claim 11 above.

Therefore claims 1 through 20 are ineligible.

### *Claim Rejections - 35 USC § 103*

16.      In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction

of the statutory basis for the rejection will not be considered a new ground of rejection if the

prior art relied upon, and the rationale supporting the rejection, would be the same under

either status.

17.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness

rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention
> was made.

18.      The factual inquiries for establishing a background for determining obviousness under

35 U.S.C. 103 are summarized as follows:

        1. Determining the scope and contents of the prior art.

        2. Ascertaining the differences between the prior art and the claims at issue.

        3. Resolving the level of ordinary skill in the pertinent art.

        4. Considering objective evidence present in the application indicating obviousness or

nonobviousness.

19.      Claims 1 through 16, and 18 through 20 are rejected under 35 U.S.C. 103 as being

unpatentable over Harker et al. (US 2013/0046580) in view of Bellary et al. (US 2019/0164135).

Application/Control Number: 17/332,144                                              Page 8
Art Unit: 3623

20.     **Regarding Claim 1**, Harker et al. discloses a computer-implemented method of dynamically generating an event schedule, (method and apparatus are disclosed in one embodiment of the present invention as including **a network computer system** operative over the internet for **receiving inputs** from potential attendees (users, customers, fans, etc.) in order to **acquire information** from prospective attendees, **develop potential tour stops including venues and dates for particular events and talent**, and analyzing the feasibility of scheduling such an event. Harker et al. [para. 0003, 0008-0009].  ... Referring to FIG. 1, an apparatus 10 or system 10 for implementing the present invention may include one or more nodes 12 (e.g., client 12, computer 12). Such nodes 12 may contain a processor 14 or CPU 14. Harker et al. [para. 0044; Fig. 1]);

21.     the method comprising: *receiving one or more parameters for a series of live events to be held in a plurality of geographic regions*; (... a recruitment module may involve **handling of data, including collection**, processing, or the like for information related to attracting talent, identifying management of various talent, obtaining information and maintaining it for venues, users, sponsors, and others that may desirably be drawn to connect to the data base 70. Harker et al. [para. 0074, 0076]. ... the information collection module 124 may be responsible for **collection of information from users**, from bands, or other talent, from management companies and agents, from web crawling, and so forth. Harker et al. [para. 0083-0084,  0096; Fig. 5]);

22.     *generating a schedule for the series of live events based on the one or more parameters*; (systems and **methods for determining, scheduling, and executing public events**. Harker et al. [para. 0003]. ...  **an entire tour may be scheduled by a computer operating with information**

Application/Control Number: 17/332,144                                                    Page 9
Art Unit: 3623

**about the potential candidate cities, each with its prospective venue**, based on the actual

ticket sales of front-end-tickets. Harker et al. [para. 0014]. ...Thus, analyzing **feasibility 164 may**

**involve analyzing attendees, potential attendees, talents, venues, ticket costs, minimum box**

**office receipts required, timing between events in the region, competing events for the time**

**slots**, even though at the same venue, **and the like**. Harker et al. [para. 0106-0107; Fig. 5, 16-

17]);

23.      While Harker et al. discloses that updates may be performed (an update page 140k may

present information for a user, sponsor, or administrator, to input information permitted by

their particular status to be used to update any particular page. Harker et al. [para. 0138,

0149]), Harker et al. fails to explicitly recite *automatically updating the schedule based on a*

*change to the one or more parameters.* Bellary et al. discloses this limitation. (... **server 104**

**may provide a set of services to client device users for selecting an optimal or best date and**

**time for a planned event using cognitive learning to obtain maximum attendance for the**

**planned event**. Bellary et al. [para. 0019]. ... **cognitive machine learning component 238 may**

**generate updates 246 for future event recommendations 244 on a**

**predetermined time interval basis**, such as, a weekly, monthly, or quarterly basis, **based on**

**current web search data, social media data, weather prediction data, natural disaster data,**

**airfare data, city labor data, and the like**. Bellary et al. [para. 0031-0034, 0044-0046]). It would

have been obvious to one of ordinary skill in the art of data analytics and event planning before

the effective filing date of the claimed invention to modify the scheduling steps of Hanker et al.

to include the updating step of Bellary et al. in order to identify a set of optimal dates

to maximize attendance of the target audience at the planned event. Bellary et al. [para. 0004].

Application/Control Number: 17/332,144                                                                Page 10
Art Unit: 3623

24.     **Regarding Claim 2**, Harker et al. and Bellary et al. combined disclose a method, *wherein the one or more parameters comprise a tentative schedule for the series of live events*. (Likewise, individual web pages may be presented for cities, in which the talents, dates, and other information are presented to users for **proposed upcoming events**. Harker et al. [para. 0012]. ... Another mode determined by the setting 170 may include a "fill in" date. This is a typical situation where one or a few possible **dates are still available on a concert tour already scheduled**. One of several cities might be on a potential path between two other cities already scheduled. Harker et al. [para. 0116]).

25.     **Regarding Claim 3**, Harker et al. and Bellary et al. combined disclose a method, *wherein the series of live events comprises a tour for at least one of a band, a music group, an author, a performer, a comedian, a politician, an activist, or a speaker*. (... **an entire tour may be scheduled**. Harker et al. [para. 0014, 0068]. ... if ten dates are available at a particular venue, and **a band or other talent** can meet eight of those, then an operating window to meet exists. Harker et al. [para. 0101]).

26.     **Regarding Claim 4**, Harker et al. and Bellary et al. combined disclose a method, *wherein generating the schedule comprises maximizing at least one of a revenue or a total attendance for at least one of the series of live events or a single event from the series of live events*. (... a financial module 126 may include several sub modules 127 involving intake of funds, outgo of funds, promotional expenses, and the like. Harker et al. [para. 0077]. ... **Ticket sales may be used to develop a route**, based upon a competition between cities to be placed on the route in a sequence, that will fit with the other cities on the route on their respective days. ... If the

Application/Control Number: 17/332,144                                                    Page 11
Art Unit: 3623

**threshold sales 178 have been reached**, then a positive result to the test 178 results in moving on to operating 188 the event. Harker et al. [para. 0115, 0122]).

27.      **Regarding Claim 5**, Harker et al. and Bellary et al. combined disclose a method, *wherein generating the schedule comprises maximizing at least one of a revenue or a total attendance at the series of live events for a demographic segment*. (In some embodiments, **evaluating 154 may be a matter of evaluating markets, details of demographics**, data from previous events of a similar nature, and the like. Harker et al. [para. 0102-0103]. ... Ultimately, **analyzing 164 the feasibility of a particular event may involve financial considerations, demographic considerations**, the match up of talents with supporting populations, and ticket prices at particular venues with their seating capacities, and so forth. Harker et al. [para. 0106-0107]. ... **Ticket sales may be used to develop a route**, based upon a competition between cities to be placed on the route in a sequence, that will fit with the other cities on the route on their respective days. ... If the **threshold sales 178 have been reached**, then a positive result to the test 178 results in moving on to operating 188 the event. Harker et al. [para. 0115, 0122, 0128]).

28.      **Regarding Claim 6**, Harker et al. and Bellary et al. combined disclose a method, *wherein generating the schedule comprises providing the one or more parameters to a machine learning model*. Harker et al. fails to disclose the use of machine learning. Bellary et al. discloses this limitation. Bellary et al. discloses this limitation. (**After receiving event input data 220 and retrieving web search data 228 and social media data 230, event manager 218 analyzes all of the information to generate event output data** 232. Event output data 232 includes list of ranked event dates 234. ... **cognitive machine learning component 238 may generate future**

Application/Control Number: 17/332,144                                                 Page 12
Art Unit: 3623

**event recommendations 244** for recurring events, such as parades, festivals, and fairs, **based on event attendance record 240 and attribute weights 242**. Bellary et al. [para. 0031-0034]).   It would have been obvious to one of ordinary skill in the art of data analytics and event planning before the effective filing date of the claimed invention to modify the scheduling steps of Hanker et al. to include the machine learning step of Bellary et al. in order to identify a set of optimal dates to maximize attendance of the target audience at the planned event.  Bellary et al. [para. 0004].

29.      **Regarding Claim 7**, Harker et al. and Bellary et al. combined disclose a method, *wherein generating the schedule comprises choosing at least one of a venue, a date, or a time for each live event in the series of live events*. (... **a competition between cities, or simply a go/no-go decision may be made regarding any particular city**. In other embodiments, **an entire concert tour may be scheduled according to the draw (pull) of a fan base or other customer base in a particular city, region, or the like**. Thus, an individual event may be scheduled, or an entire concert (or other event) tour may be scheduled throughout several cities. Harker et al. [para. 0009]. ... **if ten dates are available at a particular venue, and a band or other talent can meet eight of those**, then an operating window to meet exists.  Harker et al. [para. 0101].

... the ranking, the city, the state, and the venue of a particular event may be listed as a competition board 244. Harker et al. [para. 0181, 0214; Fig. 5-6, 16-17]. ...  ).

30.      **Regarding Claim 8**, Harker et al. and Bellary et al. combined disclose a method, *wherein the step of automatically updating the schedule comprises using a machine learning model to update the schedule based on the change to the one or more parameters*. Harker et al. fails to disclose the use of machine learning.  Bellary et al. discloses this limitation. Bellary et al.

Application/Control Number: 17/332,144                                                      Page 13
Art Unit: 3623

discloses this limitation. (**After receiving event input data 220 and retrieving web search**

**data 228 and social media data 230, event manager 218 analyzes all of the information to**

**generate event output data** 232. Event output data 232 includes list of ranked event dates 234.

… Moreover, cognitive machine learning component **238** may generate updates **246** for future

event recommendations **244** on a predetermined time interval basis, such as, a weekly,

monthly, or quarterly basis, based on current web search data, social media data, weather

prediction data, natural disaster data, airfare data, city labor data, and the like. Bellary et al.

[para. 0031-0034]). It would have been obvious to one of ordinary skill in the art of data

analytics and event planning before the effective filing date of the claimed invention to modify

the scheduling steps of Hanker et al. to include the machine learning step of Bellary et al. in

order to identify a set of optimal dates to maximize attendance of the target audience at the

planned event. Bellary et al. [para. 0004].

31.     **Regarding Claim 9**, Harker et al. and Bellary et al. combined disclose a method, *wherein*

*the geographic regions comprise at least one of a country, a state, or a city*. (The question may

be one of **setting a tour route**. For example, it is considered that **fans may determine that**

**among 20 concert dates, 20 cities can receive those concert dates**. Any number of cities may

compete for those concert dates. In this situation, both the date and the location of the city

with respect to previous and subsequent concert dates will matter. … One of several cities

might be on a potential path between two other cities already scheduled. In this case, various

cities may compete to be the venue to fill the date. Harker et al. [para. 0115-0116; Fig. 13, 16]).

32.     **Regarding Claim 10**, Claim 10 recites substantially similar limitations to those of claim 1.

Claim 10 recites a system comprising one or more computer systems programmed to perform

Application/Control Number: 17/332,144                                   Page 14

Art Unit: 3623

operations, which is taught by Harker et al. (in one embodiment of the present invention as

including **a network computer system operative over the internet** for receiving inputs ...,

**develop potential tour stops including venues and dates for particular events and talent, and**

**analyzing the feasibility of scheduling such an event**. Harker et al. [para. 0008; Fig.1]. ... In

general, by "executable" is meant either an adjective describing data structures that can be

loaded into a processor and executed by the processor, or a noun. The word "executable" is

used as a noun herein means a computer program or instruction of any size, that embodies

processing logic and is executed by a processor. Harker et al. [para. 0072]).

33.      **Regarding Claim 11**, Harker et al. and Bellary et al. combined disclose a *computer-*

*implemented method of dynamically generating an event schedule, the method comprising* :

(**method** and apparatus are disclosed in one embodiment of the present invention as including

**a network computer system** operative over the internet for **receiving inputs** from potential

attendees (users, customers, fans, etc.) in order **to acquire information** from prospective

attendees, **develop potential tour stops including venues and dates for particular events and**

**talent**, and analyzing the feasibility of scheduling such an event. Harker et al. [para. 0003,

0008-0009]. ... Referring to FIG. 1, an apparatus 10 or system 10 for implementing the present

invention may include one or more nodes 12 (e.g., client 12, computer 12). Such nodes 12 may

contain a processor 14 or CPU 14. Harker et al. [para. 0044; Fig. 1]);

34.      *receiving one or more parameters for a plurality of live events comprising performances*

*by a plurality of performers*, (... a recruitment module may involve **handling of data, including**

**collection**, processing, or the like for information related to attracting talent, identifying

management of various talent, obtaining information and maintaining it for venues, users,

Application/Control Number: 17/332,144                                             Page 15
Art Unit: 3623

sponsors, and others that may desirably be drawn to connect to the data base 70. Harker et al.

[para. 0074, 0076]. … the information collection module 124 may be responsible for **collection**

**of information from users**, **from bands, or other talent,** from management companies and

agents, from web crawling, and so forth. Harker et al. [para. 0083-0084, 0096; Fig. 5]);

35.      *the one or more parameters comprising a list of the performers and a list of available*

*venues in a plurality of geographic regions*; (**Each band that is a possible talent for an event**

**may be listed in a wish list** from which users may make selections and cast votes. Harker et al.

[para. 0011; Fig. 14]. …Thus, when presenting 158 scenarios to users, such may be presented in

the form of wish list. For example, a proposed set of bands may be presented to users. **In other**

**situations, bands with a month or a venue may be presented**. Harker et al. [para. 0104].

…Accordingly, **a wish list page 140j may include many details** of potential or prospective new

events or talent selections. Hanker et al. [para. 0147, 165, 0171; Fig. 9]);

36.      *generating a schedule for the live events based on the one or more parameters*; (systems

and **methods for determining, scheduling, and executing public events**. Harker et al. [para.

0003]. … **an entire tour may be scheduled by a computer operating with information about**

**the potential candidate cities, each with its prospective venue**, based on the actual ticket sales

of front-end-tickets. Harker et al. [para. 0014]. …Thus, analyzing **feasibility 164 may involve**

**analyzing attendees, potential attendees, talents, venues, ticket costs, minimum box office**

**receipts required, timing between events in the region, competing events for the time slots**,

even though at the same venue, **and the like**. Harker et al. [para. 0106-0107; Fig. 5, 16-17]);

37.      While Harker et al. discloses that updates may be performed (an update page 140k may

present information for a user, sponsor, or administrator, to input information permitted by

Application/Control Number: 17/332,144                                                   Page 16

Art Unit: 3623

their particular status to be used to update any particular page. Harker et al. [para. 0138,

0149]), Harker et al. fails to explicitly recite *automatically updating the schedule based on a*

*change to the one or more parameters*. Bellary et al. discloses this limitation. (... **server 104 may**

**provide a set of services to client device users for selecting an optimal or best date and time**

**for a planned event using cognitive learning to obtain maximum attendance for the planned**

**event**. Bellary et al. [para. 0019].... **cognitive machine learning component 238 may**

**generate updates 246 for future event recommendations 244 on a**

**predetermined time interval basis**, such as, a weekly, monthly, or quarterly basis, **based on**

**current web search data, social media data, weather prediction data, natural disaster data,**

**airfare data, city labor data, and the like**. Bellary et al. [para. 0031-0034, 0044-0046]). It would

have been obvious to one of ordinary skill in the art of data analytics and event planning before

the effective filing date of the claimed invention to modify the scheduling function of Hanker et

al. to include the updating function taught by Bellary et al. in order to identify a set of optimal

dates to maximize attendance of the target audience at the planned event. Bellary et al. [para.

0004].

38.     **Regarding Claim 12**, Harker et al. and Bellary et al. combined disclose a method,

*wherein generating the schedule comprises maximizing a total attendance for at least one of*

*the plurality of live events or a single event from the plurality of live events*. (Ultimately,

**analyzing 164 the feasibility of a particular event may involve** financial considerations,

**demographic considerations, the match up of talents with supporting populations, and ticket**

**prices at particular venues with their seating capacities**, and so forth. Harker et al. [para.

0106]. ... **Ticket sales may be used to develop a route**, based upon a competition between

Application/Control Number: 17/332,144                                                    Page 17
Art Unit: 3623

cities to be placed on the route in a sequence, that will fit with the other cities on the route on

their respective days. ... Eventually, selling 192 should result in meeting a threshold level of

sales. A test 194 periodically runs on a processor 12 to determine whether sufficient sales have

occurred. **If all seats in a venue are sold out, then the threshold has been met**. Harker et al.

[para. 0128, 0164]).

