THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RECENTIVE ANALYTICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1545-GBW |
| | ) | |
| FOX CORPORATION, a Delaware | ) | |
| corporation; FOX BROADCASTING | ) | |
| COMPANY, LLC, a Delaware limited | ) | |
| liability company; FOX SPORTS | ) | |
| PRODUCTIONS, LLC, a Delaware limited | ) | |
| liability company, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF RECENTIVE ANALYTICS, INC.'S
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

OF COUNSEL:
Robert Frederickson III
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

Alexandra D. Valenti
Jenevieve N. Nutovits
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 813-8800

Alison Siedor
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
(202) 346-4000

Dated: April 4, 2023

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS ................... 1

II.     SUMMARY OF THE ARGUMENT .................................................................... 2

III.    STATEMENT OF FACTS ................................................................................ 2

      A.    The Patent Office's Patent Subject Matter Eligibility Guidance ............................... 3

      B.    The Network Map Patents ....................................................................... 4

      C.    The ML Training Patents ......................................................................... 6

IV.    LEGAL STANDARD ...................................................................................... 7

      A.    Factual Disputes Bar Dismissal Under Fed. R. Civ. P. 12(b)(6) ............................. 7

      B.    Patent Eligibility Under 35 U.S.C. § 101 .................................................. 7

V.     ARGUMENT ................................................................................................ 8

      A.    Step One: Recentive's Patents Are Directed to the Application of Machine
           Learning to the Generation of Optimized Network Maps and Event Schedules ........ 8

           1.    Claim Construction and Factual Disputes Regarding the Machine Learning
               Limitations Cannot Be Resolved in Fox's Favor at this Stage ....................... 9

           2.    The Claimed Inventions Do Not Merely Automate Human Processes ......... 10

           3.    The Claimed Machine Learning Improves Network Maps and Schedules ... 14

      B.    Step Two: The Application of Machine Learning to Generate Network Maps and
           Event Schedules Is an Inventive Concept ................................................ 15

      C.    The Court Should Not Upend Patent Office Guidance at the Pleadings Stage ......... 18

      D.    Fox Fails to Meet Its Burden to Prove Representativeness ...................... 19

VI.    CONCLUSION ............................................................................................ 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)....................................................................7, 10, 17

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    890 F.3d 1354 (Fed. Cir. 2018)....................................................................7

*Acceleration Bay LLC v. Amazon Web Services, Inc.*,
    No. 22-cv-00904, D.I. 1 (D. Del. July 6, 2022) .......................................20

*Airbus S.A.S. v. Firepass Corp.*,
    793 F.3d 1376 (Fed. Cir. 2015)....................................................................19

*Alice Corp. Pty. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)........................................................................7, 8, 13, 15

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016)....................................................................16

*Ameranth, Inc. v. Olo, Inc.*,
    No. 20-cv-00518 (UNA), D.I. 1 (D. Del. April 16, 2020).......................20

*Atos, LLC v. Allstate Ins. Co.*,
    No. 20-cv-06224, 2021 WL 6063963 (N.D. Ill. Dec. 22, 2021)...........20

*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)....................................................................17

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)....................................................................8, 17, 19

*Berkheimer v. HP Inc.*,
    890 F.3d 1369 (Fed. Cir. 2018)....................................................................3, 7, 9

*Blackbird Tech LLC v. Advanced Discovery Inc.*,
    16-cv-413 (GMS), 2017 WL 2734725 (D. Del. June 26, 2017)...........12

*CareDx, Inc. v. Natera, Inc.*,
    563 F. Supp. 3d 329 (D. Del. 2021), *aff'd*, 40 F.4th 1371 (Fed. Cir. 2022)..............3

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    760 F. App'x 1013 (Fed. Cir. 2019) (unpublished) ...............................18

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011)............................................................................4

*Data Distribution Techs., LLC v. BRER Affiliates, Inc.*,
No. 12-cv-4878, 2014 WL 4162765 (D.N.J. Aug. 19, 2014) ...................................9

*Diamond v. Diehr*,
450 U.S. 175 (1981)...................................................................................8, 17

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002)........................................................................................18

*GREE Inc. v. Supercell OY*,
No. 19-cv-70, 2020 WL 887733 (E.D. Tex. Feb. 24, 2020)...................................20

*Ex Parte Hannun*,
No. 2018-003323, 2019 WL 7407450 (P.T.A.B. Apr. 1, 2019) .................10, 11, 12

*Health Discovery Corp. v. Intel Corp.*,
577 F. Supp. 3d 570 (W.D. Tex. 2021).............................................................13, 18

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016).........................................................................12

*Kajeet, Inc. v. McAfee Corp.*,
C.A. No. 21-cv-0005, D.I. 1 (D. Del. January 1, 2021)........................................20

*Mayer v. Belichick*,
605 F.3d 223 (3d Cir. 2010)...............................................................................4

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)................................................................ *passim*

*Mortg. Application Techs. LLC v. MerdianLink, Inc.*,
839 F. App'x. 520 (Fed. Cir. 2021) ...................................................................12

*Mortg. Application Techs., LLC v. MeridianLink, Inc.*,
839 F. App'x. 520 (Fed. Cir. 2021) ...................................................................12

*Power Analytics Corp. v. Operation Tech., Inc.*,
16-cv-01955, 2017 WL 5468179 (C.D. Cal. July 13, 2017) ............................17, 18

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
404 F. Supp. 3d 1021 (E.D. Tex. 2019)...............................................................20

*SiRF Tech., Inc. v. ITC*,
601 F.3d 1319 (Fed. Cir. 2010)............................................................................4