39.     **Regarding Claim 13**, Harker et al. and Bellary et al. combined disclose a method,

*wherein generating the schedule comprises maximizing a total attendance at the plurality of live*

*events for a demographic segment*. (In some embodiments, **evaluating 154 may be a matter of**

**evaluating markets, details of demographics**, data from previous events of a similar nature,

and the like. Harker et al. [para. 0102-0103]. ... Ultimately, **analyzing 164 the feasibility of a**

**particular event may involve financial considerations, demographic considerations**, the match

up of talents with supporting populations, and ticket prices at particular venues with their

seating capacities, and so forth. Harker et al. [para. 0106-0107]. ... **Ticket sales may be used to**

**develop a route**, based upon a competition between cities to be placed on the route in a

sequence, that will fit with the other cities on the route on their respective days. ... If the

**threshold sales 178 have been reached**, then a positive result to the test 178 results in moving

on to operating 188 the event. Harker et al. [para. 0115, 0122, 0128]).

40.     **Regarding Claim 14**, Harker et al. and Bellary et al. combined disclose a method,

*wherein the one or more parameters comprise at least one date for the plurality of live events*.

(Likewise, individual web pages may be presented for cities, in which the talents, **dates**, and

other information are **presented to users for proposed upcoming events**. Harker et al. [para.

0012]. ... Another mode determined by the setting 170 may **include a "fill in" date**. This is a

Application/Control Number: 17/332,144                                                Page 18
Art Unit: 3623

typical situation where one or a few possible **dates are still available on a concert tour**

**already scheduled**. One of several cities might be on a potential path between two other cities

already scheduled. Harker et al. [para. 0116]).

41.    **Regarding Claim 15**, Harker et al. and Bellary et al. combined disclose a method,

*wherein the plurality of performers comprises at least one of a band, a music group, an author,*

*a comedian, a politician, an activist, or a speaker*. (… **an entire tour may be scheduled**. Harker

et al. [para. 0014, 0068]. … if ten dates are available at a particular venue, and **a band or other**

**talent** can meet eight of those, then an operating window to meet exists. Harker et al. [para.

0101]).

42.    **Regarding Claim 16**, Harker et al. and Bellary et al. combined disclose a method,

wherein generating the schedule comprises providing the one or more parameters to a

machine learning model. Harker et al. fails to disclose the use of machine learning. Bellary et al.

discloses this limitation. Bellary et al. discloses this limitation. (**After receiving event input**

**data 220 and retrieving web search data 228 and social media data 230, event**

**manager 218 analyzes all of the information to generate event output data** 232. Event output

data 232 includes list of ranked event dates 234. … **cognitive machine**

**learning component 238 may generate future event recommendations 244** for recurring

events, such as parades, festivals, and fairs, **based on event attendance record 240 and**

**attribute weights 242**. Bellary et al. [para. 0031-0034]).   It would have been obvious to one of

ordinary skill in the art of data analytics and event planning before the effective filing date of

the claimed invention to modify the scheduling steps of Hanker et al. to include the machine

Application/Control Number: 17/332,144                                    Page 19
Art Unit: 3623

learning step of Bellary et al. in order to identify a set of optimal dates

to maximize attendance of the target audience at the planned event. Bellary et al. [para. 0004].

43.       **Regarding Claim 18**, Harker et al. and Bellary et al. combined disclose a method,

*wherein the step of automatically updating the schedule comprises using a machine learning*

*model to update the schedule based on the change to the one or more parameters*. Harker et al.

fails to disclose the use of machine learning. Bellary et al. discloses this limitation. Bellary et al.

discloses this limitation. (**After receiving event input data 220 and retrieving web search**

**data 228 and social media data 230, event manager 218 analyzes all of the information to**

**generate event output data** 232. Event output data 232 includes list of ranked event dates 234.

… Moreover, cognitive machine learning component **238** may generate updates **246** for future

event recommendations **244** on a predetermined time interval basis, such as, a weekly,

monthly, or quarterly basis, based on current web search data, social media data, weather

prediction data, natural disaster data, airfare data, city labor data, and the like. Bellary et al.

[para. 0031-0034]). It would have been obvious to one of ordinary skill in the art of data

analytics and event planning before the effective filing date of the claimed invention to modify

the scheduling steps of Hanker et al. to include the machine learning step of Bellary et al. in

order to identify a set of optimal dates to maximize attendance of the target audience at the

planned event. Bellary et al. [para. 0004].

44.       **Regarding Claim 19**, Harker et al. and Bellary et al. combined disclose a method,

*wherein the geographic regions comprise at least one of a country, a state, or a city*. (The

question may be one of **setting a tour route**. For example, it is considered that **fans may**

**determine that among 20 concert dates, 20 cities can receive those concert dates**. Any

Application/Control Number: 17/332,144                                                    Page 20
Art Unit: 3623

number of cities may compete for those concert dates. In this situation, both the date and the

location of the city with respect to previous and subsequent concert dates will matter. ... One of

several cities might be on a potential path between two other cities already scheduled. In this

case, various cities may compete to be the venue to fill the date. Harker et al. [para. 0115-0116;

Fig. 13, 16]).

45.     **Regarding Claim 20**, Claim 20 recites substantially the same limitations as claim 11.

Claim 20 recites a system comprising one or more computer systems programmed to perform

operations, which is taught by Harker et al. (in one embodiment of the present invention as

including **a network computer system operative over the internet** for receiving inputs ...,

**develop potential tour stops including venues and dates for particular events and talent, and**

**analyzing the feasibility of scheduling such an event**. Harker et al. [para. 0008; Fig.1]. ... In

general, by "executable" is meant either an adjective describing data structures that can be

loaded into a processor and executed by the processor, or a noun. The word "executable" is

used as a noun herein means a computer program or instruction of any size, that embodies

processing logic and is executed by a processor.  Harker et al. [para. 0072]).


46.     Claim 17 is rejected under 35 U.S.C. 103 as being unpatentable over Harker et al. (US

2013/0046580)  in view of Bellary et al. (US 2019/0164135),  and in further view of Higgy (US

2013/0173317).

47.     **Regarding Claim 17**,  Harker et al. and Bellary et al. combined disclose a method for

generating a schedule (Hanker et al. [Fig. 14, 16] discloses generating a list of venues and artists

performing), but fail to explicitly disclose the method, *wherein generating the schedule*

Application/Control Number: 17/332,144                                                    Page 21
Art Unit: 3623

*comprises assigning (i) a first performer from the list of performers to a first venue from the list*

*of available venues and (ii) a second performer from the list of performers to a second venue*

*from the list of available venues.* Higgy discloses this limitation. (Returning to FIG. 2A, at 202,

the performer registers event details and the event booking system may prompt the performer

to populate fields related to the date and time of the event, required capacity, required

equipment, and required staff or services. The performer may choose a venue from a list of

registered venues. Higgy [para. 0034]. ... Returning to FIG. 3A, at 302, the venue operator

registers event details and the event booking system may prompt the venue operator to

populate fields related to the requested performer, date, time, and required staff or services.

The venue operator may choose the performer from a pre-existing list of registered performers.

Higgy [para. 0045-0058; Fig. 2A-4C, 6]). It would have been obvious to one of ordinary skill in

the art of event management before the effective filing date of the claimed invention to modify

the booking steps of Harker et al. and Bellary et al. in order to allows performers, venue

operators, promoters, and fans to request the booking of an event at a venue. Higgy [para.

0002].

### Conclusion

48.      The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure:

- Bhatia et al. (2019/0180297)  - the processors may provide services that may be

used by venues to determine what prices to sell tickets to an upcoming live event for,

and/or what type of tickets to sell (e.g., VIP, general admission, seated admission, etc.).

The services provided by the processors may also enable venues to select acts/events

Application/Control Number: 17/332,144                                      Page 22
Art Unit: 3623

to book at their location(s)/venue(s). The processors may use one or more types of data, the determined relationships, or the live event interest model to estimate interest in a live show in a city, and may recommend venues that the act can sell out and/or maximize their profits for the live event. In some embodiments, the processors may take into account the goals of a live event. For example, where an act wishes to maximize its profits, the processors may recommend a smaller venue with higher priced tickets, whereas if the act wishes to maximize exposure the processors may recommend a larger venue and lower prices for tickets.

49.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to LETORIA G KNIGHT whose telephone number is (571)270-0485. The examiner can normally be reached on M-F 9am-5pm.

50.     Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

51.     If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Rutao Wu can be reached on 571-272-6045.   The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

52.     Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR

Application/Control Number: 17/332,144                                          Page 23
Art Unit: 3623

system, see https://ppair-my.uspto.gov/pair/PrivatePair. Should you have questions on access

to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-

free). If you would like assistance from a USPTO Customer Service Representative or access to

the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/L.G.K/
Examiner, Art Unit 3623
/RUTAO WU/
Supervisory Patent Examiner, Art Unit 3623

# EXHIBIT K

Serial No. 17/332,144
Page 6 of 17

## REMARKS

Applicant hereby amends claims 1, 10, 11, and 20 and cancels claims 6, 8, 16, and 18. Upon entry of this Amendment and Response, there will be a total of 16 claims pending (i.e., claims 1–5, 7, 9–15, 17, 19, and 20), with 4 independent claims (i.e., claims 1, 10, 11, and 20). The amendments to the claims have been made without prejudice and to further clarify the invention. Support for the amendments can be found in the application as filed. No new matter is added.

Reconsideration is respectfully requested in view of the following remarks.

### Claim Rejections Under 35 U.S.C. § 101

Claims 1–20 are rejected under 35 U.S.C. § 101 because the claimed invention is allegedly directed to an abstract idea without significantly more. Office Action at p. 2. Claims 6, 8, 16, and 18 have been cancelled, rendering the rejection of those claims moot.

The Office Action asserts that "nothing in the claim elements precludes the steps from practically being performed in the human mind, or by a human using a pen and paper." *Id*. at p. 3. The Office Action further asserts that the claim "limitations fall into the mental processes grouping . . . ." *Id*.

Applicant respectfully disagrees with these assertions in the Office Action and respectfully submits that previously presented claims 1-20, and instant claims 1–5, 7, 9–15, 17, 19, and 20 recite statutory subject matter in view of the detailed reasons provided below with respect to the 2019 Revised Patent Subject Matter Eligibility Guidance, effective January 7, 2019. That guidance revises the procedures for determining whether a patent claim or patent application claim is directed to a judicial exception (laws of nature, natural phenomena, and abstract ideas) under Step 2A of the Subject Matter Eligibility Guidance issued by United States Patent and Trademark Office (USPTO). In particular, Step 2A of the 2019 Revised Patent Subject Matter Eligibility Guidance requires a two-prong inquiry. In Prong One, examiners evaluate whether a (subject) claim recites a judicial exception and, in Prong Two, examiners evaluate whether the claim recites additional elements that integrate the exception into a practical application of that exception. If, however, the additional elements do not integrate the exception into a practical application, then the claim requires further analysis under Step 2B.

Serial No. 17/332,144
Page 7 of 17

Moreover, Applicant respectfully submits that the Office Action's analysis under Steps 2A and 2B is factually and legally inadequate to support a rejection under 35 U.S.C. § 101 of the claims, as amended.  Accordingly, the rejection should be withdrawn.

### *Step 1: The Amended Claims Are Directed to the Statutory Categories of Subject Matter*

As explained in MPEP § 2106(1), the claimed invention constitutes patentable subject matter if it is directed to one of four statutory categories: a process, machine, manufacture, or a composition of matter.  Applicant respectfully submits that all the current claims are clearly directed to statutory categories of subject matter.  Claims 1–5, 7, 9, 11–15, 17, and 19 are directed to a process, and claims 10 and 20 are directed to a system.  Thus, step 1 of the analysis is satisfied.

### *Step 2A: The Pending Claims Are Not Directed to an Abstract Idea*

### *Prong One:*

Amended independent claims 1 and 10 recite, in part: "receiving one or more parameters for a series of live events to be held in a plurality of geographic regions, wherein the one or more parameters comprise at least one of venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; generating a schedule for the series of live events based on the one or more parameters, wherein generating the schedule comprises providing the one or more parameters to a machine learning model; and automatically updating the schedule based on a change to the one or more parameters, wherein automatically updating the schedule comprises using the machine learning model to update the schedule based on the change to the one or more parameters." Likewise, amended independent claims 11 and 20 recite, in part: "receiving one or more parameters for a plurality of live events comprising performances by a plurality of performers, the one or more parameters comprising a list of the performers and a list of available venues in a plurality of geographic regions, wherein the one or more parameters further comprise at least one of proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; generating a schedule for the live events based on the one or more parameters, wherein generating the schedule comprises providing the one or more parameters to a machine learning model; and automatically updating the schedule based on a

IPTS/113697520.1

change to the one or more parameters, wherein automatically updating the schedule comprises using the machine learning model to update the schedule based on the change to the one or more parameters."

In *DDR Holdings v. Hotels.com*, the Federal Circuit held that the claims in U.S. Patent No. 7,818,399 (the '399 patent) are not directed to an abstract idea because they "do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *DDR Holdings v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Rather, "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* The Federal Circuit explained that "the '399 patent's asserted claims do not recite a mathematical algorithm" or "a fundamental economic or longstanding commercial practice." *Id.* The Federal Circuit further explained that "[a]lthough the claims address a business challenge (retaining website visitors), it is a challenge particular to the Internet." *Id.* In differentiating the '399 patent's claims from *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (2014), the Federal Circuit explained that the "claims at issue here specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events." *Id.* at 1258.

Here, like *DDR Holdings*, the instant claims do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the computer. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer-implemented technology for scheduling live events for one or more performers in a plurality of geographic locations. Instant application para. [0004]. As recited in claim 1, an event schedule is generated by providing parameters to a machine learning model and is automatically updated based on a change to the parameters. The parameters include at least one of venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof. Unlike prior event schedule systems or methods where "[c]elebrities, musicians, politicians, venue owners, venue managers, and other individuals and entities frequently schedule live events that occur in a plurality of different geographic locations over the course of anywhere from a couple of days to many years," the claimed solution is able to automatically update the schedule based on the change to relevant

Serial No. 17/332,144
Page 9 of 17

factors, through use of machine learning. As the instant specification explains, the claimed use of machine learning "can improve the accuracy and/or automation of data processing." Instant Specification at para. [0041]. Machine learning models can be "developed and trained to receive a wide variety and quantity of data (e.g., the input parameters) and to consider a variety of target features when generating desired or optimized schedules for live events." *Id.* "Such schedules can be updated, as needed, when any changes to the input parameters or target features are received." *Id.* By training machine learning models "to generate optimized schedules automatically and update the schedules dynamically, in response to real-time changes in data, the input parameters and target features can be processed and considered more efficiently and accurately, compared to prior approaches." *Id.* The claimed invention is necessarily rooted in computer technology.

Further, "an invention is not rendered ineligible for patent simply because it *involves* an abstract concept." *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) (quoting *Diehr*, 450 U. S. 175, 187 (1981)) (emphasis added). The Federal Circuit explained in *Enfish* that "[t]he 'directed to' inquiry . . . cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon – after all, they take place in the physical world." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Here, even if the claims recite certain concepts that may have been previously identified by the courts as abstract ideas, that would at most indicate the claims, like "every routinely patent-eligible claim," merely *involve* an abstract concept, without necessarily being *directed* to an abstract idea.

The Federal Circuit explained, that "[t]he specification . . . teaches that the self-referential table functions differently than conventional database structures . . . . Traditional databases, such as those that follow the relational model and those that follow the object oriented model, are inferior to the claimed invention. While the structural requirements of current databases require a programmer to predefine a structure and subsequent data entry must conform to that structure, the database of the present invention does not require a programmer to preconfigure a structure to which a user must adapt data entry." *Enfish*, at 1337. The court concluded, based on these observations, that the claims describe "an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1336. The court stated that "[o]ur conclusion that the claims are directed to an improvement of an existing

Serial No. 17/332,144
Page 10 of 17

technology is bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1338.