*Sound View Innovations, LLC v. Facebook, Inc.*,
  204 F. Supp. 3d 655 (D. Del. 2016)..................................................................5

*SRI Int'l, Inc. v. Cisco Systems, Inc.*,
  930 F.3d 1295 (Fed. Cir. 2019)............................................................8, 10, 11

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
  414 F. Supp. 3d 947 (E.D. Tex. 2019).......................................................10, 11

*United States v. Mead Corp.*,
  533 U.S. 218 (2001)..............................................................................19

## Statutes

35 U.S.C. § 101............................................................................ *passim*

35 U.S.C. § 102..................................................................................17

35 U.S.C. § 103..................................................................................17

## Other Authorities

79 Fed. Reg. 74,618 (Dec. 16, 2014).............................................................3

80 Fed. Reg. 45,429 (July 30, 2015).............................................................3

84 Fed. Reg. 50 (Jan. 7, 2019)..................................................................3

84 Fed. Reg. 55,942 (Oct. 18, 2019).............................................................3

Fed. Civ. R. P. 8(a)...........................................................................20

Fed. R. Civ. P. 12(b)(6).....................................................................7, 17

Fed. R. Evid. 201(b)............................................................................4

Manual of Patent Examining Procedures § 2106.............................................3, 4, 19

## I.    INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS

The Court should deny the Motion to Dismiss (D.I. 19) filed by Fox Corporation, Fox Broadcasting Company, LLC, and Fox Sports Productions, LLC (collectively, "Fox").  Critically, all 85 claims across four asserted patents in two different families require the application of a class of specific data structures and computer architectures trained to identify relationships between event parameters and targeted features, referred to as "machine learning models."  As Recentive's complaint (D.I. 13) states in well-pleaded allegations that must be taken as true, the claimed use of machine learning is not a computer implementation (or automation) of human processes.  Rather, deploying machine learning to network map and event schedule generation is a ***different*** process that is beyond human capacity.  Even Fox tacitly concedes that, prior to Recentive's invention, human-generated network maps and event schedules were "less sophisticated."  D.I. 19 ("Motion" or "Mot.") at 11.  Recentive improved those prior art approaches (i) by bringing to bear a technological solution (application of machine leaning models), (ii) to solve a technical problem faced by network mapmakers and event schedulers (comprehending the sheer volume of information available in the digital age), (iii) that uses a process different than conventional static processes (applying custom algorithms developed through iterative training to find useful patterns and making predictions about ***every*** possible solution to create the optimal map or schedule).

Fox largely ignores that the invention here is the application of machine learning models to the unsophisticated, and equally niche, prior art field of generating network maps for broadcasting live events and live event schedules.  Beyond attorney argument that machine learning is "generic" or that it simply involves the "selection and analysis of mathematical information," Fox provides no claim construction for the essential machine learning limitations.  In addition, Fox expressly ***disputes*** Recentive's well-pleaded allegations regarding machine learning.  That is improper at this stage of the case and is grounds alone for denying Fox's Motion.

Fox's factual assertions not only contradict Recentive's complaint, they also contradict thorough and well-reasoned guidance on subject matter eligibility issued by the U.S. Patent and Trademark Office ("Patent Office").  When assessing a substantively similar claim in its guidance, the Patent Office concluded that the application of machine learning to otherwise mental processes (in that case, facial recognition) is ***not*** abstract.  At a minimum, the Patent Office's guidance, which conflicts with Fox's arguments, confirms that resolution of this issue before claim construction and expert discovery is premature.

## II.   SUMMARY OF THE ARGUMENT

1.      The '811, '957, '367, and '960 Patents (the "Patents-in-Suit") are not abstract under *Alice* step one.  Fox's Motion should be denied because it fails to construe key terms and relies on factual disputes that cannot be resolved at this stage.  In its First Amended Complaint (D.I. 13, "FAC"), Recentive has pleaded facts establishing that the Patents-in-Suit are directed to an improvement in existing computer technology, not mere automation of a human mental process.

2.      The Patents-in-Suit are not abstract under *Alice* step two.  The Patents-in-Suit recite an inventive concept: the unique application of machine learning to generate customized algorithms, based on training the machine learning model, that can then be used to automatically create network maps and event schedules that are updated in real-time.

3.      Fox has not met its burden to show that claim 1 of the '811 Patent and claim 1 of the '367 Patent are representative of the '957 or '960 Patent, respectively.

4.      In the alternative, Recentive should be given leave to amend its FAC to address the disputed factual issues about machine learning raised by Fox in its Motion.

## III.   STATEMENT OF FACTS

Recentive alleges that Fox infringes four patents in two different patent families, which Fox has dubbed the "Network Map Patents" and the "Machine Learning ('ML') Training Patents."

Although all Patents-in-Suit require the use of machine learning algorithms, there are notable differences across the individual claims in the two patent families, which are summarized below.

### A.    The Patent Office's Patent Subject Matter Eligibility Guidance

All of Recentive's patents were prosecuted and examined under the Patent Office's Patent Subject Matter Eligibility Guidance ("Guidance"), which has undergone extensive notice, public comment, and revision over the last nearly ten years.  The Guidance on subject matter eligibility is, by far, the most comprehensive and thorough effort to harmonize caselaw that various Federal Circuit judges have called "fraught," "incoherent," "unclear, inconsistent[,] . . . and confusing," and "indeterminate and often lead[ing] to arbitrary results."  *CareDx, Inc. v. Natera, Inc.*, 563 F. Supp. 3d 329, 337 (D. Del. 2021) (collecting quotes), *aff'd*, 40 F.4th 1371 (Fed. Cir. 2022).[1]  The Guidance can be found in § 2106 of the Manual of Patent Examining Procedures ("MPEP").