Like the claims in *Enfish*, the instant claims are not directed to mental processes, as the Office Action's over-generalization suggests, but instead are specifically directed to a method and a system for improving computer technology related to generating and automatically updating event schedules, through the use of machine learning. The claimed use of machine learning "can improve the accuracy and/or automation of data processing." Instant Specification at para. [0041]. Machine learning models can be "developed and trained to receive a wide variety and quantity of data (e.g., the input parameters) and to consider a variety of target features when generating desired or optimized schedules for live events." *Id.* "Such schedules can be updated, as needed, when any changes to the input parameters or target features are received." *Id.* By training machine learning models "to generate optimized schedules automatically and update the schedules dynamically, in response to real-time changes in data, the input parameters and target features can be processed and considered more efficiently and accurately, compared to prior approaches." *Id.*

Further, "an 'improvement in computer-related technology' is not limited to improvements in the operation of a computer or a computer network per se, but may also be claimed as a set of 'rules' (basically mathematical relationships) that improve computer-related technology by allowing computer performance of a function not previously performable by a computer." *See Memorandum on Recent Subject Matter Eligibility Decisions*, USPTO, November 16, 2016 (discussing *McRO, Inc. dba Planet Blue v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016)). As in *McRO*, the instant amended claims recite specific rules and limitations that "improve [the] existing technological process" associated with computer-implemented technology, such that a computer is not being used merely as a tool to perform an existing process. *See McRO* at 1312. The amended claims describe techniques for using machine learning to generate and automatically update event schedules. The claims do not merely describe a solution or outcome and represent an improvement in computer functionality, consistent with *McRO*.

Applicant respectfully submits that instant claims 1–5, 7, 9–15, 17, 19, and 20, as amended, do not recite an abstract idea under Prong One of Step 2A.

**_Prong Two:_**

Notwithstanding the above remarks, assuming, *arguendo,* that the instant claims are directed to an abstract idea as the Office Action contends, Applicant respectfully submits that the claims recite additional features that integrate the abstract idea into a <u>practical application</u>.

In particular, Applicant respectfully submits that the claimed use of machine learning and specific input parameters for machine learning models integrate the purported abstract idea into a practical application of generating and updating event schedules for live events. The claimed approach achieves this by, at least, (i) receiving one or more parameters (e.g., venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof) for live events to be held in a plurality of geographic regions, (ii) generating a schedule for the live events by providing the one or more parameters to a machine learning model, and (iii) automatically updating the schedule based on a change to the one or more parameters and using the machine learning model.

Accordingly, the instant claims integrate the purported abstract idea into a <u>practical application</u> under Prong Two of Step 2A. As such, the instant claims are not directed to an abstract idea under Step 2A.

**_Step 2B: The Claims Amount to Significantly More Than Any Judicial Exception_**

Applicant further submits that the amended claims recite significantly more than any alleged abstract idea and are thus patent eligible under Step 2B. For example, amended independent claim 1 recites "receiving one or more parameters for a series of live events to be held in a plurality of geographic regions, wherein the one or more parameters comprise at least one of venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; generating a schedule for the series of live events based on the one or more parameters, wherein generating the schedule comprises providing the one or more parameters to a machine learning model; and automatically updating the schedule based on a change to the one or more parameters, wherein automatically updating the schedule comprises using the machine learning model to update the

Serial No. 17/332,144
Page 12 of 17

schedule based on the change to the one or more parameters." These specific rules and limitations go beyond any similar elements recognized in the art or by the courts as being well-understood, routine or conventional, and therefore remove the claims from the realm of the abstract.

> *a. The Amended Claims Provide Specific Applications or Improvements to Technologies in the Marketplace and thus Amount to Significantly More Than Any Alleged Judicial Exception*

The Federal Circuit held in *Research Corporation Technologies v. Microsoft Corp.* that "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act." *Research Corp. Technologies v. Microsoft Corp.*, 627 F.3d 859, 860 (Fed. Cir. 2010). Here, like the claims at issue in *Research Corporation Technologies*, the amended claims present "functional and palpable applications in the field of computer technology" and address "a need in the art" for a certain computer-implemented method. Compared to prior approaches, the approach described and claimed in the instant application has important benefits. For example, the claimed approach "allow[s] performers, venue owners, promoters, and other individuals or entities to create optimized schedules" *Id* at para. [0040]. The claimed approach can further "achieve a significant improvement in computer functionality." *Id* at para. [0041]. Thus, consistent with *Research Corporation Technologies*, the claimed approach "presents functional and palpable applications in the field of computer technology" and "addresses a need in the art" for a certain computer-implemented method related to generating and updating schedules for live events.

Likewise, the Federal Circuit in *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC,* No. 15-1763 (Fed. Cir. 2016) held that claims directed to "filtering Internet content" are patent-eligible under *Alice*. The court also warned the district court against performing "an obviousness analysis" when conducting a Section 101 review. *Id.* The court explained that "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art . . . [and] as is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.*

Here, like the claims in *Bascom*, the instant claims "*do not merely recite the abstract idea . . . along with the requirement to perform it on the Internet.*" *Id.* at 16 (emphasis added). The

Serial No. 17/332,144
Page 13 of 17

instant claims instead "improve the accuracy and/or automation of data processing." Instant Specification at para. [0041]. Machine learning models are "developed and trained to receive a wide variety and quantity of data (e.g., the input parameters) and to consider a variety of target features when generating desired or optimized schedules for live events." *Id*. "Such schedules can be updated, as needed, when any changes to the input parameters or target features are received." *Id*. By training machine learning models "to generate optimized schedules automatically and update the schedules dynamically, in response to real-time changes in data, the input parameters and target features can be processed and considered more efficiently and accurately, compared to prior approaches." *Id*.

b. *The Ordered Combination of the Claims as Presented Amounts to Significantly More Than Any Alleged Judicial Exception*

Applicant respectfully submits that the Office Action has failed to consider the ordered combination of features of the claims, as required by current USPTO guidance. The *July 2015 Update: Subject Matter Eligibility* explains that "even if an element does not amount to significantly more on its own . . . it can still amount to significantly more when considered *in combination* with the other elements of the claim." (Emphasis added). Additionally, as the Federal Circuit held in *McRO, Inc. dba Planet Blue v. Bandai Namco Games America Inc.*, 837 F. 3d, 1299 (Fed. Cir. 2016), "an ordered combination of claimed steps, using unconventional rules . . . is not directed to an abstract idea and is therefore patent-eligible subject matter under § 101." *McRO* at 1313. The Federal Circuit cautioned against "oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *Id*. "Whether at step one or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps." *Id*. Here, consistent with *McRO* and USPTO Guidance, the ordered combinations of features recited in the claims include unconventional steps that confine the claims to a particular useful application of generating and updating schedules for live events. Accordingly, the instant claims recite a concrete and non-theoretical concept that includes

Serial No. 17/332,144
Page 14 of 17

significantly more than any alleged abstract idea and links the claimed invention to a particular technological environment.

Applicant disagrees with the Office Action's assertion at pages 7 and 8 that the claims do not include meaningful additional elements that are sufficient "to amount to significantly more than the recited abstract idea." As the May 4, 2016 Update explains,

> when the examiner has concluded that particular claim limitations are well-understood, routine, conventional activities (or elements) to those in the relevant field, *the rejection should explain why the courts have recognized, or those in the relevant field of art would recognize, those claim limitations as being well-understood, routine, conventional activities . . . and its combination with any other additional elements is well-understood, routine, conventional activity . . . ."* *May 4, 2016 Update* at p. 4 (emphasis added).

Further, as explained in *Changes to Examination Procedure Pertaining to Subject Matter Eligibility, Recent Subject Matter Eligibility Decision (Berkheimer v. HP, Inc.)*, USPTO memorandum, dated April 19, 2018,

> "an additional element (or combination of elements) is not well-understood, routine or conventional unless the examiner finds, and expressly supports a rejection in writing with, one or more of the following: 1. A citation to an express statement in the specification or to a statement made by an applicant during prosecution that demonstrates the well-understood, routine, conventional nature of the additional element(s). . . . 2. A citation to one or more of the court decisions discussed in MPEP § 2106.05(d)(II) as noting the well-understood, routine, conventional nature of the additional element(s). . . . 3. A citation to a publication that demonstrates the well-understood, routine, conventional nature of the additional element(s). . . . 4. A statement that the examiner is taking official notice of the well-understood, routine, conventional nature of the additional element(s)."

Here, the Office Action fails to provide any sound explanation regarding <u>why</u> the referenced limitations would be recognized as well-understood, routine, and conventional. The Office Action also fails to address whether (and if so, why) each claim element, when combined with any and all other elements in the claim, would still be recognized by the courts or those in the relevant field of art as well-understood, routine, and conventional.

Applicant respectfully submits that claims 1–5, 7, 9–15, 17, 19, and 20, as amended, recite patentable subject matter. Reconsideration and withdrawal of the rejection under 35 U.S.C. § 101 are respectfully requested.

Serial No. 17/332,144
Page 15 of 17

## Claim Rejections Under 35 U.S.C. § 103

Claims 1–16, and 18–20 are rejected under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Applicant Publication No. 2013/0046580 to Harker ("Harker") in view of U.S. Patent Application Publication No. 2019/0164135 to Bellary ("Bellary").

Claim 17 is rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Harker in view of Bellary, and in further view of U.S. Patent Application Publication No. 2013/0173317 to Higgy ("Higgy").

Applicant respectfully traverses the rejections as applied to the claims, as amended. Claims 6, 8, 16, and 18 have been cancelled, rendering the rejection of those claims moot.

Harker appears to describe "systems and methods for determining, scheduling, and executing public events." Harker at para. [0003]. Harker's approach "may 'pull' an event to a city rather than it being 'pushed' by promoters." *Id*. at Abstract. Harker describes "a model 134" that includes "the content for a web page." *Id*. at para. [0086].

Applicant respectfully submits that Harker does not teach, suggest, or disclose generating and automatically updating a schedule for live events using a machine learning model and the specific parameters recited in amended independent claims 1, 10, 11, and 20. For example, Harker does not describe using at least one of venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof, to generate and automatically update a schedule for a series of live events, as recited in amended independent claims 1 and 10. Likewise, Harker does not describe using at least one of proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof, to generate and automatically update a schedule for live events, as recited in amended independent claims 11 and 20. Harker is also silent regarding the use of a machine learning model, and thus does not teach, suggest, or disclose using a machine learning model to generate and update the schedule, as recited in amended claims 1, 10, 11, and 20.

Bellary does not cure these deficiencies of Harker. Bellary instead describes "a computer-implemented method for selecting an optimal date for a planned event . . . ." Bellary at para. [0004]. A "cognitive machine learning component 238" is used "to receive and analyze

IPTS/113697520.1

Serial No. 17/332,144
Page 16 of 17

event attendance record 240." *Id.* at para. [0033]. The "cognitive machine learning component 238 may generate updates 246 for future event recommendations 244 on a predetermined time interval basis, such as, a weekly, monthly, or quarterly basis, based on current web search data, social media data, weather prediction data, natural disaster data, airfare data, city labor data, and the like." *Id.* at para [0034]. Like Harker, however, Bellary does not teach, suggest, or disclose generating and automatically updating a schedule for live events using a machine learning model and the specific parameters recited in amended independent claims 1, 10, 11, and 20.

Higgy does not cure the above deficiencies of Harker and Bellary. Higgy instead describes "a platform that allows performers, venue operators, promoters, and fans to request the booking of an event at a venue, and negotiate a binding agreement on a threshold for conditional ticket sales to the event such that if the threshold is achieved, a sale is realized and the purchaser is charged, and if the threshold is not achieved, the conditional ticket sale is abandoned." Higgy at para. [0002]. The "event booking system sends periodic updates regarding progress." *Id.* at paras. [0041], [0050], and [0060]. Like Harker and Bellary, however, Higgy does not teach, suggest, or disclose generating and automatically updating a schedule for live events using a machine learning model and the specific parameters recited in amended independent claims 1, 10, 11, and 20.

Applicant respectfully submits that amended independent claims 1, 10, 11, and 20 are patentable for at least the reasons described above. Because dependent claims 2–5, 7, 9, 12–15, 17, and 19 depend either directly or indirectly from independent claims 1, 10, 11, and 20, and include all the respective limitations thereof, these dependent claims are also patentable. Reconsideration and withdrawal of the rejections of claims 1–5, 7, 9–15, 17, 19, and 20 under 35 U.S.C. § 103 are respectfully requested.

CONCLUSION

By responding in the foregoing remarks only to particular positions taken by the Examiner, Applicant does not acquiesce with other positions that have not been explicitly addressed. In addition, Applicant's arguments for the patentability of a claim should not be understood as implying that no other reasons for the patentability of that claim exist. Finally, Applicant's decision to amend or cancel any claim should not be understood as implying that

Serial No. 17/332,144
Page 17 of 17

Applicant agrees with any positions taken by the Examiner with respect to that claim or other claims.

Applicant respectfully submits that, in light of the foregoing remarks, claims 1–5, 7, 9–15, 17, 19, and 20 are in condition for allowance, and requests that the application proceed to issue. If, in the Examiner's opinion, a telephonic interview would expedite the favorable prosecution of the present application, the undersigned attorney would welcome the opportunity to discuss any outstanding issues and to work with the Examiner toward placing the application in condition for allowance.

Dated: December 1, 2021                              Respectfully submitted,

                                                     Electronic signature: /Jeffrey R. Rummler/
                                                     Jeffrey R. Rummler
                                                        Registration No.: 61,290
                                                     GOODWIN PROCTER LLP
                                                     100 Northern Avenue
                                                     Boston, MA 02210
                                                     (617) 570-3974
                                                     Attorney for Applicant

IPTS/113697520.1

# EXHIBIT L

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/332,144 | 05/27/2021 | Andysheh Tabrizi | RCA-007 | 7151 |

| | | |
|---|---|---|
| 51414          7590          12/15/2021 | | |

GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 NORTHERN AVENUE
BOSTON, MA 02210

| EXAMINER |
|---|
| KNIGHT, LETORIA G |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3623 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 12/15/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

JGoodwin@goodwinlaw.com
PSousa-Atwood@goodwinlaw.com
US-PatentBos@goodwinlaw.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. 17/332,144 | Applicant(s) Tabrizi et al. |
|---|---|---|
| | Examiner LETORIA G KNIGHT | Art Unit 3623 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on <u>01 December 2021</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☑ This action is **FINAL.**     2b) ☐ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-5,7,9-15,17 and 19-20</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>1-5,7,9-15,17 and 19-20</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.
11)☑ The drawing(s) filed on <u>27 May 2021</u> is/are:  a)☐ accepted or  b)☑ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
      a)☐ All      b)☐ Some**      c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date <u>03 September 2021</u>.
3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 11-13)          Office Action Summary          Part of Paper No./Mail Date 20211208

Application/Control Number: 17/332,144                                                Page 2
Art Unit: 3623

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.  The present application, filed on or after March 16, 2013, is being examined under the first
    inventor to file provisions of the AIA.

### *Status of Claims*

2.  This is a final office action in response to the amendment filed 01 December 2021. 1, 10, 11,
    and 20 have been amended. Claims 6, 8, 16, and 18 have been cancelled. Claims 1 through
    5, 7, 9 through 15, 17, 19, and 20 are pending and have been examined.

### *Drawings*

3.  The drawings are objected to as failing to comply with 37 CFR 1.84(p)(4) because reference
    characters " 116" and "118" have both been used to designate "the venue module" in
    paragraph [0027] of the Specification.

4.  Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the
    Office action to avoid abandonment of the application. Any amended replacement drawing
    sheet should include all of the figures appearing on the immediate prior version of the
    sheet, even if only one figure is being amended. Each drawing sheet submitted after the
    filing date of an application must be labeled in the top margin as either "Replacement
    Sheet" or "New Sheet" pursuant to 37 CFR 1.121(d). If the changes are not accepted by the
    examiner, the applicant will be notified and informed of any required corrective action in
    the next Office action. The objection to the drawings will not be held in abeyance.

### *Response to Amendment*

5.  Applicant's amendment to claims 1, 10, 11, and 20 has been entered.

Application/Control Number: 17/332,144                                                    Page 3
Art Unit: 3623

6. Applicant's amendment is insufficient to overcome the 35 U.S.C. 101 rejection. The rejection is maintained and updated below in light of the claim amendment.

7. Examiner has established new grounds of rejection, as necessitated by amendment. See the updated rejection detailed below.

### *Response to Arguments*

8. Applicant's arguments regarding the prior art rejection detailed in the non-final office action mailed on 09 September 2021 have been fully considered but are moot in light of the amendment filed herein because the arguments do not apply to the combination of references used in the current rejection detailed below.