In addition to collecting, summarizing, and organizing the caselaw into a thoughtful framework, the Patent Office has issued multiple "Examples" to illustrate claim analysis under the Guidance.  Ex. D.  Particularly relevant here is Example 39, entitled "Method of Training a Neural

---

[1] In December 2014, the Patent Office published interim guidance on patent subject matter eligibility and solicited comments.  2014 Interim Guidance on Patent Subject Matter Eligibility, 79 Fed. Reg. 74,618 (Dec. 16, 2014).  The Patent Office received more than sixty comments from leading intellectual property organizations (*e.g.*, AIPLA and the American Bar Association), academic and research institutions, major enterprises (*e.g.*, Google, IBM, Novartis, and Microsoft), and individual leaders and pioneers in the space.  In July 2015, the Patent Office published an update based on those public comments.  July 2015 Update on Subject Matter Eligibility, 80 Fed. Reg. 45,429 (July 30, 2015).  Additional public comments were solicited, and an additional thirty-seven comments were received and reviewed.  In May 2016, in response to Federal Circuit decisions and changing jurisprudence after *Berkheimer*, *Vanda Pharmaceuticals*, *McRO*, *Finjan*, and *Core Wireless*, the Patent Office issued a memorandum revising its § 101 criteria.  Ex. A.  It sought public comments relating to these decisions, specifically including the *Berkheimer* and *McRO* decisions, and issued subsequent memoranda.  Ex. B; Ex. C.  In January 2019, the Patent Office published the Revised Patent Subject Matter Eligibility Guidance , and received comments.  2019 Revised Patent Subject Matter Eligibility Guidance, 84 Fed. Reg. 50 (Jan. 7, 2019).  In October 2019, the Patent Office published another update, and again, solicited comments.  October 2019 Update: Subject Matter Eligibility Guidance, 84 Fed. Reg. 55,942 (Oct. 18, 2019).

Network for Facial Detection." *Id*. at 8-9.  As explained in Example 39, "[a] neural network is a framework of machine learning algorithms that work together to classify inputs based on a previous training process." *Id*. at 8.  Although humans have long possessed the ability to detect whether an image contains a face or not, the Patent Office concludes that the example claim is not directed toward an abstract idea because, among other things, "the claim does not recite a mental process because the steps are not practically performed in the human mind." *Id.* at 9; *see also* MPEP § 2106.04(a)(2) at Section III.A (citing *SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 2019)); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1376 (Fed. Cir. 2011); and *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319 (Fed. Cir. 2010)).[2]

## B.    The Network Map Patents

Contrary to what Fox contends (Mot. at 10), the Network Map Patents do not simply claim automation of the manual process of generating a network map for scheduling broadcasts of live events.  Instead, all asserted claims require the network maps to be generated using a "machine learning technique" or a "trained machine learning model" to optimize a schedule.  '811 Patent at 10:16-18; '367 Patent at 14:37-39.[3]  Machine learning is not a "broad functional concept[]" as Fox alleges (Mot. at 4)..  Rather, machine learning refers to a family of computer algorithms that include "a gradient boosted random forest, a regression, a neural network, a decision tree, a support vector machine, [or] a Bayesian network."  '811 Patent at 3:22-26.  The machine learning models claimed are "trained to recognize how to optimize, maximize, or minimize one or more of the target features," which automatically updates the map in real time based on such criteria, and

---

[2] At the motion to dismiss stage, courts may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also* Fed. R. Evid. 201(b).

[3] The '811 and '957 Patents share a specification, and the '367 and '960 Patents share a specification.  For ease of reference, citations are to the '811 and '367 Patents, respectively.

projects ratings for potential network maps in a certain market and television station.  FAC ¶¶ 22, 25.  Through the use of machine learning, the Network Map Patents permit consideration of multiple possible schedule permutations or configurations, forecasting the impact of a proposed schedule change, and applying innumerable variables from sources such as weather, news, and gambling data.  FAC ¶ 30.

The machine learning limitations in the Network Map Patents proved essential for patentability during prosecution.  In an Office Action dated January 31, 2020, the claims of the '811 Patent were rejected under § 101 as claiming mental processes "not integrated into a practical application" that "fail[ed] to positively recite that a computer is actually executing the code the abstract idea represents . . . ."  Ex. E at 2.[4]  Contrary to what Fox contends (Mot. at 7), Recentive did not simply add and rely on displaying steps to integrate the claimed subject matter into a practical application.  Rather, relying on the Patent Office's Guidance, Recentive amended pending claim 1 to require generating a network map "using a machine learning technique and data," which is updated "on demand and in real time" based on "a user entered change to . . . the underlying criteria."  Ex. F at 2.  Such amendment integrated the claimed subject matter into a practical application.  The Examiner made no further § 101 rejections during the prosecution.

Fox's assertion (Mot. at 7) that all "displaying" limitations added in response to the § 101 rejection were "subsequently deleted" is also incorrect.  In response to indefiniteness and obviousness rejections, Recentive later amended the claims to reincorporate the displaying limitations wherein the network map identifies "a first live event . . . that will be displayed at the first time" and "a second live event . . . that will be displayed at the second time."  Ex. G at 2.

---

[4] *See Sound View Innovations, LLC v. Facebook, Inc.*, 204 F. Supp. 3d 655, 658 (D. Del. 2016) (holding that courts may take judicial notice of a patent's prosecution history).