9. Applicant's arguments regarding the 35 U.S.C. 101 rejection have been fully considered, but are not persuasive. Applicant asserts that the claimed solution is necessarily rooted in computer technology in order to overcome a problem related to computer-implemented technology for scheduling live events for one or more performers in a plurality of geographic locations, by training machine learning models to generate optimized schedules automatically and update the schedules dynamically. Applicant also states that the claimed use of machine learning and specific input parameters for machine learning models integrate any purported abstract idea into a practical application. Examiner respectfully disagrees. While the additional element of machine learning may improve the accuracy and/or automation of data processing, the addition of machine learning in the claim limitations herein does not make the claim rooted in computer technology or improve the functioning of a computer. The machine learning process improves the accuracy of

Application/Control Number: 17/332,144                                          Page 4

Art Unit: 3623

scheduling events and is not an improvement to machine learning technology or the

functioning of a computing device, and hence does not result in a practical application.

10. Applicant further asserts that the claims are not directed to mental processes, but are

specifically directed to a method and a system for improving computer technology related

to generating and automatically updating event schedules, through the use of machine

learning. If a claim, under its broadest reasonable interpretation, covers performance in the

mind but for the recitation of generic computer components, then it is still in the mental

processes category unless the claim cannot practically be performed in the mind. The

claimed steps beyond those directed to extra-solution activity (i.e. gathering, displaying, or

storage of data) process received data to generate a best fit schedule by training a machine

learning algorithm with parameters related to prospective events, constitute steps that may

be performed in the mind, but for the recitation of generic computer components. One of

ordinary skill in the art of event planning and event promotion could review the given

parameters and through learned knowledge determine a best fit schedule without the use

of a computer. Therefore, the claims fall within the mental processes grouping of abstract

ideas. As stated above, the additional element of a generic machine learning algorithm

does not improve computer technology.

11. Applicant also asserts that even if an element does not amount to significantly more on its

own, it can still amount to significantly more when considered in combination with other

elements in the claim. Applicant states that here the ordered combinations of features

recited in the claims include unconventional steps that confine the claims to a particular

useful application of generating and updating schedules for live events, and that the claims

Application/Control Number: 17/332,144                                        Page 5
Art Unit: 3623

recite significantly more than any alleged abstract idea.  The steps for generating a schedule based on one or more parameters and updating the schedule based on a change are part of the abstract idea itself. The additional elements of a generic computing device and a machine learning model alone or in combination do not amount to significantly more than the recited mental process of generating and updating a schedule because these additional elements are merely generic computer components and known techniques and/or algorithms used as tools to perform the recited abstract idea and amount to a general link to a field of use or technical environment.  The claims broadly recite the application of a machine learning model and fail to recite a specific type of machine learning model or an improvement to machine learning technology itself.   Examiner notes that the additional machine learning algorithm and computer limitations are either performing basic computer functions such as sending and receiving data, or performing functions 'known' in the art and hence are well-understood, routine, and conventional activities and do not amount or add significantly more.  The limitations when taken individually or as an ordered combination do not offer an inventive concept that may amount to add significantly more.  Thus these arguments are not persuasive.

### Claim Rejections - 35 USC § 101

12. 35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

13. Claims 1 through 5, 7, 9 through 15, 17, 19, and 20 are rejected under 35 U.S.C. 101 because the claimed invention is directed to an abstract idea without significantly more.

Application/Control Number: 17/332,144                                                                Page 6
Art Unit: 3623

Independent claims 1 and 11 recite a process of dynamically generating an event schedule;

independent claims 10 and 20 recite a product for dynamically generating an event

schedule.

14. Taking claim 11 as representative, claim 11 recites at least the following limitations:

receiving one or more parameters for a plurality of live events, the one or more parameters

comprising a list of the performers and a list of available venues in a plurality of geographic

regions; generating a schedule for the live events based on the one or more parameters;

and automatically updating the schedule based on a change to the one or more parameters.

15. The limitations for generating and updating a schedule, as drafted, illustrates a process that,

under its broadest reasonable interpretation covers performance of the limitation in the

mind (comparing or categorizing information), but for the recitation of generic computer

components. That is other than reciting a computer for performing the steps, nothing in

the claim elements precludes the steps from practically being performed in the human

mind, or by a human using a pen and paper. An event planner or agent could reasonable

compile a list of performers and venues to develop a tour schedule and update a proposed

schedule as changes occur. Therefore, the limitations fall into the mental processes

grouping and accordingly the claims recite an abstract idea.

16. The limitation for receiving one or more parameters constitutes insignificant post-solution

activity. See 2019 Revised Guidance, 84 Fed. Reg. 55 (citing MPEP § 2106.05(g)); see also

Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1354-55 (Fed. Cir. 2016) ("merely

presenting the results of abstract processes of collecting and analyzing information, without

more … is abstract as an ancillary part of such collection and analysis.")

Application/Control Number: 17/332,144                                    Page 7
Art Unit: 3623

17. The 2019 Revised Patent Subject Matter Eligibility Guidance (PEG) states that additional

elements that are indicative of integration into a practical application include:

- Improvements to the functioning of a computer, or to any other technology or

  technical field – see MPEP 2106.05(a);

- Applying or using a judicial exception to effect a particular treatment or prophylaxis

  for a disease or medical condition – see Vanda Memo;

- Applying the judicial exception with, or by use or, a particular machine – see MPEP

  2106.05(b);

- Effecting a transformation or reduction of a particular article to a different state or

  thing – see MPEP 2106.05(c);

- Applying or using the judicial exception in some other meaningful way beyond

  generally linking the use of the judicial exception to a particular technological

  environment, such that the claim as a whole is more than a drafting effort designed

  to monopolize the exception – see MPEP 2106(e) and Vanda Memo.

18. Limitations that are not indicative of integration into a practical application include:

- Adding the words "apply it" (or an equivalent) with the judicial exception, or mere

  instructions to implement an abstract idea on a computer, or merely uses a

  computer as a tool to perform an abstract idea – see MPEP 2106.05(f);

- Adding insignificant extra-solution activity to the judicial exception – see MPEP

  2106.05(g);

- Generally linking the use of the judicial exception to a particular technological

  environment or filed of use – see MPEP 2106.05(h).

Application/Control Number: 17/332,144                                                    Page 8
Art Unit: 3623

19. The judicial exception of claim 11 is not integrated into a practical application. In particular,

the claims only recite a computer and a machine learning model for performing the recited

steps. These elements are recited at a high level of generality (i.e., as a generic processor

performing a generic computer function and a generic machine learning model without

specific) and amount to no more than mere instructions to apply the exception using

generic computer components. See MPEP 2106.05(f). For example, Applicant's

specification at paragraph [0024-0025] states: "*The server system 112 software components*

*can include, for example, a performer module 116 and a venue module 118. The server*

*system 112 can include subcomponents that can execute on the same or on different*

*individual data processing apparatus. … The software application or components thereof*

*can be accessed through a network 124 (e.g., the Internet) by users of client devices, such as*

*a smart phone 126, a personal computer 128, a smart phone 130, a tablet computer 132,*

*and a laptop computer 134.*" Adding generic computer components to perform generic

functions that are well-understood, routine and conventional, such as data gathering,

performing calculations, and outputting a result would not transform the claim into eligible

subject matter. See MPEP 2106.05(d). Accordingly, the additional elements do not

integrate the abstract idea into a practical application because they do not impose any

meaningful limits on practicing the abstract idea. Therefore, the claims are directed to an

abstract idea.

20. The claims do not include additional elements that are sufficient to amount to significantly

more than the judicial exception. As discussed above with respect to the integration of the

abstract idea into a practical application, the additional elements of a processor, storage

Application/Control Number: 17/332,144                                                          Page 9
Art Unit: 3623

device, machine learning model amount to no more than mere instructions to apply the

exception using a generic computer component which cannot provide an inventive concept.

Per paragraph [0031] of the specification, the machine learning model is a generic model,

paragraph [0031] states: "*In some embodiments, the performer module 116 includes or*

*utilizes a machine learning model 210 or other predictive tool for determining the desired or*

*optimal schedule 208. In general, any suitable machine learning technique can be used, such*

*as, for example: a gradient boosted random forest, a regression, a neural network, a*

*decision tree, a support vector machine, a Bayesian network, other type of technique.*" The

presence of a machine learning algorithm or computer implementations do not necessarily

restrict the claim from reciting an abstract idea. The recited steps for applying a machine

learning model fail to improve the machine learning model by iteratively using the data

analysis output to improve the models decision making accuracy.  Therefore, the machine

learning model is simply used as a tool to receive data input for the generation of an output

without significantly more.  The additional elements of a generic computing device and a

machine learning model alone or in combination do not amount to significantly more than

the recited mental process of generating and updating a schedule because these additional

elements are merely generic computer components and known techniques and/or

algorithms used as tools to perform the recited abstract idea and amount to a general link

to a field of use or technical environment. The claims broadly recite the application of a

machine learning model and fail to recite a specific type of machine learning model or an

improvement to machine learning technology itself.  The presence of machine learning

Application/Control Number: 17/332,144                                                    Page 10
Art Unit: 3623

algorithm and computer limitations do not necessarily make the claim rooted in computer

technology. Thus, the claim recites an abstract idea.

21. Dependent claims 2 through 5, 7, 9, 12 through 15, 17, and 19 include the abstract ideas of

the independent claims. The dependent claims recite at least the following additional

limitations: one or more parameters comprise a tentative schedule for the series of live

events; the series of live events comprises a tour for at least one of a band, a music group,

an author, a performer, a comedian, a politician, an activist, or a speaker; generating the

schedule comprises maximizing at least one of a revenue or a total attendance for at least

one of the series of live events or a single event from the series of live events; generating

the schedule comprises maximizing at least one of a revenue or a total attendance at the

series of live events for a demographic segment; generating the schedule comprises

choosing at least one of a venue, a date, or a time for each live event in the series of live

events; generating the schedule comprises maximizing a total attendance for at least one of

the plurality of live events or a single event from the plurality of live events; one or more

parameters comprise at least one date for the plurality of live events; generating the

schedule comprises assigning (i) a first performer from the list of performers to a first venue

from the list of available venues and (ii) a second performer from the list of performers to a

second venue from the list of available venues.

22. The limitations of the dependent claims are not integrated into a practical application

because no additional elements set forth any limitations that meaningfully limit the abstract

idea implementation, therefore the claims are directed to an abstract idea. There are no

Application/Control Number: 17/332,144                                                    Page 11
Art Unit: 3623

additional elements that transform the claim into a patent eligible idea by amounting to

significantly more.

23. The analysis above applies to all statutory categories of invention. Accordingly independent

claims 1, 10, 20, and the claims that depend therefrom are rejected as ineligible for

patenting under 35 U.S.C. 101 based upon the same analysis applied to claim 11 above.

Therefore claims 1 through 5, 7, 9 through 15, 17, 19, and 20 are ineligible.

### *Claim Rejections - 35 USC § 103*

24. In the event the determination of the status of the application as subject to AIA 35 U.S.C.

102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of

the statutory basis for the rejection will not be considered a new ground of rejection if the

prior art relied upon, and the rationale supporting the rejection, would be the same under

either status.

25. The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness

rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention
> was made.

26. The factual inquiries for establishing a background for determining obviousness under 35

U.S.C. 103 are summarized as follows:

1. Determining the scope and contents of the prior art.

2. Ascertaining the differences between the prior art and the claims at issue.

3. Resolving the level of ordinary skill in the pertinent art.

Application/Control Number: 17/332,144                                          Page 12
Art Unit: 3623

    4. Considering objective evidence present in the application indicating obviousness or

nonobviousness.

27. Claims 1 through 16, and 18 through 20 are rejected under 35 U.S.C. 103 as being

unpatentable over Harker et al. (US 2013/0046580) in view of Carter (US 2018/0213273).

28. **Regarding Claim 1**, Harker et al. discloses *a computer-implemented method of dynamically*

*generating an event schedule*, (method and apparatus are disclosed in one embodiment of

the present invention as including a network computer system operative over the internet

for receiving inputs from potential attendees (users, customers, fans, etc.) in order to

acquire information from prospective attendees, develop potential tour stops including

venues and dates for particular events and talent, and analyzing the feasibility of scheduling

such an event. Harker et al. [para. 0003, 0008-0009]. ... Referring to FIG. 1, an apparatus 10

or system 10 for implementing the present invention may include one or more nodes 12

(e.g., client 12, computer 12). Such nodes 12 may contain a processor 14 or CPU 14. Harker

et al. [para. 0044; Fig. 1]);

29. *the method comprising: receiving one or more parameters for a series of live events to be*

*held in a plurality of geographic regions*, (... a recruitment module may involve handling of

data, including collection, processing, or the like for information related to attracting talent,

identifying management of various talent, obtaining information and maintaining it for

venues, users, sponsors, and others that may desirably be drawn to connect to the data

base 70. Harker et al. [para. 0074, 0076]. ... the information collection module 124 may be

responsible for collection of information from users, from bands, or other talent, from

Application/Control Number: 17/332,144                                        Page 13
Art Unit: 3623

management companies and agents, from web crawling, and so forth. Harker et al. [para.

0083-0084, 0096; Fig. 5]);

30. *generating a schedule for the series of live events based on the one or more parameters*;

(systems and methods for determining, scheduling, and executing public events. Harker et

al. [para. 0003]. ... an entire tour may be scheduled by a computer operating with

information about the potential candidate cities, each with its prospective venue, based on

the actual ticket sales of front-end-tickets. Harker et al. [para. 0014]. ...Thus, analyzing

feasibility 164 may involve analyzing attendees, potential attendees, talents, venues, ticket

costs, minimum box office receipts required, timing between events in the region,

competing events for the time slots, even though at the same venue, and the like. Harker et

al. [para. 0106-0107; Fig. 5, 16-17]);

31. While Harker et al. discloses that updates may be performed (an update page 140k may

present information for a user, sponsor, or administrator, to input information permitted by

their particular status to be used to update any particular page. Harker et al. [para. 0138,

0149]), Harker et al. fails to explicitly disclose the computer implemented method wherein

*generating the schedule comprises providing the one or more parameters to a machine*

*learning model, wherein the one or more parameters comprise at least one of venue*

*availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled*

*performances by one or more performers, or any combination thereof;* and *automatically*

*updating the schedule based on a change to the one or more parameters, wherein*

*automatically updating the schedule comprises using the machine learning model to update*

*the schedule based on the change to the one or more parameter*. Carter discloses these

Application/Control Number: 17/332,144                                                                Page 14
Art Unit: 3623

limitations. (... memory also includes a number of databases for storing the data in an organized manner. An example of databases includes a communications database **217**, a festivals database **218**, a films database **219**, **a venue database 220, a scheduling database 221, and a ticket sales database 222**. Carter [para. 0034, 0054]. ... At block **801**, the server system **110** obtains a list of films and film information for the film festival, the screen information (e.g. screen ID, projector ID, available film data formats, seating capacity of the corresponding theater screen, etc.), and available date and time slots that the one or more theater screens can be used for the festival. Carter [para. 0106]. ... **the server system schedules the highest rated films to the prime date and time slots in the theater screen venue with the largest seating capacity**, or with the largest sized screen, or both. ... In an example embodiment, **machine learning or artificial intelligence techniques may be applied to the above principles to automatically schedule** films for a film festival. Carter [para. 0142-0143]. ... As an example of **automatically updating the schedule (block 906**), a film is initially slotted or scheduled to be screened from 8 pm-9:45 pm. A pre-event of 15 minutes is added to the screening or viewing. Therefore, the film's time slot is reschedule to cover the time period from 8 pm to 10 pm. A similar example applies for post-events, as per block **910**. Carter [para. 0018, 0121; Fig. 10]). It would have been obvious to one of ordinary skill in the art of data analytics and event planning before the effective filing date of the claimed invention to modify the scheduling steps of Hanker et al. to include the machine learning and updating steps of Carter in order to provide a server system for scheduling. Carter [para. 0179].

32. **Regarding Claim 2**, Harker et al. and Carter combined disclose a method, *wherein the one or more parameters comprise a tentative schedule for the series of live events*. (Likewise, individual web pages may be presented for cities, in which the talents, dates, and other information are presented to users for proposed upcoming events. Harker et al. [para. 0012]. … Another mode determined by the setting 170 may include a "fill in" date. This is a typical situation where one or a few possible dates are still available on a concert tour already scheduled. One of several cities might be on a potential path between two other cities already scheduled. Harker et al. [para. 0116]).

33. **Regarding Claim 3**, Harker et al. and Carter combined disclose a method, *wherein the series of live events comprises a tour for at least one of a band, a music group, an author, a performer, a comedian, a politician, an activist, or a speaker*. (… an entire tour may be scheduled. Harker et al. [para. 0014, 0068]. … if ten dates are available at a particular venue, and a band or other talent can meet eight of those, then an operating window to meet exists. Harker et al. [para. 0101]).