5

### C.        The ML Training Patents

The '367 Patent recites "iteratively training" the machine learning model to identify relationships between different parameters and target features, providing real-time updates to optimize the event schedule based on identified changes to one of those parameters, and collecting and analyzing social media data to make real time changes to the event schedule.[5]  FAC ¶ 35.  This simultaneous consideration and application of innumerable variables to a proposed event schedule can only be done using machine learning techniques applied to a computer system—such multivariable analysis is too sophisticated for a human to perform.  FAC ¶¶ 23, 35.

During prosecution, the '367 Patent underwent amendment and reconsideration after an initial § 101 rejection, and after the Examiner's analysis pursuant to the Patent Office's Guidance, all claims were allowed.  Contrary to what Fox contends (Mot. at 8), Recentive did not simply respond to the Examiner's rejection under § 101 by arguing that the claims were "necessarily rooted in computer technology."  Rather, the Applicant amended the pending claims to add limitations, including "providing [input] to a machine learning model" and "automatically updating the schedule . . . using the machine learning model" based on changes to that input.  Ex. H at 2-5.  The Applicant further amended the limitations to specify that the machine learning model "is at least one of a random forest model, a regression model, a neural network model, a decision tree model, a support vector machine model, and a Bayesian network model," and "is iteratively

---

[5] For example, the '367 Patent recites "providing the one or more event parameters and the one or more event target features to a machine learning (ML) model . . . .iteratively training the ML model to identify the relationships between different event parameters and the one or more event target features using historical data . . . wherein such iterative training improves the accuracy of the ML model,"  "providing the real-time change to the trained ML model to improve the accuracy of the trained ML model," and "updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the . . . prioritized event target features in view of the real time change," "wherein detecting the real-time change . . . includes collecting and/or analyzing social media data."  '367 Patent at claims 1, 8; *see also* claims 9, 11, 19.

trained." Ex. I at 5-6, 8.  Directly in response to the Examiner's indication that the claims would overcome the § 101 rejection upon providing sufficient detail of the "training step," the Applicant amended the limitations to specify the re-training of the machine learning model "in a first" and "second stage," in which "such iterative training improves the accuracy" of the machine learning model.  Ex. J at 3, 5-6, 8.  Although Fox glosses over these "narrowing amendments" (Mot. at 8), the Examiner specifically noted that the inclusion of these "additional technical elements" rendered the claims allowable.  Ex. K at 3.

## IV.    LEGAL STANDARD

### A.    Factual Disputes Bar Dismissal Under Fed. R. Civ. P. 12(b)(6)

On a Rule 12(b)(6) motion, the Court must deny the motion if "in the light most favorable to the plaintiff and with every doubt resolved in the pleader's favor . . . the complaint states any legally cognizable claim." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357 (Fed. Cir. 2018); *see also Berkheimer v. HP Inc.*, 890 F.3d 1369, 1372 (Fed. Cir. 2018).  Thus, when the patentee's allegations "at a minimum raise factual disputes underlying the § 101 analysis," the Rule 12(b)(6) motion should be denied.  *Aatrix*, 890 F.3d at 1358.  Likewise, "[i]f there are claim construction disputes" at this stage, "either the court must proceed by adopting the non-moving party's constructions, or the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis . . . ."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

### B.    Patent Eligibility Under 35 U.S.C. § 101

Under the *Alice* framework, a court must first "determine whether the claims at issue are directed to a patent-ineligible concept."  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).  Most relevant to this case, claims involving processes that cannot practically be performed in the human mind are not directed to patent-ineligible abstract ideas and the analysis should end

there.  *See, e.g.*, *SRI Int'l*, 930 F.3d at 1303; *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).  Courts have repeatedly cautioned against oversimplifying claims, which "if carried to its extreme, make[s] all inventions unpatentable."  *Diamond v. Diehr*, 450 U.S. 175, 189 n.12 (1981).

Only if the claims fail step one does the court proceed to step two, where it must "consider the elements of each claim both individually and as an ordered combination" to determine whether the claims add an inventive concept that is sufficient to ensure the patent claims more than the abstract idea itself.  *Alice*, 573 U.S. at 217 (internal citations omitted).  The issue of "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact," which "must be proven by clear and convincing evidence."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## V.    ARGUMENT

### A.    Step One: Recentive's Patents Are Directed to the Application of Machine Learning to the Generation of Optimized Network Maps and Event Schedules

Fox's Motion fails to get past *Alice* step one, which asks what the ***claims*** are "directed to." With respect to the Network Map Patents, Fox asserts (Mot. at 2-3) they "are directed to computer-implemented methods for generating a 'network map,' which is a 'schedule that outlines which content will be displayed on which channel at a certain time.'"  Similarly, Fox asserts (Mot. at 4) that the "ML Training Patents are directed to computer-implemented methods for optimizing events such as concerts or rallies that take place across multiple locations over several months, or scheduling multiple performers to perform at a particular venue."  In doing so, Fox ignores the central inventive contribution and corresponding claim limitations that proved essential to patentability during prosecution: the application of trained machine learning algorithms to generate network maps that are dynamically updated and optimized in real-time (the Network Map Patents)

and to generate event schedules that are dynamically updated and optimized in real-time (the ML Training Patents).  For the reasons set forth below, the applications of machine learning to specific technological problems faced by broadcasters and event schedulers are not abstract.