34. **Regarding Claim 4**, Harker et al. and Carter combined disclose a method, *wherein generating the schedule comprises maximizing at least one of a revenue or a total attendance for at least one of the series of live events or a single event from the series of live events*. (… a financial module 126 may include several sub modules 127 involving intake of funds, outgo of funds, promotional expenses, and the like. Harker et al. [para. 0077]. … Ticket sales may be used to develop a route, based upon a competition between cities to be placed on the route in a sequence, that will fit with the other cities on the route on their respective days. … If the threshold sales 178 have been reached, then a positive result to

Application/Control Number: 17/332,144 Page 16
Art Unit: 3623

the test 178 results in moving on to operating 188 the event. Harker et al. [para. 0115,

0122]).

35. **Regarding Claim 5**, Harker et al. and Carter combined disclose a method, *wherein*

*generating the schedule comprises maximizing at least one of a revenue or a total*

*attendance at the series of live events for a demographic segment.* (In some embodiments,

evaluating 154 may be a matter of evaluating markets, details of demographics, data from

previous events of a similar nature, and the like. Harker et al. [para. 0102-0103]. ...

Ultimately, analyzing 164 the feasibility of a particular event may involve financial

considerations, demographic considerations, the match up of talents with supporting

populations, and ticket prices at particular venues with their seating capacities, and so

forth. Harker et al. [para. 0106-0107]. ... Ticket sales may be used to develop a route, based

upon a competition between cities to be placed on the route in a sequence, that will fit with

the other cities on the route on their respective days. ... If the threshold sales 178 have been

reached, then a positive result to the test 178 results in moving on to operating 188 the

event. Harker et al. [para. 0115, 0122, 0128]).

36. **Regarding Claim 6,** [CANCELLED]

37. **Regarding Claim 7**, Harker et al. and Carter combined disclose a method, *wherein*

*generating the schedule comprises choosing at least one of a venue, a date, or a time for*

*each live event in the series of live events.* (... a competition between cities, or simply a

go/no-go decision may be made regarding any particular city. In other embodiments, an

entire concert tour may be scheduled according to the draw (pull) of a fan base or other

customer base in a particular city, region, or the like. Thus, an individual event may be

scheduled, or an entire concert (or other event) tour may be scheduled throughout several cities. Harker et al. [para. 0009]. ... if ten dates are available at a particular venue, and a band or other talent can meet eight of those, then an operating window to meet exists. Harker et al. [para. 0101]. ... the ranking, the city, the state, and the venue of a particular event may be listed as a competition board 244. Harker et al. [para. 0181, 0214; Fig. 5-6, 16-17]).

38. **Regarding Claim 8**, [CANCELLED].

39. **Regarding Claim 9**, Harker et al. and Carter combined disclose a method, *wherein the geographic regions comprise at least one of a country, a state, or a city*. (The question may be one of setting a tour route. For example, it is considered that fans may determine that among 20 concert dates, 20 cities can receive those concert dates. Any number of cities may compete for those concert dates. In this situation, both the date and the location of the city with respect to previous and subsequent concert dates will matter. ... One of several cities might be on a potential path between two other cities already scheduled. In this case, various cities may compete to be the venue to fill the date. Harker et al. [para. 0115-0116; Fig. 13, 16]).

40. **Regarding Amended Claim 10**, Claim 10 recites substantially similar limitations to those of claim 1. Claim 10 recites a system comprising one or more computer systems programmed to perform operations, which is taught by Harker et al. (in one embodiment of the present invention as including a network computer system operative over the internet for receiving inputs ..., develop potential tour stops including venues and dates for particular events and talent, and analyzing the feasibility of scheduling such an event. Harker et al. [para. 0008;

Application/Control Number: 17/332,144                                                      Page 18
Art Unit: 3623

Fig.1]. ... In general, by "executable" is meant either an adjective describing data structures

that can be loaded into a processor and executed by the processor, or a noun. The word

"executable" is used as a noun herein means a computer program or instruction of any size,

that embodies processing logic and is executed by a processor.  Harker et al. [para. 0072]).

41. **Regarding Amended Claim 11**,  Harker et al. and Carter combined disclose *a computer-*

*implemented method of dynamically generating an event schedule, the method comprising* :

(method and apparatus are disclosed in one embodiment of the present invention as

including a network computer system operative over the internet for receiving inputs from

potential attendees (users, customers, fans, etc.) in order to acquire information from

prospective attendees, develop potential tour stops including venues and dates for

particular events and talent, and analyzing the feasibility of scheduling such an event.

Harker et al. [para. 0003, 0008-0009].  ... Referring to FIG. 1, an apparatus 10 or system 10

for implementing the present invention may include one or more nodes 12 (e.g., client 12,

computer 12). Such nodes 12 may contain a processor 14 or CPU 14.  Harker et al. [para.

0044;  Fig. 1]);

42. *receiving one or more parameters for a plurality of live events comprising performances by a*

*plurality of performers*, (... a recruitment module may involve handling of data, including

collection, processing, or the like for information related to attracting talent, identifying

management of various talent, obtaining information and maintaining it for venues, users,

sponsors, and others that may desirably be drawn to connect to the data base 70.  Harker et

al. [para. 0074,  0076].  ... the information collection module 124 may be responsible for

collection of information from users, from bands, or other talent, from management

Application/Control Number: 17/332,144                                                        Page 19
Art Unit: 3623

companies and agents, from web crawling, and so forth. Harker et al. [para. 0083-0084,

0096; Fig. 5]);

43. *the one or more parameters comprising a list of the performers and a list of available venues*

*in a plurality of geographic regions*; (Each band that is a possible talent for an event may be

listed in a wish list from which users may make selections and cast votes. Harker et al.

[para. 0011; Fig. 14]. ...Thus, when presenting 158 scenarios to users, such may be

presented in the form of wish list. For example, a proposed set of bands may be presented

to users. In other situations, bands with a month or a venue may be presented. Harker et al.

[para. 0104]. ...Accordingly, a wish list page 140j may include many details of potential or

prospective new events or talent selections. Hanker et al. [para. 0147, 165, 0171; Fig. 9]);

44. *generating a schedule for the live events based on the one or more parameters;* (systems

and methods for determining, scheduling, and executing public events. Harker et al. [para.

0003]. ... an entire tour may be scheduled by a computer operating with information about

the potential candidate cities, each with its prospective venue, based on the actual ticket

sales of front-end-tickets. Harker et al. [para. 0014]. ...Thus, analyzing feasibility 164 may

involve analyzing attendees, potential attendees, talents, venues, ticket costs, minimum box

office receipts required, timing between events in the region, competing events for the time

slots, even though at the same venue, and the like. Harker et al. [para. 0106-0107; Fig. 5,

16-17]);

45. While Harker et al. discloses that updates may be performed (an update page 140k may

present information for a user, sponsor, or administrator, to input information permitted by

their particular status to be used to update any particular page. Harker et al. [para. 0138,

Application/Control Number: 17/332,144                                                    Page 20

Art Unit: 3623

0149]), Harker et al. fails to explicitly disclose the computer implemented method _wherein the one or more parameters comprise at least one of venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; wherein generating the schedule comprises providing the one or more parameters to a machine learning model_, automatically updating the schedule based on a change to the one or more parameters_, wherein automatically updating the schedule comprises using the machine learning model to update the schedule based on the change to the one or more parameters_. Carter discloses these limitations. (… memory also includes a number of databases for storing the data in an organized manner. An example of databases includes a communications database **217**, a festivals database **218**, a films database **219**, **a venue database 220, a scheduling database 221, and a ticket sales database 222**. Carter [para. 0034, 0054]. … At block **801**, the server system **110** obtains a list of films and film information for the film festival, the screen information (e.g. screen ID, projector ID, available film data formats, seating capacity of the corresponding theater screen, etc.), and available date and time slots that the one or more theater screens can be used for the festival. Carter [para. 0106]. … **the server system schedules the highest rated films to the prime date and time slots in the theater screen venue with the largest seating capacity**, or with the largest sized screen, or both. … In an example embodiment, **machine learning or artificial intelligence techniques may be applied to the above principles to automatically schedule** films for a film festival. Carter [para. 0142-0143]. … As an example of **automatically updating the schedule (block 906**), a film is initially slotted or scheduled to be screened from 8 pm-9:45 pm. A pre-event of 15

minutes is added to the screening or viewing. Therefore, the film's time slot is reschedule to cover the time period from 8 pm to 10 pm. A similar example applies for post-events, as per block **910**. Carter [para. 0018, 0121; Fig. 10]). It would have been obvious to one of ordinary skill in the art of data analytics and event planning before the effective filing date of the claimed invention to modify the scheduling steps of Hanker et al. to include the machine learning and updating steps of Carter in order to provide a server system for scheduling. Carter [para. 0179].

46. **Regarding Claim 12**, Harker et al. and Carter combined disclose a method, wherein generating the schedule comprises maximizing a total attendance for at least one of the plurality of live events or a single event from the plurality of live events. (Ultimately, analyzing 164 the feasibility of a particular event may involve financial considerations, demographic considerations, the match up of talents with supporting populations, and ticket prices at particular venues with their seating capacities, and so forth. Harker et al. [para. 0106]. … Ticket sales may be used to develop a route, based upon a competition between cities to be placed on the route in a sequence, that will fit with the other cities on the route on their respective days. … Eventually, selling 192 should result in meeting a threshold level of sales. A test 194 periodically runs on a processor 12 to determine whether sufficient sales have occurred. If all seats in a venue are sold out, then the threshold has been met. Harker et al. [para. 0128, 0164]).

47. **Regarding Claim 13**, Harker et al. and Carter combined disclose a method, wherein generating the schedule comprises maximizing a total attendance at the plurality of live events for a demographic segment. (In some embodiments, evaluating 154 may be a matter

of evaluating markets, details of demographics, data from previous events of a similar nature, and the like. Harker et al. [para. 0102-0103]. … Ultimately, analyzing 164 the feasibility of a particular event may involve financial considerations, demographic considerations, the match up of talents with supporting populations, and ticket prices at particular venues with their seating capacities, and so forth. Harker et al. [para. 0106-0107]. … Ticket sales may be used to develop a route, based upon a competition between cities to be placed on the route in a sequence, that will fit with the other cities on the route on their respective days. … If the threshold sales 178 have been reached, then a positive result to the test 178 results in moving on to operating 188 the event. Harker et al. [para. 0115, 0122, 0128]).

48. **Regarding Claim 14**, Harker et al. and Carter combined disclose a method, wherein the one or more parameters comprise at least one date for the plurality of live events. (Likewise, individual web pages may be presented for cities, in which the talents, dates, and other information are presented to users for proposed upcoming events. Harker et al. [para. 0012]. … Another mode determined by the setting 170 may include a "fill in" date. This is a typical situation where one or a few possible dates are still available on a concert tour already scheduled. One of several cities might be on a potential path between two other cities already scheduled. Harker et al. [para. 0116]).

49. **Regarding Claim 15**, Harker et al. and Carter combined disclose a method, wherein the plurality of performers comprises at least one of a band, a music group, an author, a comedian, a politician, an activist, or a speaker. (… an entire tour may be scheduled. Harker et al. [para. 0014, 0068]. … if ten dates are available at a particular venue, and a band or

Application/Control Number: 17/332,144                                        Page 23
Art Unit: 3623

other talent can meet eight of those, then an operating window to meet exists. Harker et al. [para. 0101]).

50. **Regarding Claim 16**, [CANCELLED].

51. **Regarding Claim 18**, [CANCELLED].

52. **Regarding Claim 19**, Harker et al. and Carter combined disclose a method, wherein the geographic regions comprise at least one of a country, a state, or a city. (The question may be one of setting a tour route. For example, it is considered that fans may determine that among 20 concert dates, 20 cities can receive those concert dates. Any number of cities may compete for those concert dates. In this situation, both the date and the location of the city with respect to previous and subsequent concert dates will matter. … One of several cities might be on a potential path between two other cities already scheduled. In this case, various cities may compete to be the venue to fill the date. Harker et al. [para. 0115-0116; Fig. 13, 16]).

53. **Regarding Amended Claim 20**, Claim 20 recites substantially the same limitations as claim 11. Claim 20 recites a system comprising one or more computer systems programmed to perform operations, which is taught by Harker et al. (in one embodiment of the present invention as including a network computer system operative over the internet for receiving inputs …, develop potential tour stops including venues and dates for particular events and talent, and analyzing the feasibility of scheduling such an event. Harker et al. [para. 0008; Fig.1]. … In general, by "executable" is meant either an adjective describing data structures that can be loaded into a processor and executed by the processor, or a noun. The word

Application/Control Number: 17/332,144                                          Page 24
Art Unit: 3623

"executable" is used as a noun herein means a computer program or instruction of any size,

that embodies processing logic and is executed by a processor.  Harker et al. [para. 0072]).

54. Claim 17 is rejected under 35 U.S.C. 103 as being unpatentable over Harker et al. (US

2013/0046580)  in view of Carter (US 2018/0213273),  and in further view of Higgy (US

2013/0173317).

55. **Regarding Claim 17**, Harker et al. and Carter combined disclose a method for generating a

schedule (Hanker et al. [Fig. 14, 16] discloses generating a list of venues and artists

performing), but fail to explicitly disclose the method, wherein generating the schedule

comprises assigning (i) a first performer from the list of performers to a first venue from the

list of available venues and (ii) a second performer from the list of performers to a second

venue from the list of available venues. Higgy discloses this limitation. (Returning to FIG. 2A,

at 202,  the performer registers event details and the event booking system may  prompt the

performer to populate fields related to the date and time of the event, required capacity,

required equipment, and required staff or services. The performer may choose a venue

from a list of registered venues. Higgy [para. 0034]. … Returning to FIG. 3A, at 302,  the

venue operator registers event details and the event booking system may prompt the venue

operator to populate fields related to the requested performer, date, time, and required

staff or services. The venue operator may choose the performer from a pre-existing list of

registered performers.  Higgy [para. 0045-0058;  Fig. 2A-4C, 6]).  It would have been obvious

to one of ordinary skill in the art of event management before the effective filing date of the

claimed invention to modify the booking steps of Harker et al. and Bellary et al. in order to

Application/Control Number: 17/332,144                                              Page 25
Art Unit: 3623

allows performers, venue operators, promoters, and fans to request the booking of an

event at a venue. Higgy [para. 0002].

### Conclusion

56. The prior art made of record and not relied upon is considered pertinent to Applicant's

disclosure:

- Pickton et al. (US 8234150) - a system for matching a venue with one or more

  performers. The system can include a database that stores information about

  venues for holding performances, performers that perform acts of entertainment,

  and fans of the performers. The system can be configured to assist

  in scheduling a tour or rotation for an attraction at a plurality of venues.

57. Applicant's amendment necessitated the new ground(s) of rejection presented in this Office

action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP § 706.07(a). Applicant is

reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

58. A shortened statutory period for reply to this final action is set to expire THREE MONTHS

from the mailing date of this action. In the event a first reply is filed within TWO MONTHS

of the mailing date of this final action and the advisory action is not mailed until after the

end of the THREE-MONTH shortened statutory period, then the shortened statutory period

will expire on the date the advisory action is mailed, and any extension fee pursuant to 37

CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event,

however, will the statutory period for reply expire later than SIX MONTHS from the date of

this final action.

Application/Control Number: 17/332,144                                      Page 26
Art Unit: 3623

59. Any inquiry concerning this communication or earlier communications from the examiner should be directed to LETORIA G KNIGHT whose telephone number is (571)270-0485. The examiner can normally be reached M-F 9am-5pm.

60. Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

61. If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Rutao Wu can be reached on 571-272-6045. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

62. Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/L.G.K/
Examiner, Art Unit 3623
/RUTAO WU/
Supervisory Patent Examiner, Art Unit 3623

# EXHIBIT M

Serial No. 17/332,144
Page 10 of 17

## REMARKS

In response to the Office Action mailed December 15, 2021, Applicant respectfully requests reconsideration in view of the amendments and the following remarks.

Claims 1-5, 7, 9-15, 17, 19, and 20 were previously pending in this application. Claims 1, 2, 4, 5, 7, 10, 11, 12, 13, 14, 17, and 20 are amended herein. Support for the amendments can be found in at least paragraphs [0030]-[0032] of the specification as filed. No claims have been canceled. New claims 21-24 have been added. As a result, claims 1-5, 7, 9-15, 17, and 19-24 are pending for examination with claims 1, 10, 11, and 20 being independent claims. No new matter has been added.