1.   Claim Construction and Factual Disputes Regarding the Machine Learning Limitations Cannot Be Resolved in Fox's Favor at this Stage

All Patents-in-Suit require the application of a "machine learning technique" or the application of a "trained ML model."  Fox's Motion glosses over the claim limitations by arguing that "machine learning" techniques are "generic" or merely "known mathematical techniques." Mot. at 12.  In so arguing, Fox ignores that the ML Training Patents require, among other things, "iteratively training the ML model to identify relationships between different event parameters and . . . event target features using historical data." '367 Patent at 14:21-23.  Fox also ignores that the Network Map patents recite "using a machine learning technique," which necessarily includes the "iteratively training" step expressly recited in the ML Training Patents.  '811 Patent at 3:26-28 ("The machine learning technique can be trained using any suitable training data.").  Fox offers no contrary construction of these essential terms, and instead ignores their meaning in this art.  *See Data Distribution Techs., LLC v. BRER Affiliates, Inc.*, No. 12-cv-4878, 2014 WL 4162765, at *1 (D.N.J. Aug. 19, 2014) (denying motion to dismiss where defendants failed to proffer claim construction for terms).  Importantly, Fox also concedes that its factual assertions about claim construction **contradict** Recentive's well-pleaded allegations: "Recentive alleges that these machine learning techniques 'do not mimic mental processes, but are separate structures or architectures that receive, process, and generate data in a unique manner.' [citing Amended Complaint].  **Contrary to Recentive's assertions**, however, . . . ." Mot. at 12 (emphasis added). At the motion to dismiss stage, all well-pleaded factual allegations must be accepted as true, and all reasonable inferences must be drawn from them in Recentive's favor.  *See Berkheimer*, 890

9

F.3d at 1372; *Aatrix*, 882 F.3d at 1125.  This alone is reason for the Court to deny Fox's Motion.

Likewise, Fox's assertions that the Patents-in-Suit are directed to "automating" manual techniques cannot be reconciled with the well-pleaded factual allegations.  *Compare* Mot. at 10 to FAC ¶ 29 ("The '811 and '957 Patents do not simply claim automation of the manual process of generating a network map."); *id.* ¶ 34 (similar).  To begin, Fox provides no evidence that the processes previously used by network mapmakers and event schedulers are the same as the processes required by Recentive's patents.  Nor can it.  As set forth in Recentive's FAC and in more detail below, machine learning techniques "do not mimic mental processes, but are separate structures or architectures that receive, process, and generate data in a unique manner."  FAC ¶¶ 29, 34; *see also id.* ¶¶ 20, 22, 23; *infra* at Section V.A.2.a.

2.    The Claimed Inventions Do Not Merely Automate Human Processes

Fox's Motion focuses on its assertion that both patent families are directed toward the "automation of an entirely manual process."  *See, e.g.*, Mot. at 10-14.  The fundamental flaw with Fox's assertion is that the claimed machine learning techniques are not manual processes and cannot be performed within the human mind (or using a pen and paper).  *See, e.g.*, *SRI*, 930 F.3d at 1304; *McRO,* 837 F.3d at 1313-14; *Ex Parte Hannun*, No. 2018-003323, 2019 WL 7407450, at *5 (P.T.A.B. Apr. 1, 2019); *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A*., 414 F. Supp. 3d 947, 958 (E.D. Tex. 2019).  Fox concedes as much when it argues that, "***with the exception of the use of a 'machine learning technique' . . . and 'iteratively training' a 'machine learning model,'*** . . . each of the claimed steps can be performed in the human mind or by a person using pen and paper."  Mot. at 10 (emphasis added).  In effect, Fox asks the Court to ignore what it concedes to be non-abstract when assessing whether the claims are directed to an abstract idea.  That cannot be and is not correct.  *See McRO,* 837 F.3d at 1313 ("[I]n determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of

10

the individual steps.").

a)   *The Claimed Inventions Cannot Be Performed Mentally and Do Not Claim "Known" Mathematical Techniques*

Human-created network maps and event schedules were limited by the amount of information the human mind can process.  *See* '811 Patent at 1:23-29, 35-37; '367 Patent at 1:26-43, 9:7-25.  Even Fox concedes that human-generated maps were "less sophisticated."  Mot. at 11.  The Patents-in-Suit claim a ***different method*** for generating and evaluating maps and schedules that improves on human capabilities.  FAC ¶¶ 20, 22, 23, 30, 33, 35.

Although a claim may recite a task that "generally can be performed by a human," when the claims are directed to a specific implementation of that task in a manner that a human cannot perform, the claims are not abstract.  *See SRI*, 930 F.3d at 1304.  In *SRI*, the claims recited "detecting . . . suspicious activity based on analysis of network traffic data selected from" several categories.  *Id.* at 1301.  The Federal Circuit affirmed denial of summary judgment that the asserted claims were patent ineligible because "the human mind is not equipped to detect suspicious activity by using network monitors and analyzing network packets as recited by the claims."  *Id.* at 1304.  Similarly, in *United Servs. Automobile Association*, claims involving real-time calculations to ensure a digital image met certain criteria were patent eligible because they "could not, as a practical matter, be performed entirely in a human's mind."  414 F. Supp. 3d at 958.  And in *Ex Parte Hannun*, claims directed, in part, to "obtaining predicted character probabilities from a trained neural network and decoding a transcription of the input audio using the predicted character probability outputs," were not abstract because they were "not steps that can practically be performed mentally."  *Ex Parte Hannun*, 2019 WL 7407450, at *5.