### Examiner Interview

Applicant thanks the Examiner for her time and courtesy during the interview conducted with the Applicant and Applicant's representative on February 4, 2022. During the interview, the parties discussed the rejections of the claims under 35 U.S.C. § 101 and 103 and potential amendments to claim 1. The Examiner indicated that claim 1 would overcome the 35 U.S.C. § 101 rejection if amended to specify at least one type of machine learning model and clarify that the machine learning model is iteratively trained. In reliance on this indication, Applicant has amended claim 1 and also amended the other independent claims to be consistent with the amendments to claim 1. No agreement as to the allowability of the claims was reached.

### Drawings

The drawings are objected to as allegedly failing to comply with 37 CFR 1.84(p)(4). Specifically, the Office Action states the drawings are objected to because "reference characters '116' and '118' have both been used to designate 'the venue module' in paragraph [0027] of the Specification." (Office Action, Page 2). Applicant submits this objection is moot in view of the amendments to paragraph [0027] of the specification.

### Claim Rejections Under 35 U.S.C. § 101

Claims 1-5, 7, 9-15, 17, 19, and 20 stand rejected under 35 U.S.C. § 101 because the claimed invention is allegedly directed to an abstract idea without significantly more. Without acceding to the correctness of the rejection, Applicant has amended the claims and submits the following remarks with respect to the amended claims.

IPTS/115006402.1

Serial No. 17/332,144
Page 11 of 17

As discussed above, the Examiner indicated during the Interview that claim 1 would overcome the 35 U.S.C. § 101 rejection if amended to specify at least one type of machine learning model and clarify that the machine learning model is iteratively trained. As such, claim 1 has been amended to recite "providing the one or more event parameters and the one or more event weights to a machine learning model, wherein the **machine learning model** is at least one of a **random forest model, a regression model, a neural network model, a decision tree model, a support vector machine model, and a Bayesian network model**; and generating, via the machine learning model, a schedule for the series of live events that is optimized relative to the one or more prioritized target features, wherein the **machine learning model** is configured to be **iteratively trained** to identify relationships between different event parameters and the plurality of target features using historical data corresponding to one or more previous series of live events." Independent claims 10, 11, and 20 have been amended in a similar manner.

For at least these reasons, Applicant respectfully submits that claims 1, 10, 11, and 20 recite patentable subject matter. Accordingly, reconsideration and withdrawal of the rejections of claims 1, 10, 11, and 20 under 35 U.S.C. § 101 is respectfully requested. Each of claims 2-5, 7, 9, 12-15, 17, and 19 depends from one of claims 1, 10, or 11 and is allowable for at least the same reasons as the independent claim from which it depends. Accordingly, reconsideration and withdrawal of the rejections of claims 2-5, 7, 9, 12-15, 17, and 19 under 35 U.S.C. § 101 is respectfully requested.

Claim Rejections Under 35 U.S.C. § 103

Claims 1–16, and 18–20 stand rejected under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Application Publication No. 2013/0046580 to Harker et al. (hereinafter Harker) in view of U.S. Patent Application Publication No. 2018/0213273 to Carter (hereinafter Carter). Without acceding to the correctness of the rejections, Applicant has amended the claims and submits the following remarks with respect to the amended claims and the art asserted in the Office Action.

Claim 1, as amended, recites "[a] computer-implemented method of dynamically generating an event schedule, the method comprising: receiving one or more event parameters for a series of live events to be held in a plurality of geographic regions, wherein the one or more event parameters comprise at least one of venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any

Serial No. 17/332,144
Page 12 of 17

combination thereof; receiving one or more event weights representing one or more prioritized target features of a plurality of target features associated with the series of live events, wherein the plurality of target features comprise at least event attendance, event profit, event revenue, event expenses, or any combination thereof; providing the one or more event parameters and the one or more event weights to a machine learning model, wherein the machine learning model is at least one of a random forest model, a regression model, a neural network model, a decision tree model, a support vector machine model, and a Bayesian network model; and generating, via the machine learning model, a schedule for the series of live events that is optimized relative to the one or more prioritized target features, wherein the machine learning model is configured to be iteratively trained to identify relationships between different event parameters and the plurality of target features using historical data corresponding to one or more previous series of live events."

Claim 10, as amended, recites "[a] system comprising: one or more computer systems programmed to perform operations comprising: receiving one or more event parameters for a series of live events to be held in a plurality of geographic regions, wherein the one or more event parameters comprise at least one of venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; receiving one or more event weights representing prioritized target features of a plurality of target features associated with the series of live events, wherein the plurality of target features comprise at least event attendance, event profit, event revenue, event expenses, or any combination thereof; providing the one or more event parameters and the one or more event weights to a machine learning model, wherein the machine learning model is at least one of a random forest model, a regression model, a neural network model, a decision tree model, a support vector machine model, and a Bayesian network model; and generating, via the machine learning model, a schedule for the series of live events that is optimized relative to the one or more prioritized target features, wherein the machine learning model is configured to be iteratively trained to identify relationships between different event parameters and the plurality of target features using historical data corresponding to one or more previous series of live events."

Claim 11, as amended, recites "[a] computer-implemented method of dynamically generating an event schedule, the method comprising: receiving one or more event parameters

Serial No. 17/332,144
Page 13 of 17

for a plurality of live events comprising performances by a plurality of performers, the one or more parameters comprising a list of the performers and a list of available venues in a plurality of geographic regions, wherein the one or more event parameters further comprise at least one of proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; receiving one or more event weights representing one or more prioritized target features of a plurality of target features associated with the plurality of live events, wherein the plurality of target features comprise at least event attendance, event profit, event revenue, event expenses, or any combination thereof; providing the one or more event parameters and the one or more event weights to a machine learning model, wherein the machine learning model is at least one of a random forest model, a regression model, a neural network model, a decision tree model, a support vector machine model, and a Bayesian network model; and generating, via the machine learning model, a schedule for the plurality of live events that is optimized relative to the one or more prioritized target features, wherein the machine learning model is configured to be iteratively trained to identify relationships between different event parameters and the plurality of target features using historical data corresponding to a plurality of previous live events."

Claim 20, as amended, recites "[a] system comprising: one or more computer systems programmed to perform operations comprising: receiving one or more event parameters for a plurality of live events comprising performances by a plurality of performers, the one or more parameters comprising a list of the performers and a list of available venues in a plurality of geographic regions, wherein the one or more event parameters further comprise at least one of proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; receiving one or more event weights representing one or more prioritized target features of a plurality of target features associated with the plurality of live events, wherein the plurality of target features comprise at least event attendance, event profit, event revenue, event expenses, or any combination thereof; providing the one or more event parameters and the one or more event weights to a machine learning model, wherein the machine learning model is at least one of a random forest model, a regression model, a neural network model, a decision tree model, a support vector machine model, and a Bayesian network model; and generating, via the machine learning model, a schedule for the plurality of live events that is optimized relative to the one or more prioritized target features, wherein the machine

IPTS/115006402.1

Serial No. 17/332,144
Page 14 of 17

learning model is configured to be iteratively trained to identify relationships between different event parameters and the plurality of target features using historical data corresponding to a plurality of previous live events."

The Office Action relies on a combination of Harker and Carter for an alleged teaching of the elements of claims 1, 10, 11, and 20. However, the combination of Harker and Carter fails to teach or suggest each and every element of amended claims 1, 10, 11, and 20, recited above.

Harker is directed to a system for receiving inputs from potential attendees in order to acquire information from prospective attendees, developing potential tour stops including venues and dates for particular events and talent, and analyzing the feasibility of scheduling events in particular cities. Voting by potential attendees is used to draw or pull an event to a particular city. (Paragraphs [0008]-[0009]).

Carter is directed to a system configured to manage a film festival. The system coordinates the transfer of digital film data, the scheduling and assignment of film data with specific projector devices, and the validation of film data. A graphical user interface (GUI) is provided to film festival organizers to manage ticket printing, film scheduling, film data transfers. (Abstract).

Neither Harker nor Carter describe generating a schedule for a series of live events in different geographic regions that is optimized relative to one or more prioritized target features. As discussed above, Carter describes a system for managing a film festival; not a schedule for a series of live events in different geographic regions. While Harker describes generating a schedule, the schedule is generated based a voting system that indicates interest or demand for pulling an event to a particular city. In other words, the schedule is generated based on the preferences of the customer base; not the preferences of the performer. The present claims provide for a technique in which event parameters and event weights are used to generate a schedule for a series of live events in different geographic regions that is optimized to the preferences of the performer. Harker and Carter fail to provide this advantage because neither considers generating a schedule that is optimized to the preferences of a performer.

As such, the combination of Harker and Carter fails to disclose teach or suggest "receiving one or more **event parameters** for a series of live events to be held in a plurality of geographic regions... receiving one or more **event weights** representing one or more **prioritized target features of a plurality of target features** associated with the series of live events,

IPTS/115006402.1

Serial No. 17/332,144
Page 15 of 17

wherein the plurality of target features comprise at least event attendance, event profit, event revenue, event expenses, or any combination thereof; providing the one or more **event parameters** and the one or more **event weights** to a machine learning model… generating, via the machine learning model, a **schedule** for the series of live events that is **optimized relative to the one or more prioritized target features**, wherein the machine learning model is configured to be iteratively trained to **identify relationships** between different **event parameters** and the **plurality of target features** using historical data corresponding to one or more previous series of live events," as recited in amended claims 1 and 10.

Similarly, the combination of Harker and Carter fails to disclose, teach, or suggest "receiving one or more **event parameters** for a plurality of live events comprising performances by a plurality of performers, the one or more parameters comprising a list of the performers and a list of available venues in a plurality of geographic regions… receiving one or more **event weights** representing one or more **prioritized target features of a plurality of target features** associated with the plurality of live events, wherein the plurality of target features comprise at least event attendance, event profit, event revenue, event expenses, or any combination thereof; providing the one or more **event parameters** and the one or more **event weights** to a machine learning model… generating, via the machine learning model, a **schedule** for the plurality of live events that is **optimized relative to the one or more prioritized target features**, wherein the machine learning model is configured to be iteratively trained to **identify relationships** between different **event parameters** and the **plurality of target features** using historical data corresponding to a plurality of previous live events," as recited in amended claims 11 and 20.

Based on the foregoing, claims 1, 10, 11, and 20 are allowable over the combination of Harker and Carter. Accordingly, withdrawal of the rejections of claims 1, 10, 11, and 20 under 35 U.S.C. § 103 is respectfully requested. Each of claims 2-9, 12–16, 18, and 19 depends from one of claims 1, 10, or 11 and is allowable for at least the same reasons as the independent claim from which it depends. Accordingly, withdrawal of the rejections of claims 2-9, 12–16, 18, and 19 under 35 U.S.C. § 103 is respectfully requested.

Claim 17 stands rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Harker in view of Carter, and in further view of U.S. Patent Application Publication No. 2013/0173317 to Higgy (hereinafter Higgy). Applicant respectfully disagrees and submits the following remarks.

Serial No. 17/332,144
Page 16 of 17

Claim 17 depends from claim 11, and is allowable for at least the same reasons as the claim 11. In addition, Higgy fails to cure the deficiencies of Harker and Carter discussed above. Accordingly, withdrawal of the rejection of claim 17 under 35 U.S.C. § 103 is respectfully requested.

## New Claims

New claims 21-24 have been added. Support for claims 21-24 can be found in the claims as originally filed and in at least paragraph [0032] of the specification as filed. Each of claims 21-24 depends from one of claims 1, 10, 11, or 20 and is allowable for at least the same reasons as the independent claim from which it depends. Accordingly, claims 21-24 are believed to be in allowable condition.

IPTS/115006402.1

Serial No. 17/332,144
Page 17 of 17

## CONCLUSION

In view of the above amendment, Applicant believes the pending application is in condition for allowance. The examiner is invited to contact the undersigned if the examiner believes it would be helpful in furthering the prosecution of the pending Application.

Applicant believes no fee is due with this response. However, if a fee is due, please charge our Deposit Account No. 07-1700, under Order No. RCA-007 from which the undersigned is authorized to draw.

Dated: February 10, 2022                    Respectfully submitted,

                                            Electronic signature:  /Martin Gomez/
                                            Martin Gomez
                                               Registration No.: 68,762
                                            GOODWIN PROCTER LLP
                                            100 Northern Avenue
                                            Boston, MA 02210
                                            (617) 570-1836
                                            Attorney for Applicant

IPTS/115006402.1

# EXHIBIT N

Serial No. 17/332,144
Page 11 of 18

## REMARKS

In response to the Advisory Action mailed on February 28, 2022, and further in response to the Final Office Action dated December 15, 2021, Applicant respectfully requests reconsideration in view of the amendments and the following remarks.

Claims 1-5, 7, 9-15, 17, 19, and 20 were previously pending in this application. Claims 1-5, 7, 10-14, 17, and 20 are amended herein. Support for the amendments can be found in at least paragraphs [0030]-[0032] of the specification as filed. No claims have been canceled. New claims 21-24 have been added. As a result, claims 1-5, 7, 9-15, 17, and 19-24 are pending for examination with claims 1, 10, 11, and 20 being independent claims. No new matter has been added.

### Examiner Interview

Applicant thanks the Examiner for her time and courtesy during the interview conducted with the Applicant and Applicant's representative on February 4, 2022.  During the interview, the parties discussed the rejections of the claims under 35 U.S.C. § 101 and 103 and potential amendments to claim 1. No agreement as to the allowability of the claims was reached.

### Advisory Action

Applicant thanks the Examiner for indicating in the Advisory Action, that claim 1 would overcome the 35 U.S.C. § 101 rejection if amended to "positively recite the type of machine learning model applied, positively recite the re-training of the machine learning model (a) at the occurrence of an event/trigger or (b) iteratively until a minimum level of accuracy is achieved that results in the improved accuracy of the model and/or improved functioning of a computer." Applicant has amended claim 1 in accordance with this suggestion and also amended the other independent claims to be consistent with the amendments to claim 1.

### Drawings

The drawings are objected to as allegedly failing to comply with 37 CFR 1.84(p)(4). Specifically, the Office Action states the drawings are objected to because "reference characters '116' and '118' have both been used to designate 'the venue module' in paragraph [0027] of the Specification." (Office Action, Page 2). Applicant submits this objection is moot in view of the amendments to paragraph [0027] of the specification.

IPTS/115517293.1

Serial No. 17/332,144
Page 12 of 18

<u>Claim Rejections Under 35 U.S.C. § 101</u>

Claims 1-5, 7, 9-15, 17, 19, and 20 stand rejected under 35 U.S.C. § 101 because the claimed invention is allegedly directed to an abstract idea without significantly more. Without acceding to the correctness of the rejection, Applicant has amended the claims and submits the following remarks with respect to the amended claims.

As discussed above, the Advisory Action indicates that claim 1 would overcome the 35 U.S.C. § 101 rejection if amended to specify at least one type of machine learning model and clarify that the machine learning model is iteratively trained. As such, claim 1 has been amended to recite "**training, in a first stage**, a machine learning (ML) model to identify relationships between the plurality of event parameters and the plurality of event target features using historical data corresponding to one or more previous series of live events, wherein the **ML model** is at least one of a **random forest ML model, a regression ML model, a neural network ML model, a decision tree ML model, a support vector machine ML model, and a Bayesian network ML model**; **training, in a second stage**, the ML model to apply the identified relationships to **optimize** at least one event target feature of the plurality of event target features based on at least one event parameter of the plurality of event parameters." Independent claims 10, 11, and 20 have been amended in a similar manner.

For at least these reasons, Applicant respectfully submits that claims 1, 10, 11, and 20 recite patentable subject matter. Accordingly, reconsideration and withdrawal of the rejections of claims 1, 10, 11, and 20 under 35 U.S.C. § 101 is respectfully requested. Each of claims 2-5, 7, 9, 12-15, 17, and 19 depends from one of claims 1, 10, or 11 and is allowable for at least the same reasons as the independent claim from which it depends. Accordingly, reconsideration and withdrawal of the rejections of claims 2-5, 7, 9, 12-15, 17, and 19 under 35 U.S.C. § 101 is respectfully requested.

<u>Claim Rejections Under 35 U.S.C. § 103</u>

Claims 1–16, and 18–20 stand rejected under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Application Publication No. 2013/0046580 to Harker et al. (hereinafter Harker) in view of U.S. Patent Application Publication No. 2018/0213273 to Carter (hereinafter Carter). Without acceding to the correctness of the rejections, Applicant has amended the claims and submits the following remarks with respect to the amended claims and the art asserted in the Office Action.