Here, the recited machine learning models are separate structures or architectures, and they receive, process, and generate data in a manner that a human cannot mimic.  *See, e.g.*, '811 Patent

at 3:21-28 (suitable machine learning models include "a gradient boosted random forest, a regression, a neural network, a decision tree, a support vector machine, a Bayesian network"); '367 Patent at 5:65-6:5 (same); *see also* FAC ¶¶ 20, 23.  Machine learning algorithms process information differently from how the human brain processes information; *e.g.*, humans process data qualitatively, rather than quantitatively.  *See* FAC ¶¶ 20, 23, 30.  In this way, machine learning can identify quantitative details that are imperceptible to a human and can generate algorithms via iterative training of data sets to discover patterns that are imperceivable and thus impossible for a human to calculate.  *See id.* ¶¶ 20, 22, 23.  It can then optimize maps or schedules in a different way than the human brain would (or could) do so.  *Id.*  And the number of possible solutions is far beyond what a human could process:  there are over one million possible network maps for a single NFL week schedule.  *Id.*  Indeed, "[t]he amount of data to be collected and analyzed would be overwhelming to a human working without the aid of machine learning, and it would be impossible for a human to produce near-simultaneous updates to network maps or event schedules based on real-time data."  *Id.* ¶ 20.  For that reason, the cases Fox cites (Mot. at 11-12) are inapposite because they did not require the application of machine learning algorithms, but rather only claimed the performance of the same mental steps in a computer environment.[6]

Finally, Fox suggests that the Recentive claims are directed to an abstract idea because the

---

[6] If anything, Fox's cited cases illustrate the difference between claiming a particular algorithm and the generic recitation of functional steps performed by generic computers.  In *Intell. Ventures*, the claims recited "[a] post office for receiving and redistributing email messages on a computer network" and "[a] virus screening method" for phone calls based on predetermined mathematical rules.  838 F.3d 1307, 1316-19 (Fed. Cir. 2016).  In *Mortg. Application Techs.*, in an unpublished opinion, the Federal Circuit held that claims directed to "information storage and exchange," without more, were abstract.  839 F. App'x. 520, 526 (Fed. Cir. 2021).  And in *Blackbird Tech*, again, the claims recited merely sorting and organizing data by predetermined matching of search terms and concepts.  16-cv-413 (GMS), 2017 WL 2734725, at *4 (D. Del. June 26, 2017).  Notably, ***none*** of the claims in the cases Fox cites recite machine learning, and ***none*** are directed to uniquely-generated, customized algorithms.

machine learning algorithms are "known" or "generic mathematical techniques." *See* Mot. at 13. No mathematical concept or formula, however, is actually claimed in the patents. For that reason, Fox's reliance on *Health Discovery Corp. v. Intel Corp.*, is misplaced. 577 F. Supp. 3d 570 (W.D. Tex. 2021). The claims there involved training a machine learning model to improve its own accuracy, not to perform a concrete task. *Id.* at 574. Here, by contrast, the claimed machine learning models do not recite improvements to mathematical formulas or approaches. Instead, they are directed to the generation of unique algorithms to create concrete end products: network maps and event schedules that are optimized in real time based on certain changeable parameters and features. '811 Patent at 3:21-22, 4:10-34; '367 Patent at 7:55-8:39. These uses of machine learning go beyond "known" or "generic mathematical algorithms" and are not abstract.

> b)   *The Claims Do Not Preempt All Methods of Automatically Generating Maps.*

*Alice* emphasized that "the concern that drives this exclusionary principle [is] one of pre-emption." 573 U.S. at 216. Fox makes much of language in the specifications that recognizes that the network maps and event schedules can be generated automatically and suggests that the Patents-in-Suit seek to preempt this automation. To be sure, one benefit of the claimed inventions is that maps and schedules can be automatically updated based on changing dynamics. But this is not a case where the claims seek to preempt all methods of automatically generating network maps and event schedules.

In this regard, the Federal Circuit's decision in *McRO* is instructive. There, the Federal Circuit rejected the district court's characterization that the claims were "drawn to the [abstract] idea of automated rules-based use of morph targets and delta sets for lip-synchronized three-dimensional animation." 837 F.3d at 1313. As here, the specification in *McRO* recognized that humans (or "artists") could lip-synch three-dimensional animations. But the Federal Circuit found

"this computer automation is realized by improving the prior art through 'the use of rules, rather than artists, to set the morph weights and transitions between phenomes.'" *Id.* Although the claims were directed to a genus of rules, the Federal Circuit held that preemption concerns were not triggered. *See id.* at 1314 ("The abstract idea exception has been applied to prevent patenting of claims that abstractly cover results where 'it matters not by what process or machinery the result is accomplished.'" (citations omitted)).

The "machine learning" limitations in the Patents-in-Suit are no different than the genus of "rules" claimed in *McRO*. Like *McRO*, the "claimed process uses a combined order of specific rules"—here, iteratively training a machine learning model using training data that allows model to identify patterns to make predictions—"that renders information into a specific format"—here, network maps and live event schedules—"that is then used and applied to create desired results"— here, the selection and identification of the optimal map or schedule. *Id.* at 1315. Indeed, a network map and schedule of live events is more tangible than the "sequence of synchronized, animated characters" that resulted from the claimed process in *McRO*. *Id.*

### 3.  The Claimed Machine Learning Improves Network Maps and Schedules

Claims reciting "specific asserted improvement[s]" to a particular field are patent eligible. *Id.* at 1314. Here, the Patents-in-Suit claim specific improvements in the generation of optimized network maps and event schedules. By enabling the processing of a massive amount of multivariable data fast enough to capture real-time updates, the claims recite an improvement over "less sophisticated" network maps and event schedules created using the prior art.