IPTS/115517293.1

Serial No. 17/332,144
Page 13 of 18

Claim 1, as amended, recites "[a] computer-implemented method of dynamically generating an event schedule, the method comprising: defining a plurality of event parameters for series of live events comprising venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; defining a plurality of event target features for series of live events comprising event attendance, event profit, event revenue, event expenses, or any combination thereof; training, in a first stage, a machine learning (ML) model to identify relationships between the plurality of event parameters and the plurality of event target features using historical data corresponding to one or more previous series of live events, wherein the ML model is at least one of a random forest ML model, a regression ML model, a neural network ML model, a decision tree ML model, a support vector machine ML model, and a Bayesian network ML model; training, in a second stage, the ML model to apply the identified relationships to optimize at least one event target feature of the plurality of event target features based on at least one event parameter of the plurality of event parameters; receiving one or more user-specific event parameters for a future series of live events to be held in a plurality of geographic regions; receiving one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events; providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; and  generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features."

Claim 10, as amended, recites "[a] system comprising: one or more computer systems programmed to perform operations comprising: defining a plurality of event parameters for series of live events comprising venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; defining a plurality of event target features for series of live events comprising event attendance, event profit, event revenue, event expenses, or any combination thereof; training, in a first stage, a machine learning (ML) model to identify relationships between the plurality of event parameters and the plurality of event target features using historical data corresponding to one or more previous series of live events, wherein the ML model is at least one of a random forest ML model, a regression ML model, a neural network ML model, a decision tree ML model, a support vector machine ML model, and a Bayesian

Serial No. 17/332,144
Page 14 of 18

network ML model; training, in a second stage, the ML model to apply the identified relationships to optimize at least one event target feature of the plurality of event target features based on at least one event parameter of the plurality of event parameters; receiving one or more user-specific event parameters for a future series of live events to be held in a plurality of geographic regions; receiving one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events; providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; and generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features."

Claim 11, as amended, recites "[a] computer-implemented method of dynamically generating an event schedule, the method comprising: defining a plurality of event parameters for live events comprising performances by a plurality of performers, the one or more parameters comprising a list of the performers and a list of available venues in a plurality of geographic regions, wherein the one or more event parameters further comprise at least one of proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; defining a plurality of event target features for live events comprising event attendance, event profit, event revenue, event expenses, or any combination thereof; training, in a first stage, a machine learning (ML) model to identify relationships between the plurality of event parameters and the plurality of event target features using historical data corresponding to a plurality of previous live events, wherein the ML model is at least one of a random forest ML model, a regression ML model, a neural network ML model, a decision tree ML model, a support vector machine ML model, and a Bayesian network ML model; training, in a second stage, the ML model to apply the identified relationships to optimize at least one event target feature of the plurality of event target features based on at least one event parameter of the plurality of event parameters; receiving one or more user-specific event parameters for a plurality of future live events to be held in a plurality of geographic regions; receiving one or more user-specific event weights representing one or more prioritized event target features associated with the plurality of future live events; providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; and generating, via the trained ML model, a schedule for the plurality of future live events that is optimized relative to the one or more prioritized event target features."

IPTS/115517293.1

Serial No. 17/332,144
Page 15 of 18

Claim 20, as amended, recites "[a] system comprising: one or more computer systems programmed to perform operations comprising: defining a plurality of event parameters for live events comprising performances by a plurality of performers, the one or more parameters comprising a list of the performers and a list of available venues in a plurality of geographic regions, wherein the one or more event parameters further comprise at least one of proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; defining a plurality of event target features for live events comprising event attendance, event profit, event revenue, event expenses, or any combination thereof; training, in a first stage, a machine learning (ML) model to identify relationships between the plurality of event parameters and the plurality of event target features using historical data corresponding to a plurality of previous live events, wherein the ML model is at least one of a random forest ML model, a regression ML model, a neural network ML model, a decision tree ML model, a support vector machine ML model, and a Bayesian network ML model; training, in a second stage, the ML model to apply the identified relationships to optimize at least one event target feature of the plurality of event target features based on at least one event parameter of the plurality of event parameters; receiving one or more user-specific event parameters for a plurality of future live events to be held in a plurality of geographic regions; receiving one or more user-specific event weights representing one or more prioritized event target features associated with the plurality of future live events; providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; and generating, via the trained ML model, a schedule for the plurality of future live events that is optimized relative to the one or more prioritized event target features."

The Office Action relies on a combination of Harker and Carter for an alleged teaching of the elements of claims 1, 10, 11, and 20. However, the combination of Harker and Carter fails to teach or suggest each and every element of amended claims 1, 10, 11, and 20, recited above.

Harker is directed to a system for receiving inputs from potential attendees in order to acquire information from prospective attendees, developing potential tour stops including venues and dates for particular events and talent, and analyzing the feasibility of scheduling events in particular cities. Voting by potential attendees is used to draw or pull an event to a particular city. (Paragraphs [0008]-[0009]).

IPTS/115517293.1

Serial No. 17/332,144
Page 16 of 18

Carter is directed to a system configured to manage a film festival. The system coordinates the transfer of digital film data, the scheduling and assignment of film data with specific projector devices, and the validation of film data. A graphical user interface (GUI) is provided to film festival organizers to manage ticket printing, film scheduling, film data transfers. (Abstract).

Neither Harker nor Carter describe generating a schedule for a series of live events in different geographic regions that is optimized relative to one or more prioritized target features. As discussed above, Carter describes a system for managing a film festival; not a schedule for a series of live events in different geographic regions. While Harker describes generating a schedule, the schedule is generated based a voting system that indicates interest or demand for pulling an event to a particular city. In other words, the schedule is generated based on the preferences of the customer base; not the preferences of the performer. The present claims provide for a technique in which event parameters and event weights are used to generate a schedule for a series of live events in different geographic regions that is optimized to the preferences of the performer. Harker and Carter fail to provide this advantage because neither considers generating a schedule that is optimized to the preferences of a performer.

As such, the combination of Harker and Carter fails to disclose teach or suggest "receiving one or more **user-specific** **event parameters** for a future series of live events to be held in a plurality of geographic regions; receiving one or more **user-specific** **event weights** representing one or more **prioritized event target features** associated with the future series of live events; providing the one or more **user-specific** **event parameters** and the one or more **user-specific** **event weights** to the trained ML model; and generating, via the trained ML model, a **schedule** for the future series of live events that is **optimized relative to the one or more prioritized event target features**," as recited in amended claims 1 and 10.

Similarly, the combination of Harker and Carter fails to disclose, teach, or suggest "receiving one or more **user-specific** **event parameters** for a plurality of future live events to be held in a plurality of geographic regions; receiving one or more **user-specific** **event weights** representing one or more **prioritized event target features** associated with the plurality of future live events; providing the one or more **user-specific** **event parameters** and the one or more **user-specific** **event weights** to the trained ML model; and generating, via the trained ML

Serial No. 17/332,144
Page 17 of 18

model, a **schedule** for the plurality of future live events that is **optimized relative to the one or more prioritized event target features**," as recited in amended claims 11 and 20.

Based on the foregoing, claims 1, 10, 11, and 20 are allowable over the combination of Harker and Carter. Accordingly, withdrawal of the rejections of claims 1, 10, 11, and 20 under 35 U.S.C. § 103 is respectfully requested. Each of claims 2-9, 12–16, 18, and 19 depends from one of claims 1, 10, or 11 and is allowable for at least the same reasons as the independent claim from which it depends. Accordingly, withdrawal of the rejections of claims 2-9, 12–16, 18, and 19 under 35 U.S.C. § 103 is respectfully requested.

Claim 17 stands rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Harker in view of Carter, and in further view of U.S. Patent Application Publication No. 2013/0173317 to Higgy (hereinafter Higgy). Applicant respectfully disagrees and submits the following remarks.

Claim 17 depends from claim 11, and is allowable for at least the same reasons as the claim 11. In addition, Higgy fails to cure the deficiencies of Harker and Carter discussed above. Accordingly, withdrawal of the rejection of claim 17 under 35 U.S.C. § 103 is respectfully requested.

New Claims

New claims 21-24 have been added. Support for claims 21-24 can be found in the claims as originally filed and in at least paragraph [0032] of the specification as filed. Each of claims 21-24 depends from one of claims 1, 10, 11, or 20 and is allowable for at least the same reasons as the independent claim from which it depends. Accordingly, claims 21-24 are believed to be in allowable condition.

IPTS/115517293.1

Serial No. 17/332,144
Page 18 of 18

## CONCLUSION

In view of the above amendment, Applicant believes the pending application is in condition for allowance. The examiner is invited to contact the undersigned if the examiner believes it would be helpful in furthering the prosecution of the pending Application.

A Request for Continued Examination (RCE) and the corresponding fees are submitted herewith. If there are any additional charges or any deficiency in the fees submitted herewith, please charge our Deposit Account No. 07-1700, under Order No. RCA-007 from which the undersigned is authorized to draw.

Dated: March 7, 2022                          Respectfully submitted,

                                              Electronic signature:  /Martin Gomez/
                                              Martin Gomez
                                                  Registration No.: 68,762
                                              GOODWIN PROCTER LLP
                                              100 Northern Avenue
                                              Boston, MA 02210
                                              (617) 570-3974
                                              Attorney for Applicant

IPTS/115517293.1

Serial No. 17/332,144
Page 11 of 18

**REMARKS**

In response to the Office Action mailed on March 25, 2022, Applicant respectfully requests reconsideration in view of the amendments and the following remarks.

Claims 1-5, 7, 9-15, 17, and 19-24 were previously pending in this application. Claims 1, 10, 11, and 20-24 are amended herein. Support for the amendments can be found in at least paragraphs [0040]-[0041] of the specification as filed. No claims have been added or canceled. As a result, claims 1-5, 7, 9-15, 17, and 19-24 remain pending for examination with claims 1, 10, 11, and 20 being independent claims. No new matter has been added.

Examiner Interview

Applicant thanks the Examiner for her time and courtesy during the interview conducted with the Applicant and Applicant's representative on April 19, 2022.  During the interview, the parties discussed the rejections of the claims under 35 U.S.C. § 101 and 103 and potential amendments to claim 1. The Examiner indicated that claim 1 would overcome the 35 U.S.C. § 101 rejection if amended to clarify that the machine learning model is iteratively trained and that such training improves the accuracy of the machine learning model. In reliance on this indication, Applicant has amended claim 1 and also amended the other independent claims to be consistent with the amendments to claim 1. No agreement as to the allowability of the claims was reached.

Claim Rejections Under 35 U.S.C. § 112

Claims 1-5, 7, 9-15, 17, and 19-24 stand rejected under 35 U.S.C. § 112(a) or 35 U.S.C. § 112 (pre-AIA), first paragraph, as allegedly failing to comply with the written description requirement.

Without acceding to the correctness of the rejections, Applicant has amended independent claims 1, 10, 11, and 20. Applicant submits that the amendments to claims 1, 10, 11, and 20 render the rejections moot and respectfully requests reconsideration of claims 1-5, 7, 9-15, 17, and 19-24.

Claim Rejections Under 35 U.S.C. § 101

Claims 1-5, 7, 9-15, 17, and 19-24 stand rejected under 35 U.S.C. § 101 because the claimed invention is allegedly directed to an abstract idea without significantly more. Without

IPTS/116663274.2

Serial No. 17/332,144
Page 12 of 18

acceding to the correctness of the rejection, Applicant has amended the claims and submits the following remarks with respect to the amended claims.

As discussed above, the Examiner indicated during the Interview that claim 1 would overcome the 35 U.S.C. § 101 rejection if amended to clarify that the machine learning model is iteratively trained and that such training improves the accuracy of the machine learning model. As such, claim 1 has been amended to clarify that the machine learning model is at least one of a neural network machine learning model and a support vector machine learning model that is iteratively trained to improve the accuracy of the model. More specifically, claim 1 has been amended to recite "providing the one or more event parameters and the one or more event target features to a machine learning (ML), wherein the ML model is at least one of a **neural network** ML model and a **support vector** ML model; **iteratively training** the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such **iterative training improves the accuracy of the ML model**." As recited in paragraph [0041] of the specification, "[b]y training the performer module 116 and the venue module 118 to generate optimized schedules automatically and update the schedules dynamically, in response to real-time changes in data, the input parameters and target features can be processed and considered more efficiently and accurately." One of ordinary skill in the art would recognize that both neural network and support vector machine learning models are by nature trained iteratively to improve model performance and accuracy.

In addition, claim 1 has been amended to clarify that real-time changes to the user-specific event parameters are detected and provided to the machine learning model to: (i) improve the accuracy of the machine learning model and (ii) update the schedule for the future series of live events such that the schedule remains optimized relative to the prioritized event features. More specifically claim 1 has been amended to recite "**detecting a real-time change** to the one or more user-specific event parameters; providing the real-time change to the trained ML model to **improve the accuracy of the trained ML model**; and **updating**, via the trained ML model, the schedule for the future series of live events such that the schedule remains **optimized** relative to the one or more **prioritized event target features in view of the real-time change** to the one or more user-specific event parameters." Applicant respectfully submits that such features amount to significantly more than an abstract idea.

Serial No. 17/332,144
Page 13 of 18

Independent claims 10, 11, and 20 have been amended in a similar manner.

For at least these reasons, Applicant respectfully submits that claims 1, 10, 11, and 20 recite patentable subject matter. Accordingly, reconsideration and withdrawal of the rejections of claims 1, 10, 11, and 20 under 35 U.S.C. § 101 is respectfully requested. Each of claims 2-5, 7, 9, 12-15, 17, and 19-24 depends from one of claims 1, 10, 11, or 20 and is allowable for at least the same reasons as the independent claim from which it depends. Accordingly, reconsideration and withdrawal of the rejections of claims 2-5, 7, 9, 12-15, 17, and 19-24 under 35 U.S.C. § 101 is respectfully requested.

<u>Claim Rejections Under 35 U.S.C. § 103</u>

Claims 1-5, 7, 9-15, and 19-24 stand rejected under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Application Publication No. 2013/0046580 to Harker et al. (hereinafter Harker) in view of U.S. Patent Application Publication No. 2018/0213273 to Carter (hereinafter Carter), and further in view of U.S. Patent Application Publication No. 2019/0034837 to Lou et al. (hereinafter Lou). Without acceding to the correctness of the rejections, Applicant has amended the claims and submits the following remarks with respect to the amended claims and the art asserted in the Office Action.

Claim 1, as amended, recites "[a] computer-implemented method of dynamically generating an event schedule, the method comprising: receiving one or more event parameters for series of live events, wherein the one or more event parameters comprise at least one of venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; receiving one or more event target features associated with the series of live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof; providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model; iteratively training the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model; receiving, from a user, one or more user-specific event parameters for a future series of live events to be held in a plurality of geographic regions; receiving, from the user, one or more user-specific event weights

IPTS/116663274.2

Serial No. 17/332,144
Page 14 of 18

representing one or more prioritized event target features associated with the future series of live events; providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features; detecting a real-time change to the one or more user-specific event parameters; providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the one or more user-specific event parameters."

Claim 10 is amended analogously to claim 1.

Claim 11, as amended, recites "[a] computer-implemented method of dynamically generating an event schedule, the method comprising: receiving one or more event parameters for live events comprising performances by a plurality of performers, wherein the one or more event parameters comprise at least one of a list of the performers, a list of available venues in a plurality of geographic regions, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; receiving one or more event target features associated with live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof; providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model; iteratively training the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to a plurality of previous live events, wherein such iterative training improves the accuracy of the ML model; receiving, from a user, one or more user-specific event parameters for a plurality of future live events to be held in a plurality of geographic regions; receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the plurality of future live events; providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; generating, via the trained ML model, a schedule for the plurality of future live events that is optimized relative to the one or more

Serial No. 17/332,144
Page 15 of 18

prioritized event target features; detecting a real-time change to the one or more user-specific event parameters; providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and updating, via the trained ML model, the schedule for the plurality of future live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the one or more user-specific event parameters."

Claim 20 is amended analogously to claim 11.

The Office Action relies on a combination of Harker, Carter, and Lou for an alleged teaching of the elements of claims 1, 10, 11, and 20. However, the combination of Harker, Carter, and Lou fails to teach or suggest each and every element of amended claims 1, 10, 11, and 20, recited above.

Harker is directed to a system for receiving inputs from potential attendees in order to acquire information from prospective attendees, developing potential tour stops including venues and dates for particular events and talent, and analyzing the feasibility of scheduling events in particular cities. Voting by potential attendees is used to draw or pull an event to a particular city. (Paragraphs [0008]-[0009]).