As explained in Recentive's FAC, the previous prior art use of a computer alone to generate maps and event schedules lacked the technological capability to analyze the amount of multivariable information that machine learning can analyze. *See* FAC ¶¶ 28-30, 34, 35. The prior art also lacked the capacity to detect real-time changes to specified parameters and update an event

map or schedule based on those changes.  *Id.*; *see also* '367 patent at 9:7-25 (the invention allows

for "real-time changes" to be "processed and considered more efficiently and accurately, compared

to prior approaches").  In this way, the Patents-in-Suit's implementation of a machine learning

model solves specific problems: not being able to generate optimized maps or schedules in real-

time based on the parameters and target features recited.  *See* '811 Patent at 1:35-46, 3:60-4:24

(describing a network map that is updated "automatically and dynamically" . . . "based on changing

data, e.g., the data underlying the algorithm that automatically generates the network map," and

stating that the invention "describes an improved technique for generating a network map that

solves many of the drawbacks of conventional techniques"); '367 Patent at 7:62-8:11; 9:7-25 (the

application of machine learning to a computer "achieve[s] a significant improvement in computer

functionality"; the model, once trained, can "update the schedules dynamically, in response to real-

time changes in the data" and "input parameters and target features can be processed and

considered more efficiently and accurately, compared to prior approaches").

Thus, the Patents-in-Suit are directed to "a patentable, technological improvement over the

existing, manual" techniques to generate network maps or event schedules.  *McRO*, 837 F.3d at

1316.  Like the claims in *McRO*, the Patents-in-Suit do not preempt all possible ways of generating

a network map or event schedule, only those that utilize machine learning applied to a computer

in the specific manner claimed.  The Patents-in-Suit are therefore patent eligible under step one.

## B.  Step Two: The Application of Machine Learning to Generate Network Maps and Event Schedules Is an Inventive Concept

The Court need not reach the *Alice* step two inquiry.  But even if the Court finds that the

Patents-in-Suit are directed to abstract concepts, the claims of each recite an inventive concept

sufficient to pass step two.  Even if the Court adopts Fox's oversimplified characterizations of the

claims in which Fox omits reference to machine learning (and it should not), then the use of

machine learning algorithms to generate network maps and optimize event schedules becomes the hallmark of an inventive concept—using an unconventional (indeed, novel), specific technological solution to overcome the shortcomings of conventional techniques.

Fox tries to cast the Patents-in-Suit as claiming "generic" computer-implemented solutions, but that is not accurate. On this point, the Federal Circuit's holding in *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016), is instructive. In *Amdocs*, the Federal Circuit accepted the district court's characterization that the claims were directed to the "abstract idea of 'correlating two network accounting records to enhance the first record.'" *Id.* at 1299. "Enhancing," however, was construed to require applying field enhancements in a "distributed fashion," which was critical to the invention. *Id.* at 1300. Although the "enhancing" was accomplished by generic computer processers, the Federal Circuit held the claims passed step two because the "claim[s] entail[] an unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases)." *Id.* The Patents-in-Suit bring a technical solution to a very similar problem faced by network broadcasters and event schedulers—interpreting streams of "massive" amounts of available data, including weather, news, betting activity, ticketing, social media, player/team following, and merchandising activity, etc. (FAC ¶ 22)—by utilizing machine learning.[7]

Fox complains (Mot. at 16) that the machine learning models recited in the Patents-in-Suit are a "black box," and that there is no specific algorithm disclosed. But that belies Fox's misunderstanding of machine learning technology and the parties' factual disputes. The process of training the machine learning model—which is required for any machine learning model—to

---

[7] In the ML Training Patents, the claims also include the limitation of customizing the training of the machine learning model in a unique and iterative way, which is an additional improvement over the prior computer technology. '367 Patent at claim 1; FAC ¶¶ 31, 33, 35.

generate the specific type of output recited in the Patents-in-Suit will differ depending on the type of data the machine learning model is fed, meaning that no two algorithms performed on a computer will be the same. *See* FAC ¶¶ 18, 22, 23; '811 Patent at 3:20-30; '367 Patent at 6:5-15. Because no algorithms or mathematical models exist prior to the training of the machine learning model, one cannot, *a priori*, describe the algorithm that the machine learning model will use. *See* FAC ¶ 24. The Patents-in-Suit are inventive **because** this customizable aspect of machine learning is applied to a computer, allowing it to process more data in order to generate the optimized network maps and event schedules.

Fox suggests that machine learning was well-understood, conventional, and routine because machine learning was "known." But "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that should not be addressed in this posture. *Berkheimer*, 881 F.3d at 1368; *Aatrix*, 882 F.3d at 1125 ("[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."). Fox's argument also fails because it improperly conflates subject matter **eligibility** (under 35 U.S.C. § 101) from the separate, "fully apart," questions of novelty (under 35 U.S.C. § 102) and obviousness (under 35 U.S.C. § 103). *Diehr*, 450 U.S. at 190. Finally, even if network maps and event schedules were known, and even if machine learning algorithms were known, Fox offers zero evidence that the **combination** claimed was well-understood, routine, and conventional. *See BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016).[8]

---

[8] *Power Analytics*, cited by Fox, is inapposite for several reasons. First, *Power Analytics* was decided at the summary judgment stage. Second, *Power Analytics* dedicated just one sentence to a "few" dependent claims, which were not material to the invention recited in the patent's

**C.      The Court Should Not Upend Patent Office Guidance at the Pleadings Stage**

Recentive, the Patent Office Examiners in this case, and practitioners throughout the country have been prosecuting and examining patents pursuant to extensive Patent Office Guidance. For more than four years, since January 7, 2019, that Guidance has included Example 39, which is specifically directed toward claims requiring the application of machine learning. *See* Ex. D at 8-9. Applying its Guidance to that Example claim, the Patent Office has instructed examiners and practitioners that the recitation of machine learning in claims is not abstract because it "does not recite any mathematical relationships, formulas, or calculations" and "does not recite a mental process because the steps are not practically performed in the human mind." *Id*.at 9. The Patent Office's analysis of Example 39 is not contradicted by any Federal Circuit authority and Fox cites no Federal Circuit case assessing claims involving machine learning. *Cf. Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1020-21 (Fed. Cir. 2019) (unpublished) (declining to follow PTO Example 29 when prior controlling Federal Circuit decision on analogous claim reached opposite result).