Carter is directed to a system configured to manage a film festival. The system coordinates the transfer of digital film data, the scheduling and assignment of film data with specific projector devices, and the validation of film data. A graphical user interface (GUI) is provided to film festival organizers to manage ticket printing, film scheduling, film data transfers. (Abstract).

The Office Action concedes that "Harker et al. and Carter combined fail to explicitly recite receiving user-specific weights and providing the user-specific weight to the trained ML model." (Page 15). As such, the Office Action relies on Lou for an alleged teaching of these elements. Applicant respectfully disagrees.

Lou is directed to generating a client reservation value in an online accommodation marketplace. A server computing system analyzes booking session data to generate feature vectors for each booking session associated with a particular client. The computer system generates training data comprising the feature vectors and uses the training data to train a model. The computer system calculates a set of weights that are used by the model to compute a client reservation value. (Paragraphs [0014]-[0016]).

IPTS/116663274.2

Nowhere does Lou describe receiving user-specific weights from a user. As discussed above, the set of weights in Lou is calculated by the system. For example, Lou recites "[t]he training module 304 further provides functionality to **calculate** a set of weights (or coefficients) using the training data." (Paragraph [0053]). The present claims provide for a technique in which event weights are received from a user and used to generate a live event schedule that is optimized to the preferences of the user. Lou fails to provide this advantage because the weights in Lou are calculated to determine a reservation value for an accommodation booking; the weights are not provided by a user nor do they represent event target features prioritized by the user.

As such, the combination of Harker, Carter, and Lou fails to disclose, teach, or suggest "receiving, from a user, one or more user-specific event parameters for a future series of live events to be held in a plurality of geographic regions; **receiving, <u>from the user</u>**, one or more **<u>user-specific event weights</u>** representing one or more **prioritized event target features** associated with the future series of live events; providing the one or more user-specific event parameters and the one or more **<u>user-specific event weights</u>** to the trained ML model; generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more **prioritized event target features**," as recited in amended claims 1 and 10.

Similarly, the combination of Harker, Carter, and Lou fails to disclose, teach, or suggest "receiving, from a user, one or more user-specific event parameters for a future series of live events to be held in a plurality of geographic regions; **receiving, <u>from the user</u>**, one or more **<u>user-specific event weights</u>** representing one or more **prioritized event target features** associated with the future series of live events; providing the one or more user-specific event parameters and the one or more **<u>user-specific event weights</u>** to the trained ML model; generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more **prioritized event target features**," as recited in amended claims 11 and 20.

Based on the foregoing, claims 1, 10, 11, and 20 are allowable over the combination of Harker, Carter, and Lou. Accordingly, withdrawal of the rejections of claims 1, 10, 11, and 20 under 35 U.S.C. § 103 is respectfully requested. Each of claims 2-5, 7, 9, 12-15, 19, and 21-24 depends from one of claims 1, 10, 11, or 20 and is allowable for at least the same reasons as the

Serial No. 17/332,144
Page 17 of 18

independent claim from which it depends. Accordingly, withdrawal of the rejections of claims 2-5, 7, 9, 12-15, 19, and 21-24 under 35 U.S.C. § 103 is respectfully requested.

Claim 17 stands rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Harker in view of Carter and Lou, and in further view of U.S. Patent Application Publication No. 2013/0173317 to Higgy (hereinafter Higgy). Applicant respectfully disagrees and submits the following remarks.

Claim 17 depends from claim 11, and is allowable for at least the same reasons as the claim 11. In addition, Higgy fails to cure the deficiencies of Harker, Carter, and Lou discussed above. Accordingly, withdrawal of the rejection of claim 17 under 35 U.S.C. § 103 is respectfully requested.

IPTS/116663274.2

Serial No. 17/332,144
Page 18 of 18

## CONCLUSION

In view of the above amendment, Applicant believes the pending application is in condition for allowance. The examiner is invited to contact the undersigned if the examiner believes it would be helpful in furthering the prosecution of the pending Application.

Applicant believes no fee is due with this response. However, if a fee is due, please charge our Deposit Account No. 07-1700, under Order No. RCA-007 from which the undersigned is authorized to draw.

Dated: May 4, 2022                          Respectfully submitted,

Electronic signature:  /Martin Gomez/
Martin Gomez
    Registration No.: 68,762
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-3974
Attorney for Applicant

IPTS/116663274.2

# EXHIBIT O

# EXHIBIT P

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

|  |  |  |
|---|---|---|
| 51414 | 7590 | 05/25/2022 |

GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 NORTHERN AVENUE
BOSTON, MA 02210

| EXAMINER |
|---|
| KNIGHT, LETORIA G |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3623 | |

DATE MAILED: 05/25/2022

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/332,144 | 05/27/2021 | Andysheh Tabrizi | RCA-007 | 7151 |

TITLE OF INVENTION: SYSTEMS AND METHODS FOR DETERMINING EVENT SCHEDULES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $600 | $0.00 | $0.00 | $600 | 08/25/2022 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980.**
**It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at**
**www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

51414       7590       05/25/2022

GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 NORTHERN AVENUE
BOSTON, MA 02210

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

|  |
|---|
| (Typed or printed name) |
| (Signature) |
| (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/332,144 | 05/27/2021 | Andysheh Tabrizi | RCA-007 | 7151 |

TITLE OF INVENTION: SYSTEMS AND METHODS FOR DETERMINING EVENT SCHEDULES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $600 | $0.00 | $0.00 | $600 | 08/25/2022 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| KNIGHT, LETORIA G | 3623 | 705-007160 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❑ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

❑ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE        (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❑ Individual ❑ Corporation or other private group entity ❑ Government

4a. Fees submitted:   ❑ Issue Fee   ❑ Publication Fee (if required)   ❑ Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

❑ Electronic Payment via EFS-Web        ❑ Enclosed check        ❑ Non-electronic payment by credit card (Attach form PTO-2038)

❑ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

❑ Applicant certifying micro entity status. See 37 CFR 1.29

❑ Applicant asserting small entity status. See 37 CFR 1.27

❑ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____        Date _____

Typed or printed name _____        Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/332,144 | 05/27/2021 | Andysheh Tabrizi | RCA-007 | 7151 |

| | | | EXAMINER |
|---|---|---|---|
| 51414        7590        05/25/2022 | | | KNIGHT, LETORIA G |

GOODWIN PROCTER LLP
PATENT ADMINISTRATOR
100 NORTHERN AVENUE
BOSTON, MA 02210

| ART UNIT | PAPER NUMBER |
|---|---|
| 3623 | |

DATE MAILED: 05/25/2022

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

**OMB Clearance and PRA Burden Statement for PTOL-85 Part B**

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**Privacy Act Statement**

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:
1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 17/332,144 | Applicant(s) Tabrizi et al. | |
|---|---|---|---|
| | Examiner LETORIA G KNIGHT | Art Unit 3623 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to 04 May 2022.

☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are See Continuation Sheet . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

a) ☐ All      b) ☐ Some*      c) ☐ None of the:

1. ☐ Certified copies of the priority documents have been received.
2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

* Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☑ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

| /L.G.K/ Examiner, Art Unit 3623 | /CHARLES GUILIANO/ Primary Examiner, Art Unit 3623 |
|---|---|

**Continuation Sheet (PTOL-37)**                                                        **Application No. 17/332,144**

Continuation of 3. The allowed claim(s) is/are: 1-5,7,9-15,17 and 19-24

Application/Control Number: 17/332,144                                                                Page 2
Art Unit: 3623

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the

first inventor to file provisions of the AIA.

### *Status of Claims*

2.      The following is a response to Applicant's communication filed 04 May 2022, that

included amendments, which have been entered.  As a result of the amendment, claims 1

through 5, 7, 9 through 15, 17, and 19 through 24 are allowable.

### *Response to Amendment*

3.      Applicant's amendment to claims 1, 10, 11, and 20 through 24 have been entered.

4.      Applicant's amendment is sufficient to overcome the 35 U.S.C. 112(a) written

description rejection set forth in the previous office action.  Therefore, the 35 U.S.C. 112(a)

rejection is respectfully withdrawn.

5.      Applicant's amendment is sufficient to overcome the 35 U.S.C. 101 rejection.  The 35

U.S.C. 101 rejection is respectfully withdrawn.

6.      Applicant's amendment is sufficient to overcome the 35 U.S.C. 103 rejection.  The 35

U.S.C. 103 rejection is respectfully withdrawn.

### REASONS FOR ALLOWANCE

7.      Claims 1 through 5, 7, 9 through 15, 17, and 19 through 24  are allowed.

8.      The following is an Examiner's statement for allowance:

Application/Control Number: 17/332,144                                          Page 3
Art Unit: 3623

### 35 USC § 101

9.      Examiner submits that the claims are directed to patent-eligible subject matter because the claims, as amended, include additional technical elements that allow the recited limitations for a computer-implemented method of dynamically generating an event schedule, the method comprising:  receiving one or more event parameters for series of live events, wherein the one or more event parameters comprise at least one of venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof; receiving one or more event target features associated with the series of live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof; providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model, and a support vector ML model; iteratively training, the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model; receiving, from a user, one or more user-specific event parameters for a future series of live events to be held in a plurality of geographic regions; receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events; providing the one or more user-specific event parameters and the one or more user- specific event weights to the trained ML model; generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or

Application/Control Number: 17/332,144                                          Page 4
Art Unit: 3623

more prioritized event target features; detecting a real-time change to the one or more user-specific event parameters; providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the one or more user-specific event parameters, to be integrated into a practical application that improves the accuracy of data processing using a particular recitation of a machine learning process that uses real time updates to improve the accuracy of the model.

### *35 USC § 103*

10.     With respect to at least independent claims 1, 10, 11, and 20, Examiner asserts that none of the prior art, taken individually or in combination, teaches or suggests at least the following: providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model, and a support vector ML model; iteratively training, the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model; receiving, from a user, one or more user-specific event parameters for a future series of live events to be held in a plurality of geographic regions; receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events; providing the one or more user-specific event parameters and the one or more user- specific event weights to the trained ML model; generating, via the trained ML

Application/Control Number: 17/332,144                                        Page 5
Art Unit: 3623

model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features; detecting a real-time change to the one or more user-specific event parameters; providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the one or more user-specific event parameters.

11.    The closes prior art include Harker et al. (US 2013/0046580), Carter (US 2018/0213273), and Lou et al. (US 2019/0034837).  However, none of the prior art references, alone or in combination, teach the particular machine learning algorithms referenced in the claims.

12.    Harker et al. discloses methods and systems that analyze the feasibility of scheduling an event using parameters such as attendees, potential attendees, talents, venues, ticket costs, minimum box office receipts required, timing between events in the region, and the like. However, Harker et al. fails to teach training a machine learning model to identify relationships between the plurality of event parameters.

13.    Carter discloses obtaining a list of films and film information for a film festival and applying machine learning or artificial intelligence techniques to automatically schedule films for a film festival.  However, Carter fails to explicitly teach training the machine learning model and fails to teach the particular machine learning algorithms referenced in the claims herein.

14.    Lou et al. discloses a machine learning modeling system for capturing and analyzing reservation and booking related data, including generating training data and training models for computing a reservation price using feature vectors, the model training providing functionality

Application/Control Number: 17/332,144                                         Page 6
Art Unit: 3623

to calculate a set of weights using the training data, and the training data including one or more

constraints.  However Lou et al. fails to teach the particular machine learning algorithms

referenced in the claims herein.

15.     In addition, Examiner cites to the following additional references:

16.     Junkin (US 8,655,692) discloses a bidding system for providing information related to a

venue to a subscriber and receiving a bid from the subscriber to book the venue for a future

event, and enabling use of social networking to request and determine the content at venues.

However, Junkin fails to teach the particular machine learning algorithms referenced in the

claims herein.

17.     Scaturro et al. (US 6,925,458) discloses a system and method  for providing a listing of

the times, dates, and venues of scheduled media activities of public persons over a network,

such as the Internet.  However, Scaturro et al. fails to teach the particular machine learning

algorithms referenced in the claims herein.

18.     Sussman et al. (US 2012/0290339) discloses systems and methods, that can be used in

conjunction with the pricing and/or ticket sale processes, for enhancing yields, the system

comprising code stored in computer readable memory configured to: provide a user interface

via which a user can define and/or select event characteristics with respect to a first event;

provide a user interface via which a user can set an event filter used to locate one or more

historical events that correspond to the filter; provide the user with a predicted sales rate for

the first event.  However, Sussman et al. fails to teach the particular machine learning

algorithms referenced in the claims herein.

Application/Control Number: 17/332,144                                      Page 7
Art Unit: 3623

19.     Lineberger et al. (US 2015/0178691) discloses a method for enabling a user to provide, to a social network service, and using network based functionality, their intent to attend a destination or event, including providing plan making functionality configured for making the plan, the plan making functionality configured to provide functionality for inviting one or more other users, and receive information indicative of at least one of one or more users invited to attend, a date or time, and an intent of the plan by use of tags or selected from one or more destinations or events. In some embodiments, the system may be configured to allow the user to select a particular number of focuses (e.g., three). In some embodiments, such focuses/ interest may be provided via a free form text entry box corresponding to a tag cloud engine whereby interests are pre-programmed, learned via machine learning or added into the social status system to facilitate the matching of user states of mind and therefore funnel people into social activity with those of similar mindsets. The system may also be configured to provide one or more locations.  However, Lineberger et al. fails to teach the particular machine learning algorithms referenced in the claims herein.

20.     Byun et al. (US 2019/0180248) discloses a computer-implemented method for scheduling a calendar event is provided. The method includes receiving a set of conditions for a proposed calendar event, where the set of conditions includes a desired time period and at least a first invitee. The method further includes retrieving a first calendar of the first invitee, where the first calendar includes at least a first existing calendar event that is scheduled during a first time period in temporal proximity to the desired time period. Additionally, the method includes determining that an open time period is not available on the first calendar of the first invitee during the desired time period and retrieving a first flexibility score for the first existing

Application/Control Number: 17/332,144                                                    Page 8
Art Unit: 3623

calendar event. Based on the first flexibility score, the method includes determining a proposed

time period during the desired time period for the proposed calendar event, where the

proposed time period overlaps at least in part with the first time period of the first existing

calendar event, and sending an event request to the first invitee for the proposed calendar

event during the proposed time period.  However, Byun et al. fails to teach the particular

machine learning algorithms referenced in the claims herein.

21.     Chun, Andy Hon Wai, "Using AI for Olympic Equestrian Event Preparation," Association

for the Advancement of Artificial Intelligence (www.aaai.org). pp. 1616 -1623, 2008, discloses

using an AI platform to create a workforce management system to support Olympics equestrian

event preparation under time constraints to ensure the best available resource assignments

were made with agility in handling last minute changes and unexpected delays, including an

administrator screen with mouse over functionality for viewing scheduling details.  However,

Chun fails to teach the particular machine learning algorithms referenced in the claims herein.

22.     Moreover, since the specific ordered combined sequence of claim elements recited in

claims 1, 10, 11, and 20 cannot be found in the cited prior art and can only be found as recited

in Applicant's Specification, any combination of the cited references and/or additional

references(s) to teach all the claim elements, including the features discussed above, would be

the result of impermissible hindsight reconstruction. Accordingly, any combination of Harker et

al., Carter, and Lou et al. and/or any other additional references would be improper to teach

the claimed invention.

23.     Any comments considered necessary by applicant must be submitted no later than the

payment of the issue fee and, to avoid processing delays, should preferably accompany the

Application/Control Number: 17/332,144                                            Page 9
Art Unit: 3623

issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for

Allowance."

### *Conclusion*

24.    Any inquiry concerning this communication or earlier communications from the

examiner should be directed to LETORIA G KNIGHT whose telephone number is (571)270-0485.

The examiner can normally be reached M-F 9am-5pm.

25.    Examiner interviews are available via telephone, in-person, and video conferencing

using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is

encouraged to use the USPTO Automated Interview Request (AIR) at

http://www.uspto.gov/interviewpractice.

26.    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Rutao WU can be reached on 571-272-6045. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

27.    Information regarding the status of published or unpublished applications may be

obtained from Patent Center. Unpublished application information in Patent Center is available

to registered users. To file and manage patent submissions in Patent Center, visit:

https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for

more information about Patent Center and https://www.uspto.gov/patents/docx for

information about filing in DOCX format. For additional questions, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO

Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Application/Control Number: 17/332,144                                        Page 10
Art Unit: 3623

/L.G.K/
Examiner, Art Unit 3623


/CHARLES GUILIANO/
Primary Examiner, Art Unit 3623