The Court should not upend the Patent Office's Guidance or the settled expectations of practitioners and examiners alike at the pleadings stage. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 739 (2002) ("[C]ourts must be cautious before adopting

---

independent claims. *Power Analytics Corp. v. Operation Tech., Inc*., 16-cv-01955 (JAK/FFM), 2017 WL 5468179, at *6 (C.D. Cal. July 13, 2017). For the reasons discussed above, unlike the claims at issue in *Power Analytics*, the claims here do more than recite the rote use of "machine learning" to "store," "process," and "forecast." Fox's reliance on *Health Discovery* is similarly unpersuasive. There, although the court eventually found the claims patent ineligible under step two, it did so because the patentee's complaint failed to allege an inventive concept. *Health Discovery Corp.*, 577 F. Supp. 3d at 585-87. The court noted that allegations simply stating that the invention improved data quality were not sufficient. *Id.* at 586. Here, in contrast, Recentive has pleaded that the application of machine learning to a computer allows the computer to perform a complex, multivariable analysis that it otherwise could not perform. FAC ¶¶ 30, 35; *see also supra* at Section V.A.2. For the ML Training Patents in particular, Recentive has pleaded facts regarding the iterative training of the machine learning model. FAC ¶ 35.

changes that disrupt the settled expectations of the inventing community."). In fact, given the extensive analysis, consideration of multiple rounds of public comment, and regular updating, the Court would be well within its discretion to ***endorse*** (not just defer to) the Patent Office's Guidance. *See United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (agencies are entitled to some deference based on "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements"); *Airbus S.A.S. v. Firepass Corp.*, 793 F.3d 1376, 1380 (Fed. Cir. 2015) (referring to MPEP as "an official interpretation of [the patent] statutes . . . with which it is not in conflict"). At the very least, the Patent Office's Guidance on machine learning inventions elucidates what Fox needs to establish (by clear and convincing evidence) to prevail on its Motion.

### D.   Fox Fails to Meet Its Burden to Prove Representativeness

Fox must establish that all claims should be treated as the same for a § 101 analysis. *See Berkheimer*, 881 F.3d at 1365 (courts may not assume that an independent claim is representative of all dependent claims). Fox has failed to meet this burden. In its Motion, Fox glosses over the dependent claims and provides only rote explanations that the claims add "insignificant extra-solution activities that do not impart an inventive concept," do not "differentiate a process from ordinary mental processes," and "can be performed manually." Mot. at 18-20. Such conclusory statements do not represent meaningful argument that the 73 dependent claims fail to add eligibility-conferring limitations. *Berkheimer*, 881 F.3d at 1365.

Here, the dependent claims add additional claim elements that narrow the scope of the claim.[9] As one example, claim 10 of the '811 Patent specifies that the "automatically updating

---

[9] These additional limitations also create questions of fact regarding the scope of the claims for § 101 purposes. As explained above, these factual disputes should not be resolved at the motion to dismiss stage, without the benefit of expert discovery and claim construction.

step" of claim 1 "comprises generating multiple network maps based on multiple user entered changes."  Fox ignores this limitation—that rather than generating a single map, an extensive repository of maps is simultaneously generated based on multiple input changes.  Instead, Fox rewrites the language of claim 10, asserting that it is merely "repeated multiple times to create a network map" for "speed or efficiency" and therefore not patent-eligibility conferring.

Because Fox has failed to address these dependent claims, and the further eligibility-conferring limitations they recite, its Motion should be denied.  *See, e.g.*, *GREE Inc. v. Supercell OY*, No. 19-cv-70, 2020 WL 887733, at *2 (E.D. Tex. Feb. 24, 2020) (denying motion to dismiss where defendant failed to meet its burden to show one claim was representative of the others); *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1031 (E.D. Tex. 2019); *Atos, LLC v. Allstate Ins. Co.*, No. 20-cv-06224, 2021 WL 6063963, at *7 (N.D. Ill. Dec. 22, 2021) ("just stating, 'in a conclusory fashion,' that other patents or claims contain no 'meaningful limitation' relating to patent eligibility is not enough" to show representativeness).

## VI.    CONCLUSION

For the aforementioned reasons, Fox's Motion should be denied.  In the alternative, the Court should grant Recentive leave to amend.  Recentive's FAC includes factual allegations relating to Fox's § 101 challenge, while attempting to comply with Rule 8's requirement that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  To the extent the Court grants Fox's Motion, Recentive requests leave to plead additional facts to address any shortcomings identified by the Court.[10]

---

[10] Indeed, Section 101 jurisprudence has gotten to the point that some patent holders attach expert declarations, which are typically neither short nor plain, to patent infringement complaints.  *See, e.g.*, *Acceleration Bay LLC v. Amazon Web Services, Inc.*, No. 22-cv-00904, D.I. 1 (D. Del. July 6, 2022); *Kajeet, Inc. v. McAfee Corp.*, C.A. No. 21-cv-0005, D.I. 1 (D. Del. January 1, 2021); *Ameranth, Inc. v. Olo, Inc.*, No. 20-cv-00518, D.I. 1 (D. Del. April 16, 2020).

Respectfully submitted,

OF COUNSEL:
Robert Frederickson III
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

Alexandra D. Valenti
Jenevieve N. Nutovits
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 459-7351

Alison Siedor
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
(202) 346-4000

Dated: April 4, 2023

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

21